Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 169

1  Q. You wouldn't agree with that?
2  A. No.
3  Q. You were just e-mailing Insead and
4  working trying to find fraud just for your own
5  pleasure?
6  MR. CHABOT: Same objection. I'm
7  sorry, object to the form of the question. It
8  also misstates prior testimony.
9  A. I would--
10 MR. KAPLAN: It's also completely
11 inappropriate and if it keeps up, this
12 deposition will stop.
13 A. As I stated previously, I was trying
14 to verify discrepancies and dates that were on
15 the application.
16 Q. And come back to the appropriateness
17 that Attorney Kaplan raised, the reason why we
18 are in the deposition today is because there's
19 a belief that you knew about those time gaps
20 long before you fired the Plaintiff.
21 MR. CHABOT: Just going to object to
22 the form, and because we're doing this as a
23 trial deposition, I'm going to move to strike

Page 170

1  the entire question which is basically
2  testimony by Dr. Isaacs.
3  MR. KAPLAN: I will join that.
4  Q. Do you think that you damaged the
5  reputation of Baker Isaacs by terminating its
6  CEO for fraud when in fact Dr. Isaacs disclosed
7  Arizona on the application to DHMC? That is
8  one question.
9  MR. CHABOT: Object to the form of the
10 question.
11 Q. I will restate it because there's one.
12 MR. KAPLAN: Are you going to restate
13 it?
14 Q. So we've established you've testified
15 that the Plaintiff disclosed Arizona on an
16 application to DHMC.
17 MR. KAPLAN: We have not established
18 that and I object to the question. It's a
19 misstatement of the evidence and of what
20 actually happened.
21 Q. Well, that's going to be determined.
22 So I believe you testified that, that will be
23 up for a judge, and then you terminated the CEO

Page 171

1  of Baker Isaacs for fraud on that same issue.
2  So didn't you damage the private equity company
3  created by the largest benefactor of
4  Dartmouth's history based on your mistake?
5  MR. CHABOT: Object to the form of the
6  question and to the statements of facts that
7  are not in evidence.
8  A. I would say no.
9  Q. So you believe even though Arizona was
10 stated at no less than four pages of the
11 employment application, the Plaintiff committed
12 fraud after he started employment at DHMC with
13 regards to Arizona?
14 MR. CHABOT: I'm going to object to
15 the form of the question. That question is
16 compound and confusing, and I'm also going to
17 object to the characterization of the
18 employment application.
19 DR. ISAACS: You can spin it with
20 whatever objection you want.
21 A. Well, the application that we have
22 been referring to consistently is the
23 application for residency submitted to the ERAS

Page 172

1  portal.
2  Q. So actually, just to clarify then, I
3  have not been referring to ERAS, I've been
4  referring to any and all application materials
5  to Dartmouth-Hitchcock medical center.
6  A. And I'm saying that the decision to
7  dismiss you from the program was based on the
8  omission on your ERAS application.
9  Q. Did anyone investigate this matter at
10 DHMC or Dartmouth College that you're aware of?
11 This entire lawsuit was it subject to any
12 investigation of your actions?
13 A. No.
14 Q. Were you ever asked to resign?
15 A. No.
16 Q. Did anyone other than your attorneys
17 review your actions?
18 A. The decision was reviewed by the
19 graduate medical education office.
20 Q. Dr. Bertrand?
21 A. Yes.
22 Q. So he played a role in any decision?
23 A. He was involved in the decision-making

Exhibit G - Finn Depo Transcript

Case 1:17-cv-00040-LM   Document 3-7   Filed 02/08/17   Page 2 of 2

Case 1:12-cv-00040-LM   Document 148-6   Filed 04/19/14   Page 45 of 109

Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al
Christine Finn, M.D.
January 15, 2014

Page 173

1  process, yes.
2  Q. Did you feel one of you had a primary
3  role or was it a joint process between the two
4  of you?
5  A. I would say I had the primary role.
6  Q. Did you feel that he intimidated you
7  in any way because of his connection to
8  Arizona?
9      MR. KAPLAN: Objection to your
10  question.
11  A. I'm not aware of any connection he has
12  in Arizona.
13  Q. You're not aware that he trained with
14  the Arizona Department of Surgery that I
15  trained at?
16  A. No.
17  Q. It seems like you're not aware --
18  well. So you stand by your statement that the
19  Plaintiff's application to DHMC, not ERAS, the
20  entire application, does not include Arizona on
21  it.
22      MR. KAPLAN: Note my objection to the
23  question, and your misstatement of evidence.

Page 174

1  There is only one application as this witness
2  has testified to a number of times.
3      DR. ISAACS: You can't set the facts,
4  Attorney Kaplan. You're the attorney, not the
5  witness.
6      MR. KAPLAN: My objection stands. Go
7  ahead, Doctor.
8  A. That applications or forms that you
9  were asked to fill out for licensure for
10  credentialling are not provided to me
11  necessarily at the time of the applicant
12  filling them out. I'm testifying to the
13  applications that were provided to me at the
14  time specifically of the decision to invite you
15  to interview at the residency program.
16  Q. Even if they were not provided to you,
17  were they not provided to DHMC by the Plaintiff
18  before he was employed?
19      MR. CHABOT: I'm going to object to
20  the form, it's a vague question.
21      DR. ISAACS: I'm going to raise you're
22  raising frivolous objections at this point.
23      MR. CHABOT: The indefinite pronoun,

Page 175

1  "they," Dr. Isaacs, in that question renders
2  the question vague.
3  A. I would say from the documents that
4  you've provided today and the one for the New
5  Hampshire licensure that you did disclose a
6  license and some degree of training previously,
7  I'll agree with you.
8  Q. Okay. I guess we're done with Exhibit
9  K. This is Exhibit M. It's the affidavit,
10  statement of the Plaintiff dated today.
11      MR. KAPLAN: Wait a minute. You're
12  putting an affidavit of one of your statements
13  in evidence as an exhibit?
14      DR. ISAACS: Putting my affidavit in.
15  I just forgot to sign the date on it this
16  morning.
17      MR. KAPLAN: I object to the
18  introduction of an affidavit which is
19  essentially testimony coming from the
20  questioner during our examination -- let me
21  finish, Dr. Isaacs, during the examination of
22  another witness. It's completely
23  inappropriate, it's not permitted, but all I

Page 176

1  can do is object.
2      DR. ISAACS: Well, as a pro se
3  litigant, there's no other way for me to put in
4  my testimony without, this is the only format I
5  know.
6      MR. KAPLAN: Dr. Isaacs, this is not
7  your opportunity to testify. It is your
8  opportunity to ask questions.
9      DR. ISAACS: I'm asking her questions
10  about facts, and these are actually facts
11  mostly compiled from things you've seen before.
12  It's for the purpose of moving this along
13  quickly.
14      MR. KAPLAN: I've stated my objection.
15      MR. CHABOT: I join it.
16  Q. Just read the first page and then I'll
17  ask about that then we will go on.
18  A. Do you want me to read it out loud?
19  Q. No.
20      MR. CHABOT: Just for the record,
21  we've just been given and marked as Exhibit M,
22  appears to be one, two, three, four, five, six,
23  seven-page document bearing headings Dr. Ravi,

Exhibit G - Finn Depo Transcript