Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 293

1   A. It does say that.
2   Q. So wouldn't it be assumed they didn't
3   find anything wrong, or do you think they found
4   something wrong and just chose to honor my
5   request?
6        MR. CHABOT: Objection, foundation.
7        MR. KAPLAN: Objection, foundation.
8   A. I can't really say.
9   Q. So you think it's possible that they
10  determined against me but chose not to tell
11  anyone?
12       MR. CHABOT: Same objection.
13  A. I'm not familiar with their policies
14  or procedures regarding the application
15  requirements.
16  Q. If they agreed with my interpretation
17  of the two settlement agreements, would you
18  believe that you were wrong on your termination
19  letter regarding USC?
20       MR. KAPLAN: Note my objection.
21  A. I think that the USC information was
22  in line with other previous concerns about
23  lying, but again, was not found out until

Page 294

1   significantly after the decision was already
2   made.
3   Q. But you do have to answer the
4   question. Do you think you were wrong on the
5   USC matter and the termination letter if
6   indeed ERAS agreed with interpretation of the
7   settlement?
8        MR. KAPLAN: I'm going to object to
9   the question because it calls for a conclusion
10  I don't believe this witness is qualified to
11  make, but you can go ahead.
12  A. I think the general omission was the
13  concern. It was never specific to the USC
14  complaint.
15  Q. I'll rephrase the question. Is ERAS
16  or is AAMC the administrator for ERAS? Do they
17  have authority over their service?
18  A  I don't know.
19  Q. Don't they have an investigation unit
20  called ERAS Investigations?
21  A. I don't know.
22  Q. So would you trust, if they do have an
23  investigation unit, would you trust their

Page 295

1   decisions?
2   A. Yes.
3   Q. So if they decided that there was no
4   problem with USC on my application, would your
5   statement on the termination letter be wrong?
6        MR. CHABOT: I'm going to object to
7   the question for the reasons stated by Attorney
8   Kaplan earlier.
9   A. What was the question?
10  Q. I'll just repeat it.
11    (The record was read as requested.)
12       MR. CHABOT: Did you get that, Dr.
13  Finn?
14  A. I guess I'm still not clear what
15  statement you're referring to, the statement,
16  that that together with the other concerns.
17  Q. So you enumerated certain items in
18  the termination letter. One of them was you
19  failed to disclose USC Keck on your ERAS
20  application. So there's that statement which
21  is an enumerated cause of termination among
22  about six others. But that statement is what
23  I'm referring to. And we can go back and look,

Page 296

1   but that statement, if ERAS investigations
2   determined differently, would you say you were
3   wrong or would you disagree with ERAS?
4        MR. CHABOT: Hypothetically speaking?
5   Q. I don't think it's hypothetical. She
6   just doesn't know who ERAS investigations is,
7   but it's not really hypothetical.
8        MR. CHABOT: That's also not what the
9   document says. Just note my objection.
10       MR. KAPLAN: Note my objection as well.
11  Q. Well, I don't think it's a
12  hypothetical, but if that's how she wants to
13  answer it.
14  A. It's hypothetical in the sense that
15  this information was not available to me at
16  that time.
17  Q. I'm saying now. Now if you agree that
18  they made that determination but you don't seem
19  to know but if that was proven to you, would
20  you then believe your letter, that enumerated
21  item was wrong or would you think they were
22  incorrect, ERAS?
23       MR. CHABOT: Objection to the form of