**VIDEOTAPED DEPOSITION OF: KEVIN D. O'LEARY - January 21, 2014**
**DR. J.D. ISAACS V. DARTMOUTH-HITCHCOCK MEDICAL CENTER, ET AL**

---

**KEVIN D. O'LEARY - 1/21/14** — Page 17

1   for the conclusion of this deposition.
2       DR. ISAACS: Okay.
3   BY DR. ISAACS:
4   Q. Who is Vivienne Barbadoro?
5   A. I know the name Vivienne Barbadoro because it
6       is the name on the proof of service that you
7       submitted in this case. And my understanding
8       is that she is the person who was working at
9       the president's house when your process
10      server served the summons and complaint in
11      this lawsuit on him.
12  Q. Do you know if she was a college employee?
13  A. I don't know that she's a college employee,
14      but I believe she was a college employee.
15  Q. And do you know if she has any relation to
16      Judge Barbadoro in Concord, New Hampshire?
17  A. I do not know that.
18  Q. Okay. Is she a sibling or wife or daughter
19      of Judge Barbadoro?
20  A. Nothing has changed about what I know to the
21      answer to that question in the time between
22      when I answered "No" and when you asked the
23      next question.

---

**KEVIN D. O'LEARY - 1/21/14** — Page 18

1   Q. Do you know how many judges, federal district
2       judges, there are in New Hampshire?
3   A. No.
4   Q. Okay. Do you know which federal district
5       judges have any sort of relationship with
6       Dartmouth College?
7   A. I know that Judge Barbadoro, in the past, has
8       taught at the Tuck School of Medicine and, as
9       a result, does not hear any cases that
10      involve Dartmouth College.
11          MS. PEAHL: Tuck School of?
12  A. I'm sorry. Tuck School of Business, not Tuck
13      School of Medicine. Other than that, I'm not
14      aware of any, you know, connections, other
15      than in their official capacity serving as
16      judges, handling cases assigned to them that
17      from time to time involve Dartmouth College.
18  Q. Okay. Do you know if Trustee Mandel ever did
19      an ethics investigation that plaintiff had
20      asked?
21  A. He did not.
22  Q. Okay. Do you know what Attorney Peahl may
23      have been referring to in a letter mentioning

---

**KEVIN D. O'LEARY - 1/21/14** — Page 19

1       Trustee Mandel and an ethics investigation in
2       the same paragraph?
3   A. If you show me the letter, I might be able to
4       tell you what I think she meant. But I don't
5       know, off the top of my head. There's been a
6       fair amount of correspondence in this case.
7   Q. Okay. Do you know if the trustees are
8       generally aware of this litigation?
9   A. Our office reports to -- well, two things:
10      One, I believe you have communicated with the
11      trustees about this litigation, and so to the
12      extent they've read your correspondence,
13      they're aware of it; and second, our office
14      reports to the trustees on a periodic basis
15      about all of the litigation pending against
16      the college. So, this lawsuit would have
17      been mentioned.
18  Q. Would your communications with them be
19      privileged, or would you be able to go into
20      further detail about your communications to
21      the trustees about this lawsuit?
22  A. They would be privileged.
23  Q. Okay. Are you able to say the trustees'

---

**KEVIN D. O'LEARY - 1/21/14** — Page 20

1       opinion on this lawsuit?
2   A. If I knew one, I would not be able to say
3       that.
4   Q. Okay. Let's turn to Exhibit B, the e-mail
5       that was sent, the statement that I wrote
6       yesterday -- or I guess today, technically.
7   A. Well, you sent it before midnight and then
8       after midnight, so I guess you wrote it
9       yesterday.
10  Q. Okay. You have that in front of you, or
11      you've read that?
12  A. I have it in front of me.
13  Q. Okay. Have you read it?
14  A. I have read it.
15  Q. Okay. Do you know of any false statements in
16      this e-mail?
17  A. I don't know anything about the truth or
18      falsity of anything in this e-mail.
19  Q. Okay. I guess we could go through
20      individually then. Do you know --
21  A. Well, let me just say this: I can -- I was
22      not a witness at any of the events that you
23      report in this e-mail, so I certainly

---