UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
Dr. Jeffrey Isaacs, \*
\*
        Plaintiff \*
\*
        v. \*    Docket No. 1:17-cv-00040-LM
\*
Trustees of Dartmouth College, \*
NH Board of Medicine and, \*
Dartmouth-Hitchcock Medical Center \*
\*
        Defendants \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

    Dr. Isaacs' claims against the Trustees of Dartmouth College are barred by the final judgment in <u>Isaacs v. Dartmouth-Hitchcock Medical Center et al.</u>, No. 1:12-cv-00040-LM. Even were this not the case, his claims would be untimely and could not be saved by application of the discovery rule, even if facts supporting the application of the discovery rule had been included in the present Complaint. Finally, Dr. Isaacs' claims under the United States Constitution fail as against the Trustees of Dartmouth College because the Trustees of Dartmouth College is not a state actor subject to suit under the United States Constitution or 42 U.S.C. §§ 1983 or 1985. For these reasons, dismissal is appropriate pursuant to Fed. R. Civ. Pro. 12(b)(6).

    **Procedural Background**

1

Dr. Isaacs had a full and fair opportunity to litigate claims arising out of his failed medical residency during his previous lawsuit, which spanned most of three years from early 2012 to early 2015. The earlier litigation in this Court was extensive. Additionally, the Trustees of Dartmouth College endured two separate First Circuit appeals relating to that lawsuit. What's more, Dr. Isaacs twice sought certiorari to the Supreme Court of the United States on his previous claims arising out of his residency. The earlier litigation began on February 3, 2012, when Dr. Isaacs, proceeding pro se, filed a seven-count Verified Complaint. See No. 1:12-cv-00040-LM, Doc. 1. This Complaint asserted counts against the Trustees of Dartmouth College, Dartmouth-Hitchcock Medical Center, Mary Hitchcock Memorial Hospital and a "John Doe" Defendant, all arising out of what he perceived to be improper treatment during his residency, a failure to investigate certain of his complaints relating to same, and his placement on administrative leave. Id.

Following the termination of his residency at Mary Hitchcock Memorial Hospital on March 19, 2012, Dr. Isaacs amended his Complaint on March 25, 2012, adding additional theories of recovery, damage claims and defendants. Doc. 13. The Trustees of Dartmouth College filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) on April 20, 2012, arguing that Dr. Isaacs' claims arose from his employment and termination therefrom, and so did not support any recovery against the Trustees of Dartmouth College, which never employed Dr. Isaacs. Doc. 21. Before the Court could rule on this Motion, his present counsel appeared for Dr. Isaacs. Doc. 52. Dr. Isaacs, through his present counsel, filed an amended Complaint on February 6, 2013. Doc. 54. The Trustees of Dartmouth College answered this second Amended Complaint on February 27, 2013. Doc. 56. The parties entered into a discovery plan, Doc. 61, and proceeded to conduct discovery.

Dr. Isaacs' present counsel sought leave to withdraw from their representation of Dr. Isaacs in the earlier case on July 18, 2013, and the Court granted leave to withdraw on July 22. Doc. 67.  On August 14, 2014, Dr. Isaacs filed a "Motion for Sanctions and Proposed Injunctive Order." Doc. 70 & 71.  This Motion alleged, inter alia, that various agents of the Trustees of Dartmouth College destroyed evidence to cover up the events that occurred during his six-month residency, including evidence related to allegedly improper digital rectal exams he was ordered to perform.  Id. at 3, 6-7.  The Trustees of Dartmouth College objected to this Motion on September 3, 2013, Doc. 83, and the Court heard arguments on October 31, 2013, and ultimately granted Plaintiff some relief with respect to email discovery, but denied his request for sanctions. Doc. 106 at 4-5.  After an unsuccessful Motion for Reconsideration, Dr. Isaacs filed a Notice of Appeal with respect to this Decision.  Doc. 118.  Defendants moved to dismiss this appeal, and their Motion was granted. Isaacs v. Dartmouth-Hitchcock Medical Center et al., No. 14-1085, Doc. No. 00116668070 (March 31, 2014).  Dr. Isaacs filed a petition for a writ of certiorari to the Supreme Court of the United States challenging the dismissal of his First Circuit appeal on August 1, 2014, and his petition was denied by order of the Supreme Court on October 20, 2014. This can be confirmed by a review of the Supreme Court's publically-available docket report: https://www.supremecourt.gov/search.aspx?filename=/docketfiles/14-179.htm.

While the above-referenced appeals were pending, the Trustees of Dartmouth College filed a summary judgment motion. 1:12-cv-00040-LM, Doc. 133.  This motion was granted by an order of this Court on April 18, 2014.  Doc. 151.  Dr. Isaacs again appealed to the First Circuit Court of Appeals, Doc. 155, and that court issued a brief written order on January 5, 2015, upholding this Court's grant of summary judgment.  Dr. Isaacs again sought certiorari to the Supreme Court of the United States, which again denied his petition on June 29, 2015.  Again,

3

this can be confirmed via the Supreme Court's docket:

https://www.supremecourt.gov/search.aspx?filename=/docketfiles/14-1421.htm.

Dr. Isaacs filed at least one other lawsuit concerning the termination of his residency and his issues with the New Hampshire Board of Medicine. This suit was dismissed for lack of personal jurisdiction over the Trustees of Dartmouth College. See Isaacs v. Trustees of Dartmouth College et al., No. 13-5708, 2014 WL 4186536 at *12-13 (E.D. Pa. Aug. 25, 2014).

Dr. Isaacs' claims, arising out of his treatment during his residency at Dartmouth-Hitchcock Medical Center and his termination from that program, have been very thoroughly litigated. Where his present claims, as demonstrated below, arise from this same transaction, dismissal is appropriate.

**Relevant Facts Gleaned From Complaint, Incorporated Documents, and Public Records**

Dr. Isaacs asserts seven counts against the Trustees of Dartmouth College in this lawsuit: Count II, "Fifth Amendment Due Process Violations," Complaint, Doc. 1 at ¶¶ 143-150; Count III, "Violations of 42 U.S.C. s. 1983," id. at ¶¶ 151-168; Count IV "Violations of 42 U.S.C. 1985(3)," id. at ¶¶ 169-176; Count V "Violations of Title IX of the Education Amendments of 1972," id. at ¶¶ 177-197; Count VII "ADA and Title IX Retaliation," id. at ¶¶ 202-210; and Count VII "Injunctive Relief," id. at ¶¶ 211-222.

Count II arises from the use, by Defendants, of information gleaned from the University of Southern California Keck School of Medicine in making the decision to terminate Dr. Isaacs' employment. See id. at ¶¶ 148-150. Count III arises out of the allegedly improper termination of Dr. Isaacs from the Psychiatry Residency Training Program at Dartmouth-Hitchcock Medical Center without the type of investigation Dr. Isaacs believes he was due. Id. at ¶¶ 158-168.

Count IV arises out of unspecified "decisions" of the Trustees of Dartmouth College which "resulted in the current inability of the Plaintiff to practice medicine." Id. at ¶ 175. In the context of the Complaint, it seems obvious that Dr. Isaacs' allegations, again, arise from his treatment during his medical residency, or the termination of his residency. Id. at ¶¶ 21-72, 172-173. Count V arises out of the response, by the Trustees of Dartmouth College, to an allegation that Dr. Isaacs was required to perform what he believed was an inappropriate digital rectal exam during his medical residency; had a different response been forthcoming, Dr. Isaacs speculates that he may have been able to complete his residency. Id. at ¶¶ 179-180, 192-197. Count VII arises out of the Defendants' alleged failure rehire Dr. Isaacs after his termination, which was upheld by this Court. Id. at ¶¶ 206. Finally, Count VIII, at least to the extent it even remotely implicates the Trustees of Dartmouth College, arises out of the termination of his employment at Mary Hitchcock Memorial Hospital. Id. at ¶ 217.

     Dr. Isaacs asserted numerous, nearly identical allegations five years ago, and this Court disposed of them all. See Order on Motions for Summary Judgment, Doc. No. 151, in Isaacs v. Dartmouth-Hitchcock Medical Center et al., No. 12-cv-00040-LM. That Order, at the outset, explained what the case was about: "Dr. J.D. Isaacs, a former resident in psychiatry in the Graduate Medical Education [] program at Dartmouth-Hitchcock Medical Center ("Dartmouth-Hitchcock") has sued four defendants and asserts ten claims, arising from *either the treatment he received during his Dartmouth-Hitchcock Residency or his dismissal from it.*" Id. at 1 (emphasis added).

     On the basis of unopposed summary judgment motions filed by both the Trustees of Dartmouth College and Dartmouth-Hitchcock Medical Center, this Court dismissed Dr. Isaacs' claims, making factual findings to the effect that Dr. Isaacs' termination was supported by his

5

numerous performance deficiencies, including insufficiently detailed patient notes, "gaps in [his] clinical knowledge, repeated lateness, and limited self-direction," id. at 9, as well as his dishonesty in applications to the Electronic Residency Application Service ("ERAS") and the New Hampshire Board of Medicine. Id. at 9-10. These findings foreclosed Dr. Isaacs' claims against the Trustees of Dartmouth College under the Rehabilitation Act, including his retaliation claims, id. at 42, and informed the Court's dismissal of the fraud claims, which ultimately failed for insufficient pleading, particularly of any reliance by Dr. Isaacs on the statements about his poor performance. Id. at 51 and n. 6. Dr. Isaacs' intentional infliction of emotional distress claim failed because although the Court had "little trouble concluding that it would be intolerable in a civilized community for medical educators to conduct secret experiments upon an unwitting subject with the purpose of driving him out of an academic program," it concluded that the factual record actually established that "Dr. Finn and others responsible for training Dr. Isaacs went to great lengths to help him remain in the program and have a successful residency." Id. at 58.

Dr. Isaacs' other claims against the Trustees of Dartmouth College in the 2012 lawsuit were dismissed because of his procedural failures. With respect to his Americans with Disability Act claims, Dr. Isaacs' failure to file an administrative charge of discrimination proved fatal. Id. at 25. With respect to his negligent infliction of emotional distress claim, his failure to supply expert testimony to establish the causal link between any act of the Trustees of Dartmouth College and "the physical symptoms that allegedly resulted therefrom" doomed that claim. Id. at 60.

In the present complaint, the Trustees of Dartmouth College are alleged to be a former administrator of the medical residency program in which Dr. Isaacs was enrolled. Complaint,

Doc. 1, at ¶ 10.  Dr. Isaacs makes the conclusory allegation that there is "extensive government involvement in the training of medical interns that is sufficient for this Court to consider Dartmouth's (sic) actions State Action (sic)."  Id. at ¶ 145.  He alleges that "the federal funding of otherwise private *hospitals* is sufficient to clothe activities of the *hospitals* with state action."  Id. at ¶ 154 (emphases added).  Then, he alleges that "Dartmouth" received federal funds to train him.  Id. and ¶ 155.  Despite this effort to claim that the Trustees of Dartmouth College is a "state actor" for section 1983 purposes, there has been a conclusive finding of fact that Dr. Isaacs' medical residency was with Mary Hitchcock Memorial Hospital.  1:12-cv-00040-LM, Doc. 151 at 6 ("Based upon his application, Dr. Isaacs was offered admission to the Dartmouth-Hitchcock residency program in psychiatry, which entailed employment as a resident at Mary Hitchcock.").

### Applicable Standards

In ruling on a motion pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court "assesses the complaint's factual allegations in two steps.  First, conclusory allegations that merely parrot the relevant legal standard are disregarded, as they are not entitled to the presumption of truth. [] Second, [it] accept[s] the remaining factual allegations as true and decide if, drawing all reasonable inferences in plaintiff's favor, they are sufficient to show an entitlement to relief."  Manning v. Boston Medical Center Corp., 725 F.3d 34, 43 (1st Cir. 2013).  Only if the factual allegations "set forth a plausible claim upon which relief may be granted" will the complaint survive a 12(b)(6) motion.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st. Cir. 2014).  The Court can consider, in this analysis, the "facts alleged in the complaint and exhibits attached thereto," and also "documents the authenticity of which are not disputed by the parties[,] official public records[,] documents central to plaintiff[']s claim[,] and documents sufficiently referred to

7

in the complaint." Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013) (quotation and citations omitted).

As this Court has held, "a claim that is barred by res judicata is not 'a plausible claim upon which relief may be granted,'" and so is "subject to dismissal under Rule 12(b)(6)." Katz v. McVeigh, No. 150-cv-338-LM, 2015 D.N.H. 210, 2015 WL 7016334 at *3 (Nov. 12, 2015) (quoting Foley, 772 F.3d at 71 and Hatch v. Trail King Industries, Inc., 699 F.3d 38, 43-44, 49 (1st Cir. 2012)).

**Argument**

**A—Dr. Isaac's Present Claims Arise Out of the Same Transaction or Occurrence as Gave Rise to His 2012 Claims, and so Are Barred by Res Judicata**

All of Dr. Isaacs' claims in the present matter arise out of the treatment he claims he received at the hands of various supervisors and colleagues during his medical residency in 2011 and early 2012, or out of what he alleges was his improper termination from that residency program. Complaint, Doc. 1, at ¶¶ 2, 9-10, 16[1]-18, 21-72, 101,[2] 131, and 134. The 2012 lawsuits also arose "from either the treatment he received during his Dartmouth-Hitchcock residency, or his dismissal from it." No. 1:12-cv-00040-LM, Doc. 151 at 1. Thus, even though Dr. Isaacs' claims express different legal theories of recovery in this lawsuit than he did in 2012, the claims in his current suit are plainly barred by the doctrine of res judicata.

"[A] final judgment on the merits precludes parties from relitigating claims that were or could have been brought in a prior action." Universal Ins. Co. v. Office of the Ins.

---

[1] Despite Dr. Isaacs' contention that he applied to "Dartmouth Medical School," this Court has previously found that he applied to the residency program at Mary Hitchcock Memorial Hospital. 1:12-cv-00040-LM, Doc. 151 at 6.

[2] "Dr. Finn has never retracted the termination of Dr. Isaacs[.]"

8

Commissioner, 755 F.3d 34, 37 (1st Cir. 2014).  The elements of res judicata in a federal case are "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits."  Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998) (quoting Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994)).

Here, there can be no question that the Trustees of Dartmouth College obtained a final judgment on the merits against Dr. Isaacs in his 2012 cases.  See Caballero-Rivera v. Chase Manhattan Bank, N.A., 276 F.3d 85, 87 (1st Cir. 2002) (summary judgment constitutes "final judgment on the merits" for purpose of res judicata analysis) (citing Dowd v. Soc'y of St. Columbans, 861 F.2d 761, 764 (1st Cir. 1988)).  Thus, the first and third elements of the res judicata defense are clearly established.  Furthermore, because Dr. Isaac's present claims all arise out of his alleged mistreatment during his residency, or his termination from his residency, there is a sufficient identicality between the causes of action asserted here and those asserted in 2012, that res judicata applies.

When applying federal law, this Court employs a "transactional approach" to determine the identicality of causes of action.  Gonzalez, 27 F.3d at 755.  When the claims in two different lawsuits "derive from a common nucleus of operative facts," then they are identical for res judicata purposes.  Id. (quoting Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1166 (1st Cir. 1991)).  This Circuit follows the Restatement (2d) of Judgments § 24 in analyzing what allegations will be considered "to be part of the same transaction or series of connected transactions adjudicated to a final judgment" in an earlier case.  Havercrombe v. Dep't of Educ. of Com. Of P.R., 250 F.3d 1, 4-5 (1st Cir. 2001) (citation omitted).  This approach is a pragmatic

9

one, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" Id. (quoting Restament (2d) of Judgments § 24(2)).

Because Dr. Isaacs' claims in each lawsuit arise from his treatment during his residency or his termination from the Dartmouth-Hitchcock residency program, then, it is of no moment that his present claims assert an entitlement to belief under the United States Constitution, and under a statute that was not previously invoked (Title IX). Dr. Isaacs' claims are "identical," because they arise out of the same transaction or series of connected transactions beginning with Dr. Isaacs' misrepresentations on his applications to the Dartmouth-Hitchcock residency program, No. 1:12-cv-00040-LM, Doc. 151 at 6-7, and ending with his termination from employment during the pendency of his first 2012 lawsuit. Id. at 11-12.[3]

Furthermore, Dr. Isaacs' claim, that the retaliation he has experienced for bringing ADA and Title IX claims has included the denial of his 2013-2016 residency applications to Dartmouth-Hitchcock Medical Center would, even if properly addressed to the Trustees of

---

[3] To the extent that Dr. Isaacs seeks to make claims of what amounts to "discovery misconduct" during his 2012 lawsuits, see, e.g., Complaint, ¶¶ 71-93, Dr. Isaacs is bound by the final judgment in his earlier cases, which included an appeal to the First Circuit Court of Appeals and a certiorari petition to the Supreme Court of the United States, challenging this Court's decision not to impose discovery sanctions. See Tiller v. Baghdady, 294 F.3d 277, 284 n.5 (1st Cir. 2002). Furthermore, Dr. Isaacs' claim, that the retaliation he has experienced for bringing ADA and Title IX claims has included the denial of his 2013-2016 residency applications to Dartmouth-Hitchcock Medical Center would, even if properly addressed to the Trustees of Dartmouth College, fail as it is a part of the same series of connected transactions under First Circuit precedent, especially where Plaintiff alleges that these decisions were part and parcel with the initial decision to terminate his employment, which was already the subject of a losing ADA retaliation claim. See Havercrombe, 250 F.3d 8 (holding that claims of subsequent allegations of discriminatory conduct that occurred while initial lawsuit was ongoing were barred by doctrine of res judicata). In any event, this Court has already determined that Dartmouth-Hitchcock Medical Center was within its rights to terminate Dr. Isaacs, and so, its decision not to re-hire him subsequently does not plausibly support a claim of retaliation.

10

Dartmouth College, fail as it is a part of the same series of connected transactions under First Circuit precedent, especially where Plaintiff alleges that these decisions were part and parcel with the initial decision to terminate his employment, which was already the subject of a losing ADA retaliation claim. See Complaint at ¶ 128 ("Dr. Isaacs is endlessly damaged by Hitchcock's termination and the Board decision. Dr. Isaacs applied to Dartmouth for another residency position in 2013, 2014, 2015 and 2016. He never obtained an interview."); see also Havercrombe, 250 F.3d 8 (holding that claims of subsequent allegations of discriminatory conduct that occurred while initial lawsuit was ongoing were barred by doctrine of res judicata).

In any event, this Court has already determined that Dartmouth-Hitchcock Medical Center was within its rights to terminate Dr. Isaacs, and so, its decision not to re-hire him subsequently does not plausibly support a claim of retaliation, especially where, as Dr. Isaacs alleges in the present Complaint, that his "severe reprimand" by the New Hampshire Board of Medicine is publically available and must be disclosed "on every medical program application." Complaint, ¶¶ 123, 130. The Complaint acknowledges that "there is not a medical program in the country that will take him on as a resident." Id.

### B—Dr. Isaacs' Claims Are Time-Barred

Dr. Isaacs' claims all arose, at latest, on or about March 19, 2012—the date he was officially terminated from his Dartmouth-Hitchcock residency. See Complaint, ¶ 95. By this time, as previously noted, he already had a lawsuit on file against the Trustees of Dartmouth College, among others, challenging his treatment during his residency and his placement on administrative leave. 1:12-cv-00040, Doc. 1 at ¶¶ 9-23. Where the longest statute of limitations that applies to any of Dr. Isaacs' claims is three years, and where his causes of action all accrued no fewer than five years ago, Dr. Isaacs' claims are time-barred.

Dr. Isaacs' various claims have the following statute of limitations:

| CLAIM | STATUTE OF LIMITATIONS | CITATION/AUTHORITY |
|---|---|---|
| Count II – "Fifth Amendment Due Process Violations" | 3 years | Feeley v. New Hampshire, No. 09-cv-432-JL, 2010 WL 4736317 at *1 (D.N.H.Nov. 16, 2010) (McCafferty, Magistrate J.). |
| Count III, "Violations of 42 U.S.C. s. 1983," | 3 years | Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) |
| Count IV "Violations of 42 U.S.C. 1985(3)," id. at ¶¶ 169-176; | 3 years | Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) |
| Count V "Violations of Title IX of the Education Amendments of 1972," id. at ¶¶ 177-197; | 3 years | Wilmink v. Kanawha County Bd. Of Educ., 214 Fed. Appx. 294, 298 n.3 (4th Cir. 2007) |
| Count VII "ADA and Title IX Retaliation," id. at ¶¶ 202-210 | 300 days | 42 U.S.C. § 2000e-5(e)(1). |
| Count VII "Injunctive Relief," id. at ¶¶ 211-222. | 300 days to 3 years | See all above citations. |

Dr. Isaacs' February 3, 2017 complaint leaves no doubt that the matters at issue in the present lawsuit arose well over three years ago—indeed, they arose almost five years ago. Accordingly, dismissal is warranted pursuant to Fed. R. Civ. Pro. 12(b)(6). See Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 (2005). Nor could Dr. Isaacs feasibly attempt to fix this issue by amending his complaint to take advantage of the discovery rule, where he had actually filed suit before March 19, 2012, attributing the injuries to his professional reputation and mental health to the actions and inactions of, e.g., the Trustees of Dartmouth College. See Beane v. Dana S. Beane & Co., 160 N.H. 708, 713 (2010) ("that the plaintiff could reasonably

discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable"). Dr. Isaacs' claims are irremediably time-barred, and should therefore be dismissed.

### C—The Trustees of Dartmouth College is Not a State Actor and So Plaintiff's Constitutional Counts Fail to State a Claim

Dr. Isaacs brings claims under the Fifth Amendment, and 42 U.S.C. § 1983 and 1985. Such claims only lie against state actors. See Klunder v. Brown University, 778 F.3d 24, 32 (2015) (citing Trustees of Dartmouth College v. Woodward, 17 U.S. 518, 631-32, 636, 638 (1819)). Dr. Isaacs relies on Bricker v. Sceva Steere Memorial Hospital, 339 F. Supp. 234 (D.N.H. 1972), for the proposition that the mere receipt of federal funds is sufficient to make a private hospital a "state actor" subject to suit under 42 U.S.C. § 1983 & 1985. Complaint, Doc. 1 at ¶ 154.

Dr. Isaacs' conclusory legal assertion, however, is based on law that has been implicitly, and repeatedly, rejected since the Bricker decision. See Griffin v. N.H. Dep't of Employment Security, No. 09-cv-250-SM, 2009 WL 3837658 at * 4 (D.N.H. Nov. 16, 2009) (citing Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994)). The present state of the law is that the mere receipt of government funds, even coupled with extensive government regulation, do not make a private entity a state actor subject to suit under 42 U.S.C. § 1983. Dr. Isaacs does not allege any facts about the Trustees of Dartmouth College and their alleged receipt of federal funds, and certainly does not allege facts sufficient to claim that the Trustees of Dartmouth College is a state actor under this Circuit's decisional law. For this additional reason, Counts II, III and IV fail to state a claim as against the Trustees of Dartmouth College, and must be dismissed.

**Conclusion**

Dr. Isaacs' quest to overturn his termination from the Dartmouth-Hitchcock residency program, which was the result of his own poor performance and dishonesty, has been a burden on this court's docket for many years, and has similarly occupied other federal District Courts, Courts of Appeals, and the Supreme Court of the United States.  The amount of time, effort and money that has been invested by the Trustees of Dartmouth College to obtain its judgments against Dr. Isaacs has been substantial.  Dr. Isaacs should not be allowed to relitigate his claims at this late hour, where he has already extracted so many resources from the defendants, from this Court, and from the federal judiciary as a whole in pursuit of claims that were ultimately found to have no merit.  Dr. Isaacs' latest lawsuit against the Trustees of Dartmouth College must be dismissed.

        Respectfully submitted,

        TRUSTEES OF DARTMOUTH COLLEGE

        By their attorneys,

        WADLEIGH, STARR & PETERS, P.L.L.C.

Dated: April 17, 2017        By /s/ Pierre A. Chabot
        Kathleen C. Peahl – Bar No. 6880
        Pierre A. Chabot – Bar No. 17606
        95 Market Street
        Manchester, NH   03101
        (603)669-4140
        kpeahl@wadleighlaw.com
        pchabot@wadleighlaw.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 17th day of April, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and Notice of Electronic Filing on all counsel of record.

<u>/s/ Pierre A. Chabot</u>
Pierre A. Chabot
