UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
Dr. Jeffrey Isaacs,                 *
                                    *
            Plaintiff               *
                                    *
        v.                          *        Docket No. 1:17-cv-00040-LM
                                    *
Trustees of Dartmouth College,      *
NH Board of Medicine and,           *
Dartmouth-Hitchcock Medical Center  *
                                    *
        Defendants                  *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

**OPPOSITION TO MOTION TO AMEND (DOC. 14)**

Dr. Isaacs' latest effort to relitigate his termination from the medical residency

program at Dartmouth-Hitchcock Medical Center in March 2012, consists of a proposed

amended complaint seeking damages and injunctive relief against the Trustees of

Dartmouth College for conduct that, even if it had occurred, was protected by New

Hampshire law;  moreover, Dr. Isaacs' claims against the Trustees of Dartmouth

College all arise under federal statutes that are, by their own terms, inapplicable to a

private university, given the facts alleged.  The Court should deny Dr. Isaacs' Motion to

Amend because amendment would be futile.

In response to a Rule 11 Motion,[1] Dr. Isaacs attempts to abandon the claims

raised in his prior complaint, which unambiguously sought to relitigate his termination

_____

[1] The Trustees of Dartmouth College have attached the Rule 11 Motion which they
served, but as yet have not filed, as Exhibit A to this Opposition.

from the Dartmouth Hitchcock Medical Center residency program in 2012.   Dr. Isaacs'
new factual allegations appear to be that the "Dartmouth Defendants" participated in the
proceedings before the New Hampshire Board of Medicine in some unexplained and
undefined way, leading to the Board's reprimand of Dr. Issacs on March 11, 2014.
Although it is almost impossible to discern who did what according to Dr. Isaacs, there
are no allegations in the proposed amended complaint ("PAC") that give rise to even a
plausible inference that the Trustees of Dartmouth College committed any wrongful act,
that it is a "state actor" capable of depriving Dr. Isaacs of his Constitutional rights, nor a
"public entity" capable of violating Dr. Isaacs' rights under Title II of the Americans with
Disabilities Act.

Moreover, even crediting Dr. Isaacs' conclusory and improperly-pled allegations,
the PAC asserts only that an agent of the Trustees of Dartmouth College participated in
the Board of Medicine proceeding against him—conduct which is immunized from suit
pursuant to RSA 329:17, IX.  Finally, Dr. Isaacs' unapologetic attempt to challenge the
Board of Medicine proceedings in this Court requires this Court to decline to exercise
subject matter jurisdiction under the Rooker-Feldman doctrine.  Although Dr. Isaacs
argues that amendment should be allowed as of right given the timing of his Motion to
Amend, the Court has the discretion to deny the Motion where Dr. Isaacs' Motion to
Amend comes more than 21 days after the first Rule 12(b) motion was filed in this
matter, and where the proposed amendment is futile.

Factual Background

Dr. Isaacs filed his latest lawsuit against the Trustees of Dartmouth College on
February 3, 2017.  The initial version of the lawsuit made six claims against the

Trustees of Dartmouth College, all arising out of Dr. Isaacs' medical residency at

Dartmouth-Hitchcock Medical Center in 2011.  This was outlined in a Motion to Dismiss,

Doc. 13, and supporting Memorandum of Law, Doc. 13-1, filed by the Trustees of

Dartmouth College.  The New Hampshire Board of Medicine had previously filed a

Motion to Dismiss on March 22, 2017.  Doc. 7.  Dr. Isaacs sought and obtained the

assent of the Board of Medicine to respond to that Motion to Dismiss by May 1, 2017.

Doc. 12.

Simultaneously with filing its Motion to Dismiss, the Trustees of Dartmouth

College served a Rule 11 Sanctions Motion, Exhibit A, explaining to opposing counsel

that their claims in the original Complaint were plainly barred by res judicata and the

applicable statute of limitations.  In response to the two motions to dismiss and the Rule

11 motion, Dr. Isaacs filed a motion to amend and the PAC.  Doc. 14 and 14-1; see also

Fed. R. Civ. Pro. 11(c)(2) (creating "safe harbor" where party withdraws the offending

pleading).  Rather than focusing on the termination of his DHMC residency in 2012, Dr.

Isaacs' current complaint focuses on the Board of Medicine proceedings between

February 2014 and March 2014.  PAC at ¶ 6.

Dr. Isaacs was reprimanded by the Board of Medicine on March 11, 2014, for

providing false information in the application for his medical training license.  Id.  See

also, Exh. B, Final Decision and Order of New Hampshire Board of Medicine dated

March 11, 2014 (available at: https://www.oplc.nh.gov/medicine/documents/20140311-

jeffrey-isaacs.pdf) (last visited May 9, 2017).  Although the circumstances of Dr. Isaacs'

initial unsuccessful attempt to avoid the results of his dishonesty are well-documented in

the Trustees of Dartmouth College's Motion to Dismiss, Doc. 13-1 at 2-4, it is relevant

that Dr. Isaacs' dishonesty in his Board of Medicine application formed part of the basis for his termination from his medical residency.  Isaacs v. Dartmouth-Hitchcock Medical Center et al., No 1:12-cv-00040-LM ("Isaacs I"), Doc. 151 at 7, 10, 26.

Although it is not described in the original Complaint or PAC, Dr. Isaacs appealed the March 11, 2014 ruling of the Board of Medicine to the New Hampshire Supreme Court, and then sought certiorari to the Supreme Court of the United States, which declined to accept Dr. Isaacs' petition by order of May 21, 2015.  This can be confirmed by reviewing the publicly-available docket of the Supreme Court, available at: https://www.supremecourt.gov/search.aspx?filename=/docketfiles/14-1219.htm.

Dr. Isaacs now seeks relief from the Trustees of Dartmouth College because of the New Hampshire Board of Medicine's investigation of his termination from Dartmouth-Hitchcock Medical Center, and its ultimate reprimand of him for making material misstatements on his application for a training license.  See PAC at ¶¶ 6, 16-18.  With respect to the Trustees of Dartmouth College, the only factual allegations are that Dr. Isaacs believes that Dr. Christine Finn provided records, which he acknowledges were available to the public via the PACER system, to the Board of Medicine in conjunction with its investigation, without also offering additional information he feels was germane to the Board's consideration of such records.  PAC at ¶ 34.[2] Otherwise there is no factual allegation as to the Trustees of Dartmouth College's alleged involvement in the investigation and reprimand in 2014.  Dr. Isaacs simply avers

_____

[2] Although Dr. Finn was acting in the scope of her employment for the Trustees of Dartmouth College in supervising the Psychiatry Residency Program at DHMC in 2011-12, there is no allegation in the PAC that she was doing so when she allegedly offered testimony to the New Hampshire Board of Medicine.

that the Trustees of Dartmouth College "administered" the Psychiatry residency program at DHMC, from which he concedes he was rightfully terminated for performance reasons and dishonesty, until 2016. See id. at ¶¶ 13-15.

Dr. Isaacs does make several conclusory allegations about what the "Dartmouth Defendants" allegedly did in connection with the Board of Medicine Proceeding:

- "Participating in a joint prosecution with the State against Dr. Isaacs, manipulating the Board adjudicatory process"; id. at ¶ 17

- Providing "confidential and sealed documents" to the Board, thus "prejudicing" it and causing the Board's unfavorable decision; id. and ¶ 121

- "[P]ush[ing]" the Board of Medicine to conduct its investigation despite the fact that such an investigation was unnecessary in Dr. Isaacs' view; id. at ¶ 133-34.

- "[U]rging" the Board of Medicine to conduct its investigation and hearing despite his request to appear telephonically; id. at ¶ 139.

On the basis of these allegations, Dr. Isaacs asserts four counts against the Trustees of Dartmouth College: Claims under 42 U.S.C. § 1983 (Count VI), claims under 42 U.S.C. § 1985 (Count VII), Retaliation claims under the Americans with Disabilities Act (Count VIII) and a prayer for "injunctive relief," (Count IX).

Because it is a public record, which is referred to in Dr. Isaacs' complaint, the Court may also consider the factual background set forth in the Board of Medicine's March 11, 2014 Order reprimanding Dr. Isaacs. The Board of Medicine notified Dr. Isaacs that it would conduct an adjudicatory and disciplinary hearing against him on February 5, 2014, by notice dated October 7, 2013. Exh. B at 2. Despite Dr. Isaacs' belated attempts to prevent it from going forward, id., the Board held its hearing on February 5, 2014. The Board took five exhibits into evidence at the hearing, and took

testimony from one witness.  Id. at 5.  The witness (not Dr. Finn) testified as to the

contents of publically-available documents from the PACER system, including the

Central District of California's Order on a Motion to Dismiss.  Id. at 5-6.  The Board also

heard testimony concerning, and accepted as an exhibit, a settlement agreement that

the witness identified as one she obtained from the PACER system, which was a

settlement agreement from the Central District of California matter, which confirmed that

Dr. Isaacs had been suspended from the Keck School and would not be allowed to

return.  Id.  This is, presumably, the settlement agreement that Dr. Isaacs asserts was

"improperly" provided to the Board of Medicine by Dr. Finn.

        The Board of Medicine credited the testimony of the witness who appeared at the

adjudicatory hearing and, on the basis of her testimony and the exhibits offered into

evidence, concluded that Dr. Isaacs had "knowingly provided false information during

[his] application for professional licensure," for omitting to disclose his attendance at the

Keck School of Medicine on his application.  Id. at 7 (quotation omitted).  The Board

ruled that its application required Dr. Isaacs to disclose his attendance at the Keck

School of Medicine, regardless of whether the records of his attendance were "sealed or

. . . nullified by operation of law."  Id..

        Dr. Isaacs exercised his statutory right to an appeal to the New Hampshire

Supreme Court, which declined to hear his case on January 8, 2015, 2014.  See Exh.

C.   Dr. Isaacs sought certiorari to the Supreme Court of the United States by petition

dated April 8, 2015; the Court denied his petition by order dated May 26, 2015.  Dr.

Isaacs then waited more than 19 months to file the present action, in which he directly

challenges the Board of Medicine's authority to rely upon the evidence it relied upon, and to hold its February 5, 2014 hearing in his absence.  PAC at ¶¶ 52, 111, 114, 121.

Dr. Isaacs does not allege that he has filed any charge of discrimination with the New Hampshire Commission for Human Rights or with the Equal Employment Opportunity Commission in connection with his claims of retaliation under the Americans with Disabilities Act.  See PAC, passim.  As explained more completely below, the allegations in the PAC, together with the public records referenced therein, do not allow even the inference that Dr. Isaacs is entitled to relief and so the amendment sought should not be allowed.

## Applicable Standards

As the New Hampshire Board of Medicine has correctly pointed out, Dr. Isaacs' time to amend his Complaint as of right expired 21 days after that Defendant's March 22, 2017 Rule 12(b)(6) motion was filed.  Doc. 17 at ¶¶ 5-6.  Even were this not the case, the Court nonetheless retains discretion to reject the proposed amendment if the moving Plaintiff waives the right to file as a matter of course by filing a Motion to Amend, rather than simply filing his complaint.  Coventry First, LL v. McCarty, 605 F.3d 865, 869-70 (11th Cir. 2010).  Although this rule is not universally accepted, see e.g., Baker v. Carter, No. 4:14-cv-478, 2013 WL 1196106, at *4 (E.D. Tex. Mar. 22, 2013), it has not been considered or rejected in this Circuit, and is a sound reading of Rule 15(a).  Dr. Isaacs, an experienced federal litigator in his own right, and who is represented by counsel, has invited a review of his proposed amendment rather than simply amending his complaint outright, and where the PAC fails to allege facts sufficient to give rise to a

plausible claim for relief as against the Trustees of Dartmouth College, or any other Defendant, amendment should not be allowed.

The same standard applies in determining futility as would apply on a Rule 12(b)(6) motion to dismiss. Avarden Investments, LLC v. Deutsch Bank National Trust CO., No. 16-cv-014-LM, 2016 WL 4926155, at *2 (D.N.H. Sept. 15, 2016).

In ruling on a motion pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court "assesses the complaint's factual allegations in two steps.  First, conclusory allegations that merely parrot the relevant legal standard are disregarded, as they are not entitled to the presumption of truth. [] Second, [it] accept[s] the remaining factual allegations as true and decide if, drawing all reasonable inferences in plaintiffs' favor, they are sufficient to show an entitlement to relief."  Manning v. Boston Medical Center Corp., 725 F.3d 34, 43 (1st Cir. 2013).  Only if the factual allegations "set forth a plausible claim upon which relief may be granted" will the complaint survive a 12(b)(6) motion.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st. Cir. 2014) (quotation omitted).  The Court can consider in this analysis the "facts alleged in the complaint and exhibits attached thereto," and also "documents the authenticity of which are not disputed by the parties[,] official public records[,] documents central to plaintiff[']s claim[,] and documents sufficiently referred to in the complaint."  Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013) (quotation and ellipses omitted).

**Argument**

    A—The *Rooker-Feldman* Doctrine Requires Abstention Where Dr. Isaacs Seeks to Relitigate the Discipline Imposed by the Board of Medicine

        Dr. Isaacs plainly seeks to undo the New Hampshire Board of Medicine's final adjudication of his 2014 disciplinary matter, having finally acknowledged that he no longer has the right to pursue claims against the Trustees of Dartmouth College by reason of his dismissal from the Dartmouth-Hitchcock Medical Center residency program.  Dr. Isaacs' latest claim, however, runs square into binding First Circuit precedent that obliges this Court to defer to the final decision of the New Hampshire Board of Medicine.  See Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995).

        Wang is practically on all fours; in that case, a physician was investigated for misconduct, and for withholding information from the Board during its investigation.  Id. at 699-700.  The physician in Wang filed suit in this Court while his appeal to the New Hampshire Supreme Court was still pending, claiming that the Board of Medicine proceedings violated his due process rights and seeking injunctive relief and damages; the Court stayed proceedings until the New Hampshire Supreme Court summarily affirmed the Board of Medicine.  Id. at 700.  Once the New Hampshire Supreme Court declined Dr. Wang's appeal, Judge Barbadoro dismissed the federal action, citing the 11th Amendment immunity of the Board and its members from suit, the absolute immunity of Board members acting in their individual capacity, and finally the lack of subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine.  Id.  The First Circuit Court of Appeals affirmed Judge Barbadoro, reasoning that Dr. Wang had his

chance to raise constitutional issues with the New Hampshire Supreme Court, and to appeal the New Hampshire Supreme Court's decision to the United States Supreme Court.  Id. at 703.

There is no material difference between the facts alleged by Dr. Isaacs and those present in Wang.  Dr. Isaacs was duly investigated by the Board of Medicine, and was aware of the impending adjudicatory hearing for several months before it transpired.  PAC at ¶¶ 22-28; Exh. B at 2.  Dr. Isaacs was found to have committed misconduct and was reprimanded; he had, and exercised, the right to an appeal to the New Hampshire Supreme Court, which rejected his appeal,[3] and then to the Supreme Court of the United States, which also rejected his appeal.  This all occurred before Dr. Isaacs filed the present claim, seeking to overturn the Board of Medicine decision and the New Hampshire Supreme Court's order rejecting his appeal.  See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F. 3d 17, 24 (1st Cir. 2005) (holding that state court matter must have concluded before application of Rooker-Feldman doctrine is appropriate).

Wang is dispositive, and Dr. Isaacs' latest complaint, like his first complaint in this matter, is an inappropriate effort to relitigate matters which have been conclusively determined.  Although the Trustees of Dartmouth College will demonstrate, infra, that its alleged involvement in the Board of Medicine Proceedings does not give Dr. Isaacs any plausible claim for relief, Wang effectively ends this Court's inquiry and requires dismissal of Dr. Isaacs' proposed amended complaint.

---

[3] The fact that the New Hampshire Supreme Court's decision was a discretionary declination to hear Dr. Isaacs' appeal is of no significance in the Rooker-Feldman analysis.  See Hill v. Town of Conway, 193 F.3d 33, 40-41 (1st Cir. 1999).

B—Dr. Isaacs' Complaint Establishes Statutory Immunity for the Trustees of Dartmouth College

The only allegation that appears to even remotely implicate any agent of the Trustees of Dartmouth College[4] comes in paragraph 34 of the PAC, in which Dr. Isaacs avers: "Plaintiff believes Dr. Finn, or another Dartmouth agent provided sealed and/or confidential records. It was wholly improper for Dr. Finn to provide these records, even those publicly available on PACER, to the Board in the absence of any explanation as to the reason they were sealed or any related circumstances." Leaving aside for the moment the absurd proposition that the Trustees of Dartmouth College could be held liable because one of their employees provided public records to the Board of Medicine with or without an explanation, Dr. Isaacs' claims again run square into binding law—in this case, RSA 329:17, IX. That statute, in part, forecloses any civil action against "any organization or its members or against any other person for or by reason of any good faith statement, report, communication, or testimony to the board or determination by the board in relation to proceedings under this chapter."

Here, the only act of any agent of the Trustees of Dartmouth College in connection with the Board of Medicine proceeding is the provision of publicly-accessible documents to the Board of Medicine. Although Dr. Isaacs identifies other statements he believes Dr. Finn should have made to the Board of Medicine, there is not, nor could there be, any allegation that the provision of publicly-available documents constituted

---

[4] It is difficult to say who is alleged to have done what where Dr. Isaacs appears to use the term "Dartmouth" or "Dartmouth Defendants" interchangeably to mean either "The Trustees of Dartmouth College" or "Dartmouth-Hitchcock Medical Center" and does not take any measure to try to differentiate which entity is being discussed in all but a handful of paragraphs of the PAC.

bad faith.  Even if Dr. Isaacs had made such an assertion, the Court would be

empowered to disregard such an allegation in the present context—Dr. Isaacs'

allegations must show an entitlement to relief that is "plausible," which is to say that he

is required to allege facts which make the Trustees of Dartmouth College's liability more

than speculative.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.

2011).  He cannot rely on threadbare, conclusory statements to the effect that Dr. Finn's

conduct was wrongful to show that her alleged act of supplying publicly-available

records to the Board of Medicine without the explanation he believes was warranted

constituted "bad faith."  See id.

     C—Dr. Isaacs' ADA Retaliation Claims are Either Barred by his Failure to
Exhaust Administrative Remedies or, Alternatively, By the Fact That the Trustees of
Dartmouth College Are Not Properly Alleged to be a Public Entity Subject to Title II of
the ADA.

     Dr. Isaacs does not allege that he has filed an administrative claim as would be

required for an employment-based retaliation claim, nor has he alleged that the

Trustees of Dartmouth College are a "public entity" as would be required to make out an

"public services" ADA retaliation claim.  The anti-retaliation provision of the Americans

with Disabilities Act, 42 U.S.C. § 12203, makes clear that retaliation claims are subject

to the procedures and remedies available under 42 U.S.C. § 12117 if the claims arise

under subchapter I, Employment (42 U.S.C. §§ 12111-12117); those available under 42

U.S.C. § 12133 if the claims arise under subchapter II, Public Services, (42 U.S.C. §§

12131 through 12165); and those available under 42 U.S.C. § 12188 if the claims arise

under subchapter III, Public Accommodations and Services Operated by Private Entities

(42 U.S.C. §§ 12181-12189).  From the PAC, it appears that Dr. Isaacs asserts claims

under subchapters I and II.

Dr. Isaacs claims that the "Dartmouth Defendants" retaliated against him by declining to readmit him to the residency program from which he was fired from for incompetence and dishonesty in 2012.  PAC at ¶ 146.  He also seems to allege that the "Dartmouth Defendants" somehow "pressure[d]" the Board of Medicine to exclude him from the February 5, 2014 adjudicatory hearing that he failed to attend or postpone according to the Board's rules.  PAC at ¶ 138; see also Exh. B at 3 (Dr. Isaacs failed to comply with Board of Medicine procedures for requesting a continuance of properly-noticed hearing schedule several months prior to request).

The first claim is the easiest one to dispose of—Dr. Isaacs appears to be alleging employment discrimination, yet nowhere in his complaint does he allege that he has made a complaint to the New Hampshire Commission for Human Rights or Equal Employment Opportunity Commission, as would be required for him to succeed on a Title-I based retaliation claim.  See, e.g., 42 U.S.C. § 2000e-5(f)(1); Isaacs I, Doc. 151 at 25; Faulkner v. Dartmouth-Hitchcock Medical Center, 2015 DNH 157, 2015 WL 4759425, at *6 (Aug. 12, 2015).

Dr. Isaacs also seems to make a claim pursuant to subchapter II of the ADA, relating to Dartmouth's alleged involvement with the Board of Medicine's investigation in 2014.  PAC at ¶ 138.  This claim must also fail—the Trustees of Dartmouth College is not a "public entity" subject to subchapter II of the ADA.  As is relevant here, "public entities" include "any State or local government[,]" or "any department, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131(1).  Dr. Isaacs has not alleged that the Trustees of Dartmouth College qualifies as a state or local government, nor has he alleged facts that allow the conclusion that

the Trustees of Dartmouth College could properly be considered an "instrumentality" of either the State or any local government.  The only paragraphs of the PAC that would even tend to support such a conclusion are conclusory statements of law, not factual allegations entitled to deference in the Court's analysis.  See, e.g., ¶¶ 111, 123, 132. To the extent Dr. Isaacs' retaliation complaint arises under Title II of the ADA, it is fatally deficient because there is no allegation that would support the legal conclusion that Title II applies to the Trustees of Dartmouth College.

   D—Dr. Isaacs' Proposed Amended Complaint Contains no Non-Conclusory Allegations Sufficient to State a Claim that The Trustees of Dartmouth College is a State Actor Subject to Suit Under 42 U.S.C. §§ 1983 or 1985.

   Dr. Isaacs brings claims under the Fifth Amendment, and 42 U.S.C. §§ 1983 and 1985.  Such claims only lie against state actors.  See Klunder v. Brown University, 778 F.3d 24, 31-32 (1st Cir. 2015) (citing Trustees of Dartmouth College v. Woodward, 17 U.S. 518 (1819)).  Dr. Isaacs parrots the legal standard employed by Courts to determine if a private entity is a "state actor" pursuant to the "public function" test, the "joint action" test, and the "nexus test."  PAC at ¶¶ 104-106.  In spite of these legal conclusions in the PAC, which the Court is free to disregard, Dr. Isaacs offers no facts that would allow the Court to conclude that any of these tests plausibly apply.

   To trigger the "public function" test, the private actor must be performing a function "that has been 'traditionally the exclusive prerogative of the State.'"  Klunder, 778 F.3d at 31 (quotation omitted).  Dr. Isaacs' factual support for his "public function" claim is that the Trustees of Dartmouth College "train[] and investigat[e] young doctors." PAC at ¶ 104.  This is not the type of function that has traditionally been the exclusive prerogative of the State.  Indeed, Dr. Isaacs has specifically alleged that DHMC, Mary

Hitchcock Memorial Hospital, and the Trustees of Dartmouth College, all private entities, each had a role in training medical residents, which defeats his claim that this was a "public function." Id. at ¶¶ 12-13. Although it is the State's prerogative to license and accredit physicians, their training could hardly ever be claimed to be a state function.

Dr. Isaacs' "joint action" and "nexus" claims fare no better. State action will be found under these tests "where the government has 'so far insinuated itself into a position of interdependence with the private actor that it was a joint participant in the enterprise.'" Bass v. Packwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999) (brackets omitted). The Bass court noted that a "private citizen or hospital does not become a state actor by participating in the civil commitment of a mentally ill individual," and cited several cases to this effect. Id. at 243. There is no meaningful reason why participating in a Board of Medicine investigation (which is statutorily required, RSA 329:17, IV) should convert a private entity into a "state actor" where the use of civil commitment proceedings to deprive individuals of their freedom does not do so. Dr. Isaacs' allegations, when stripped bare of the mere conclusions of law that pervade the PAC, simply do not give rise to a plausible claim for relief as against the Trustees of Dartmouth College, which is not a state actor and whose action is not state action under any theory.

For all of the reasons set forth above, Dr. Isaacs' Proposed Amended Complaint fails to set forth sufficient facts to raise his right to relief as against the Trustees of Dartmouth College beyond the level of mere speculation. Where Dr. Isaacs sought leave to amend rather than simply amending as of right, the Court should exercise its discretion to deny the motion for leave to amend.

Respectfully submitted,

THE TRUSTEES OF DARTMOUTH
COLLEGE

By its attorneys,

WADLEIGH, STARR & PETERS,
P.L.L.C.

Dated: May 15, 2017          By /s/ Pierre A. Chabot
                             Kathleen C. Peahl – Bar No.6880
                             Pierre A. Chabot – Bar No. 17606
                             95 Market Street
                             Manchester, NH   03101
                             (603)669-4140
                             kpeahl@wadleighlaw.com
                             pchabot@wadleighlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2017, I electronically transmitted the

foregoing document to the Clerk's Office using the CM/ECF System for filing and Notice

of Electronic Filing on all counsel of record.

                             /s/ Pierre A. Chabot
                             Pierre A. Chabot