UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Dr. Jeffrey Isaacs, § | |
|     *Plaintiff,* § | |
| § | |
| v. § | |
| § | Case No. 1:17-CV-00040-LM |
| Dartmouth-Hitchcock Medical Center, § | |
| Trustees of Dartmouth College & § | |
| NH Board of Medicine § | |
|     *Defendants.* | |

### DEFENDANT DARTMOUTH-HITCHCOCK MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Dartmouth-Hitchcock Medical Center ("DHMC"), by and through its counsel, Sulloway & Hollis, P.L.L.C., submits this memorandum of law in support of its motion to dismiss plaintiff's Complaint.[1] Dr. Isaacs' claims must be dismissed because they are barred by res judicata. As demonstrated herein, this Court already has held that Dr. Isaacs was lawfully dismissed from the subject medical residency program due to his poor performance in the program as well as his omissions in his application. As such, Dr. Isaacs may not relitigate the propriety of his dismissal or base claims on the fact that his dismissal may have had further consequences as concerns his resident training license and the New Hampshire Board of Medicine and any subsequent application to the residency program. Moreover, for the reasons set forth herein, Dr. Isaacs also fails to state claims against DHMC upon which relief can be granted.

---

[1] Dr. Isaacs filed a motion seeking leave to file an amended complaint on May 1, 2017. Doc. 14. Dr. Isaacs' motion has not yet been granted or denied. Because the motion to amend is still pending, and because the Amended Complaint raises no new claims against DHMC, this motion requests that Dr. Isaacs' Complaint and/or Amended Complaint be dismissed.

Case 1:17-cv-00040-LM   Document 22-1   Filed 05/16/17   Page 2 of 20

BACKGROUND FACTS

The following facts are derived from the Complaint [Doc. 1] or from this Court's prior order granting DHMC, among other defendants, summary judgment on claims brought by Dr. Isaacs. *Isaacs v. Dartmouth-Hitchcock Medical Center*, 2014 DNH 86; 2014 U.S. Dist. LEXIS 54183 (D.N.H. April 18, 2014). *See Wittich v. Wittich*, 2006 U.S. Dist. LEXIS 86845, *5 (E.D.N.Y. Nov. 29, 2006) ("[J]udical notice of the relevant pleadings, orders and judgements in the prior action" may be taken "when reviewing a motion to dismiss under the doctrines of *res judicata* or collateral estoppel").

Dr. Isaacs attended medical school at the University of Southern California ("USC") in 2005 and 2006. *Id.* at *5. During his first year, he was suspended and ultimately dismissed for harassing a classmate. *Id.* In September 2009, Dr. Isaacs submitted an Electronic Residency Application Service ("ERAS") application to the University of Arizona ("UA") Department of Surgery, in which he omitted his attendance at USC from a listing of his medical education. *Id*. Based upon that application, he was offered a residency in general surgery at UA. *Id*. Dr. Isaacs started his UA residency in July 2010, but resigned after a short period of time after being issued a Notice of Deficiency and being notified that he would be put on probation. *Id*. at **5-6.

In September of 2010, Dr. Isaacs submitted an ERAS application to Dartmouth-Hitchcock.[2] *Id*. at *7. In that application, he omitted both his attendance at USC and his residency at UA. *Id.* Based upon this application, he was offered admission to a residency program in psychiatry. *Id.* In connection with accepting this offer, Dr. Isaacs stated, among

---

[2]The Court's April 2014 order makes reference to "Dartmouth-Hitchcock." In actuality, in April 2011, Dr. Isaacs and Mary Hitchcock Memorial Hospital ("MHMH") entered into a "Resident Agreement of Appointment" for his graduate training as a psychiatry resident. MHMH is a teaching hospital located in Lebanon, New Hampshire that sponsors medical residency programs. Notwithstanding, for purposes of this motion *only*, it is assumed that DHMC is a proper party to this action.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

-2-

{C1574939.2 }

other things, that he had never "voluntarily resigned or withdrawn from any hospital or licensed facility due to professional misconduct, incompetence or negligence." *Id*. He also agreed to the following condition of employment:

> Misrepresentation or omission of material information from my employment application, my C.V., or other documents related to my application, may result in rejection of my application or, if I am hired, termination of my employment.

*Id*. Dr. Isaacs began his residency on June 26, 2011. *Id*. at *10. Within days, concerns regarding his ability to handle the work arose and in mid-September, he was placed on a Performance Improvement Plan. *Id*. at **10-11. Shortly after beginning his second rotation in January 2012, he was placed on administrative leave. *Id*. at *12. Dr. Isaacs was dismissed from the residency program by letter dated March 19, 2012, based upon academic concerns as well as his omissions in his applications.[3] *Id.*; *Complaint* at ¶ 95.

In February 2012, before he was dismissed from the residency program, Dr. Isaacs filed a complaint in federal court against DHMC, among other defendants. *Isaacs*, 2014 U.S. Dist. LEXIS 54183 at *15. He filed another complaint in October 2012, which was consolidated with his first complaint. *Id*. Dr. Isaacs then filed an amended complaint in February 2013, which took the place of both 2012 complaints. *Id*. This complaint brought claims of: (1) violation of the ADA; (2) wrongful termination; (3) violation of RSA 354-A; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) negligent misrepresentation; (7) violation of Section 504 of the Rehabilitation Act; (8) fraud; (9) intentional infliction of

---

[3]In March 2012, the New Hampshire Board of Medicine "commenced an investigation to determine whether [Dr. Isaacs] committed professional misconduct pursuant to RSA 329:17, VI and 329:18" in connection with his May 2011 application for a resident training license. *See* Doc. 20-2 ("Final Decision and Order" of New Hampshire Board of Medicine). This investigation continued into 2013. *Id.* By Final Decision and Order dated March 11, 2014, the Board of Medicine determined that Dr. Isaacs had provided false information on his May 2011 application. Although the Board found that it need not take action on Dr. Isaacs' training license because it had been "revoked" or "canceled by operation of law" as of the date of his termination from the residency program, it nonetheless reprimanded him. *Id.*

emotional distress; and (10) negligent infliction of emotional distress. *Id*. All the claims related to Dr. Isaacs' residency and his dismissal from the residency program.[4]

By Order dated April 18, 2014, this Court granted summary judgment in favor of all defendants on all counts in the February 2013 Amended Complaint. The Court determined that DHMC was entitled to summary judgment on the ADA claims because Dr. Isaacs had not made a proper request for an accommodation, was not qualified for a certain program, had otherwise suffered no adverse employment action, and DHMC had legitimate, non-discriminatory reasons for any close scrutiny of his performance. Order at 16-22. This Court also found insufficient evidence of retaliation. *Id*. at 23. For the same reasons, the Court rejected Dr. Isaacs' claims under the Rehabilitation Act. *Id*. at 38.

The Court also granted summary judgment in favor of DHMC with respect to Dr. Isaacs' wrongful discharge claim because he "produced no evidence to create a triable issue of fact on the reasons for his discharge" and "there is no public policy that would encourage a medical resident to perform his duties poorly, or misrepresent his educational background when applying for a residency." *Id*. at 27-28. For the same reason, the Court also granted summary judgment in

---

[4] Dr. Isaacs filed a related complaint in Pennsylvania federal court in September 2013. In November 2013, Dr. Isaacs filed an amended complaint against the Trustees of Dartmouth College, the New Hampshire Board of Medicine, MHMH and others. The claims were related to Dr. Isaacs' "residency application" and actions/proceedings undertaken in connection with the same. The claims included conspiracy related to the disclosure of information about his prior attendance at a "California medical school" and "false performance criticisms" during his medical residency (Count 1); intentional infliction of emotional distress (Count 2); breach of contract regarding the Trustees and MHMH's offer of a "late fair hearing" (Count 3); civil obstruction of justice relating to the alleged deletion of certain emails (Count 4); and a request that the Board of Medicine be enjoined from taking adverse action against Dr. Isaacs concerning his "licensure application" and for MHMH to "retract their letter dismissing" Dr. Isaacs (Count 5). By order dated August 25, 2014, Dr. Isaacs' claims were dismissed. *Isaacs v. Trustees of Dartmouth College*, 2014 U.S. Dist. LEXIS 118046 (E.D. Pa. Aug. 25, 2014). The dismissal was affirmed by the United States Court of Appeals for the Third Circuit in April 2015. *Isaacs v. Arizona Board of Regents*, 608 Fed. Appx. 70; 2015 U.S. App. LEXIS 5576 (3rd Cir. April 7, 2015).

favor of DHMC with respect to the breach of the covenant of good faith and fair dealing claim. *Id*. at 34. In reaching this conclusion, the Court ruled, as a matter of law, that Dr. Isaacs was discharged from his residency for the reasons stated in his dismissal letter – his poor performance and dishonesty in his application to the program. *Id*. at 27.

DHMC was also granted summary judgment with respect to Dr. Isaacs' RSA 354-A claims because no complaint was filed with the New Hampshire Commission for Human Rights. *Id*. at 29. As to his breach of contract claim, the Court found that there was no evidence of any promise made to Dr. Isaacs that DHMC failed to perform. *Id*. at 31-32. This Court also rejected Dr. Isaacs' negligent misrepresentation claim, and ruled that there was "no evidence that Dr. Isaacs relied, to his detriment, on any of the statements the form the basis of his fraud claim." *Id*. at 55. Finally, the Court granted summary judgment in favor of defendants with respect to Dr. Isaacs' emotional distress claims because there was no evidence that defendants were conducting secret experiments on him with the purpose of driving him out of an academic program and for lack of supporting expert testimony. *Id*. at 58, 60-61.

The United States Court of Appeals for the First Circuit affirmed the Court's grant of summary judgment in January 2015. Thereafter, the United States Supreme Court denied Dr. Isaacs' petition for writ of certiorari.

In February 2017, Dr. Isaacs filed the complaint at issue in this action. His claims relate to his 2010 application for a medical residency, his 2011-12 medical residency, his 2012 dismissal from the residency program, and actions taken by the New Hampshire Board of Medicine related to the same. Specifically, Dr. Isaacs brings several claims against DHMC, including: Fifth Amendment due process violation (Count II); violation of 42 U.S.C. § 1983

(Count III); violation of 42 U.S.C. § 1985(3) (Count IV); violation of Title IX (Count V); ADA and Title IX retaliation (Count VII); and a claim seeking injunctive relief (Count VIII).

Dr. Isaacs filed a motion to amend his Complaint and proposed Amended Complaint on May 1, 2017.  Doc. 14, 14-1.  The Court has not yet ruled on the motion.  The Amended Complaint does not bring any additional claims against DHMC, nor does it help Dr. Isaacs' claims survive a motion to dismiss.

## ARGUMENT

1. Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must make factual allegations sufficient to state a claim to relief that is plausible on its face."  *Katz v. McVeigh*, 931 F.Supp.2d 311, 320 (D.N.H. 2013) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor."  *Katz*, 931 F.Supp.2d at 320.  "This indulgence does not extend, however, to statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action, which are disregarded."  *Id.* (*citing Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)).

When ruling on a motion to dismiss under Rule 12(b)(6), the court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."  *Katz*, 931 F.Supp.2d at 320.  This includes documents from prior court adjudications.  *Id.  See Wittich*, 2006 U.S. Dist. LEXIS 86845 at *5 ("[J]udical notice of the relevant pleadings, orders and judgements in the prior action" may be taken "when reviewing a motion to dismiss under the doctrines of *res*

*judicata* or collateral estoppel"). "To the extent the plaintiffs' allegations of what happened in those proceedings are at odds with the records, moreover, the court is not required to accept the plaintiffs' version." *Katz*, 931 F.Supp.2d at 320; *see Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 n.4 (1st Cir. 2009) (noting that, even in ruling on motions to dismiss, "courts need not accept facts which have since been conclusively contradicted").

Res judicata "can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008) (quotation omitted).

2. <u>Dr. Isaacs' Claims Are Barred By Res Judicata.</u>

The claims against DHMC must be dismissed because they already have been litigated and decided by this Court, and thus are barred by the doctrine of res judicata. *See Isaacs v. Dartmouth-Hitchcock Medical Center*, 2014 U.S. Dist. LEXIS 54183 (D.N.H. April 18, 2014). "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotes omitted). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id*. (quotation omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. (quotation omitted). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and

vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id*. (quotations and brackets omitted).

Here, Dr. Isaacs' Complaint is barred by both claim and issue preclusion. Under the federal standard, "[r]es judicata or claim preclusion prevents a party from relitigating claims that were or could have been brought in a prior action." *Furlong v. Garland*, 2011 U.S. Dist. LEXIS 39287, *8 (D.N.H. 2011). "The application of res judicata requires (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Id.* (quotation omitted). This Court's 2014 Order granting summary judgment to DHMC is a final judgment on the merits and was between the same parties as in the present action. The allegations/cause of action are also the same as in the earlier suit. "Cloaking these same allegations in a new legal theory by adding" new causes of action cannot save Dr. Isaacs from this Court's prior order in favor of DHMC. *Havercombe v. Dep't of Educ. of the Commonwealth*, 250 F.3d 1, 3 (1st Cir. 2001). The First Circuit has stated that a "single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." *Id*. at 3-4. "As long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for res judicata purposes." *Id*. at 4.

Dr. Isaacs attempts to distinguish his claims by arguing that the instant suit is based upon acts that occurred after the first litigation, but this is untrue. His claims of violations of the Fifth Amendment, 42 U.S.C. § 1983, § 1985(3), and Title IV, are all based upon allegations that DHMC failed to investigate incidents that occurred while he was in the residency program, or

that he was not granted a hearing upon his termination. *See Complaint* at ¶¶ 158, 160-162, 170, 173, 178, 192. Because Dr. Isaacs' current claims relate directly to his residency and his dismissal, they could have been brought in the earlier suit. His claims arise from the same transaction and, thus, are barred by res judicata. This Court has already analyzed the facts and events surrounding Dr. Isaacs' residency and dismissal and ruled in favor of DHMC on Dr. Isaacs' claims. It need not do so again.

The doctrine of issue preclusion also bars Dr. Isaacs' action. The factual and legal issues in this case, which Dr. Isaacs had a full and fair opportunity to litigate, were previously decided by this Court's 2014 Order. Although Dr. Isaacs contends that his present action challenges actions taken after that order, he is ultimately still trying to litigate the facts and issues regarding his residency and his dismissal from the residency program. This Court has already addressed these facts and issues and has ruled as a matter of law that Dr. Isaacs was terminated due to his poor performance in the program as well as his omissions in his application. *Isaacs*, 2014 DNH 70 at 27.

Even assuming that Dr. Isaacs' claims do in fact challenge actions that occurred after these events and this Court's 2014 Order, his Complaint is still barred by issue preclusion because actions taken as part of Board of Medicine proceedings springing from his residency and termination, or from the act of not granting his application to re-join the program, are the same acts by the defendants and raise the same issues, which were already litigated and decided in favor of DHMC. "[A] plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff." *Ramallo Bros. Printing Inc. v. El Dia, Inc.*, 490 F.3d 86, 91-92 (1st Cir. 2007).

In *Ramallo*, the First Circuit held that a plaintiff's antitrust claim based on the defendant newspaper's latest refusal to carry inserts printed by the plaintiff was precluded by a decision upholding defendant's prior refusal to carry plaintiff's insert on the same grounds. *Id*. Similarly, in *Sutliffe v. Epping Sch. Dist*., 627 F. Supp. 2d 41, 56-57 (D.N.H. 2008), this Court found that a plaintiff's challenge to a report was barred by issue preclusion because a previous action had already resolved the propriety of a similar, earlier report. Although the plaintiff's second challenge was to a report that was issued *after* the first litigation, the issues involved were similar enough to be precluded. *Id*. The same is true in this case. Even though Dr. Isaacs alleges that he is challenging actions taken after the previous litigation occurred, the issues for both are similar enough that he must be precluded from litigating the same matter again. *Cf. id*. at 56 n. 16 ("There is no indication that the state courts' rulings depended on the particular nature of the statements in the 2004 report; as just mentioned, the case was resolved on the broader proposition that the report was a permissible exercise of a government's ability to use public monies to promote its own initiatives").

In short, this Court already has held that Dr. Isaacs was lawfully dismissed from the subject medical residency program due to his poor performance in the program as well as his omissions in his application. As such, Dr. Isaacs may not relitigate the propriety of his dismissal or base claims on the fact that the dismissal may have had further consequences as concerns his resident training license and the New Hampshire Board of Medicine and any subsequent applications to the residency program.

    3.    <u>Dr. Isaacs' Counts Against DHMC Fail To State Claims Upon Which Relief May Be Granted</u>

Even if Dr. Isaacs' claims were not barred by reds judicata, they are subject to dismissal for the following reasons:

      a.     *Fifth Amendment Due Process Violations (Count II)*[5]

Dr. Isaacs alleges that DHMC's actions violated his due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. This claim must fail because "[t]he protections of the Due Process Clauses in both the Fifth and Fourteenth Amendments apply only to the actions of federal and state government actors, respectively, and not private actors." *Boyle v. Brown Univ.*, 881 F. Supp. 747, 752 (D.R.I. 1995) (*citing Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 449 (1st Cir. 1983); *Johnson v. Educational Testing Service,* 754 F.2d 20, 23 (1st Cir.)). Dr. Isaacs does not allege that DHMC is a federal or state government actor. He alleges only that "there is extensive Government involvement in the training of medical interns that is sufficient for this Court to consider Dartmouth's actions State Action." *Complaint* at ¶ 145. Accepting Dr. Isaacs' allegation that the government is extensively involved in training residents as true, that is not enough to render DHMC a government actor. DHMC remains a private actor, to which the Fifth and Fourteenth Amendments do not apply.

Moreover, an allegation that "Dartmouth" relied on an "order" of a California federal court to "determine what occurred at Keck [School of Medicine]" or presented it to the New Hampshire Board of Medicine at some unspecified time does not satisfy the *Iqbal* and *Twombly* standard with respect to a due process claim. Furthermore, such claim also would be time-barred (see below). *See Sutliffe v. Epping School District*, 627 F.Supp.2d 41, 44 (D.N.H. 2008) (although statute of limitations is an affirmative defense, it "may be adjudicated on a motion to dismiss under Rule 12(b)(6)").

---

[5] Dr. Isaacs' Amended Complaint does not have a corresponding claim. As such, this should be deemed a voluntary dismissal of such claim, regardless of whether his motion to amend is granted or denied.

b. *42 U.S.C. § 1983 (Count III)*[6]

"[A] plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal constitutional or statutory right." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005). "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." *Id.* For defendants "to have acted under color of state law, their actions must be fairly attributable to the State." *Id.* (quotation omitted).

Here, any of the alleged actions of DHMC are not fairly attributable to the State. In his Complaint, Dr. Isaacs alleges that DHMC is a state actor because it receives government funds as part of training medical interns. *Complaint* at ¶¶ 154-157. In support of his contention, Dr. Isaacs cites *Bricker v. Sceva Speare Memorial Hospital*, 339 F. Supp. 234 (D.N.H. 1972). That case held that hospitals receiving federal funds may be deemed state actors because acceptance of such funds "is sufficient to cloak a private hospital and its medical staff with a mantle of state law." *Id.* at 237. The First Circuit has since held otherwise, however. In *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254 (1st Cir. 1994), the First Circuit found that "government regulation, even extensive regulation, and the receipt of federal funds . . . are insufficient to establish that a hospital or other entity acted under color of state law." *Id.* at 258 (*citing Mendez v. Belton*, 739 F.2d 15, 18 (1st Cir. 1984)); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-43 (1982) (private school that taught special needs children and received 90 percent of its funds from government and was extensively regulated was not a state actor within meaning of § 1983).

Courts have provided three tests for determining if a private entity qualifies as a state actor. Despite Dr. Isaacs' contentions in his Amended Complaint, DHMC does not qualify as a

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

---

[6]Count VI in Dr. Isaacs' Amended Complaint.

state actor under these tests. First, under the public function test "a private party is viewed as a state actor if a plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally the exclusive prerogative of the State." *Estades-Negroni*, 412 F.3d at 5 (quotation omitted). The First Circuit Court of Appeals has found only a very narrow range of activities to meet the "demanding criterion" of the public function test, such as "the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park." *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) (holding administration of youth basketball program not a traditional public function).

Dr. Isaacs alleges that DHMC provides a public function by training and investigating doctors and aiding in the approval or disapproval of their medical license. He does not establish, or allege, that DHMC performs a function that has traditionally been the exclusive prerogative of the state. Any allegation that Dr. Isaacs could make would be unlikely to meet the demanding criterion of the public function test.

Second, "[t]he nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." *Estades-Negroni*, 412 F.3d at 5 (quotation and brackets omitted). Here, Dr. Isaacs does not allege that the State has "so far insinuated itself" into the daily operations of the hospital. *See Estades-Negroni*, 412 F.3d at 6. As discussed above, the mere receipt of government money and the fact that DHMC may be regulated by the State is not enough to render it a state actor. Dr. Isaacs provides no further basis to support that there is a sufficient nexus or joint activity to consider DHMC a state actor.

Moreover, an allegation that Dr. Isaacs "was never granted a hearing at Dartmouth upon his termination" in 2012 and that it failed to investigate alleged hazing that occurred while he was a resident in 2011 and 2012 is plainly untimely. *See* RSA 508:4; *Buntin v. City of Boston*, 813 F.3d 401, 406 (1st Cir. 2015) (Section 1983 borrows state statutes of limitation for personal injury claims). Therefore, his ¶ 1983 claim against DHMC must be dismissed.[7]

    c.    *42 U.S.C. § 1985(3)(Count IV)*[8]

The First Circuit has held that a claim under § 1985(3) must contain four elements. "First, plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive him of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." *Perez-Sanchez v. Public Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). Under the second element, "[i]t has long been established that a claim under § 1985(3) requires some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (*citing Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). In other words, a plaintiff "must allege facts showing that the defendants conspired against him because of, not merely in spite of, its adverse effects upon an identifiable group." *Chamblin v. Town of Northwood*, 1995 U.S. Dist. LEXIS 6655, *29 (D.N.H., May 8, 1995).

---

[7] Dr. Isaacs' Amended Complaint alleges that somehow "Dartmouth … took over the Board [of Medicine] and used it to deprive him of his livelihood" by relying on "out of state and inaccurate settlement documents," failing to consider documents he provided, failing to grant him a continuance due to inclement weather, and failing to grant his request to participate electronically at the Board's hearing. Amended Complaint, ¶¶ 104, 111. The hard to believe conclusory allegation of "Dartmouth" taking over the New Hampshire Board of Medicine does not satisfy the *Iqbal* and *Twombly* standard. It should also be noted that the New Hampshire Supreme Court rejected Dr. Isaacs' appeal of the Board's decision [Doc. 20-3], which should preclude his proposed amended § 1983 claim. *See Wang v. New Hampshire Board of Medicine*, 55 F.3d 698 (1st Cir. 1995).

[8] Count VII in Dr. Isaacs' Amended Complaint.

Here, Dr. Isaacs does not allege any class-based discriminatory animus or that the defendants were motivated by such an animus. He vaguely alleges that the defendants conspired to deprive him of equal protection under the law by not investigating his claims and not allowing him to present evidence or testimony. *Complaint* ¶¶ 170, 172-176. Nothing in his complaint suggest that any alleged acts by DHMC were discriminatory against a class, nor does the complaint allege that any actions were because of his belonging to a certain class or group. In fact, the complaint does not proffer any motivation at all for DHMC alleged acts.

Moreover, a mere allegation that "Defendants conspired in their failures to allow the Plaintiff to present evidence or testimony and in their failure to properly investigate the Plaintiff's claims" (Complaint, ¶ 173) does not satisfy the *Iqbal* and *Twombly* standard. The complaint states only "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" which *Twombly* held insufficient.[9] 550 U.S. at 555. For all these reasons, Dr. Isaacs' § 1985(3) claim fails and should be dismissed.

d. *Title IX (Count V)*[10]

Title IX provides, in relevant part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Dr. Isaacs alleges a violation of Title IX based upon an alleged incident in June 2011 during which a physician asked him to perform a digital rectal examination on a patient, which Dr. Isaacs claims was medically unnecessary. *Complaint* at ¶¶ 179-183. Dr. Isaacs claims that DHMC did not act

---

[9] Dr. Isaacs' proposed amended § 1985(3) claim is similarly deficient.

[10] Dr. Isaacs' Amended Complaint does not have a corresponding claim. As such, this should be deemed a voluntary dismissal of such claim, regardless of whether his motion to amend is granted or denied.

his request for to investigate the incident, but alleges that DHMC would have investigated the matter if he were a female intern. *Id*. at ¶¶ 192-194. Therefore, he alleges that he was discriminated against on the basis of sex in violation of Title IX. *Id*. at ¶ 194.

"In order to show a violation of Title IX, Plaintiff must ultimately demonstrate that the defendant discriminated against him or her *because of sex;* that the discrimination was intentional; and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions." *Doe v. W. New Eng. Univ.*, 2016 U.S. Dist. LEXIS 181656, *64 (D. Mass. Aug. 31, 2016) (quotations omitted). Here, Dr. Isaacs has failed to show a violation of Title IX. He alleges only that similar complaints by a female intern "would have been treated much more seriously." *Complaint* at ¶ 193. An allegation that a different complaint might have been treated differently does not show that Dr. Isaacs was discriminated against because of sex. Further, Dr. Isaacs does not allege that the discrimination was intentional or that it was a motivating or substantial factor in DHMC's alleged decision to not investigate the incident.

Furthermore, any Title IX claim related to events occurring during his medical residency that ended in March 2012 would be untimely. In this regard, New Hampshire's three-year statute of limitations for personal injury actions (RSA 508:4) would apply to Dr. Isaacs' Title IX claim. *See Doe v. Town of Bourne*, 2004 U.S. Dist. LEXIS 10021, *37 (D. Mass. May 28, 2004). The fact that Dr. Isaacs may have sent Dartmouth College an email on April 20, 2014 to "once again" urge an investigation of his claim (Complaint, Exhibit C), does not change this result.[11]

---

[11] *See* Complaint, Exhibit C (April 20, 2014 email "once again" urging an investigation and Exhibit J (February 6, 2012 email asking for an investigation).

e.  *ADA/Title IX Retaliation (Count VII)*[12]

After his dismissal from the program, Dr. Isaacs alleges that re-applied to the residency program again in 2013, 2014, 2015, and 2016.[13] *Complaint* at ¶ 203. Dr. Isaacs alleges that "Dartmouth" rejected his applications and did not interview him for a position. *Id*. at ¶¶ 205-206. Dr. Isaacs alleges that "the only explanation for Dartmouth's failure to interview is because they didn't want to interview someone who had filed ADA and/or Title IX claims." *Id.* at ¶ 210. These allegations do not satisfy the *Iqbal* and *Twombly* standard. The complaint states only "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" which *Twombly* held insufficient. 550 U.S. at 555.

Moreover, Dr. Isaacs' claim fails because he has not shown that DHMC had a retaliatory motive or that there was a causal connection because any of Dr. Isaacs' alleged protected activity and the actions of DHMC. To state a prima facie case for Title IX retaliation, a plaintiff must allege facts sufficient to show that (1) he engaged in activity protected by Title IX, (2) that the alleged retaliator knew of the protected activity, (3) that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and (4) that a retaliatory motive played a substantial part in prompting the adverse action. *Tveter v. Derry Coop. Sch. Dist. SAU # 10*, 2017 U.S. Dist. LEXIS 73516, *21-22 (D.N.H. April 25, 2017).

Similarly, to make out a prima facie retaliation claim under the ADA, Dr. Isaacs must show that: (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004).

---

[12]Count VIII in Dr. Isaacs' Amended Complaint.

[13]Dr. Isaacs alleges that he applied for a "federal residency at DHMC in 2013, 2014, 2015, and 2016." Complaint, ¶ 203; Amended Complaint, ¶ 141. It is assumed that he means that he applied for a *medical* residency.

Once Dr. Isaacs has made a prima facie showing of retaliation, the defendant "must articulate a legitimate, non-retaliatory reason for its employment decision." *Id.* at 26. If the defendant meets this burden, Dr. Isaacs must show that the proffered legitimate reason is pretextual and that "the job action was the result of the defendant's retaliatory animus." *Id.*

First, Dr. Isaacs fails to show that he engaged in protected activity under the statutes. He did not file a Title IX claim in his prior actions against DHMC. He brings such a claim in the current action. However, because this action was not brought until February 2017, he had not engaged in protected conduct at the time of the applications referenced in his Complaint. Although he did bring an ADA claim in his prior action, that claim was dismissed by this Court for failure to make a prima facie case.

Second, Dr. Isaacs fails to show that DHMC had a motive to retaliate against him for a Title IX claim or that this motive was a substantial driver of DHMC's actions. He likewise fails to show that there was a causal connection between any ADA activity on his part and the actions of DHMC. In fact, as this Court's prior decision demonstrates, DHMC had plenty of non-retaliatory reasons for not accepting an application from Dr. Isaacs for a residency. Namely, DHMC had concerns about Dr. Isaacs' competence, performance, and his conduct in lying on his initial application to DHMC. Thus, even if Dr. Isaacs could make out a prima facie case for retaliation under the ADA, DHMC could easily meet its burden to show a non-retaliatory reason for its actions. Because Dr. Isaacs fails to state a claim for retaliation under the ADA or Title IX, his claim against DHMC should be dismissed.

Finally, there is no allegation or evidence that Dr. Isaacs filed an administrative charge with respect to his retaliation claim under the ADA, and, therefore, exhausted his administrative remedies. *See Isaacs*, 2014 U.S. Dist. LEXIS 54183 at *30. While, in 2001, the First Circuit

stated that retaliation claims may be preserved if they are reasonably related to and arise out of the discrimination complained of to the agency, when the retaliation is for the filing of the agency complaint itself, *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1 (1st Cir. 2001), in the wake of *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), courts have concluded that plaintiffs must file an amended or new charge for discrete acts of retaliation occurring after their initial charge has been filed. *See Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003). As such, Dr. Isaacs may not rely on his May 2012 charge of discrimination to excuse his failure to file an administrative charge concerning alleged retaliation in connection with any denied applications to the residency program in 2013, 2014, 2015 and 2016.

  f. *Injunctive Relief (Count VIII)*[14]

Dr. Isaacs' claim for injunctive relief must also be dismissed because he is unlikely to succeed in the above claims against DHMC.

## CONCLUSION

Dr. Isaacs' claims against DHMC, whether taken from his Complaint or Amended Complaint, must be dismissed because he fails to state claims against DHMC upon which relief can be granted and because the same claims and issues have previously been litigated and decided in favor of DHMC.

---

[14]Count IX in Dr. Isaacs' Amended Complaint.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

-19-

{C1574939.2 }

                Respectfully submitted,

                DARTMOUTH HITCHCOCK MEDICAL CENTER

                By Its Attorneys,
                SULLOWAY & HOLLIS, P.L.L.C.

DATED:  May 16, 2017        By:   /s/ William D. Pandolph, Esq.
                William D. Pandolph, Esq.
                9 Capitol Street
                Concord, NH 03302
                (603) 224-2341
                email:  wpandolph@sulloway.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent and paper copies will be sent to those indicated as non-registered participants on May 16, 2017.

DATED:  May 16, 2017        By:   /s/ William D. Pandolph
                William D. Pandolph, Esq.