UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEFFREY ISAACS, M.D.,          )
                               )
          Plaintiff,           )          Civil No. _____
     v.                        )
                               )
UNITED STATES DEPARTMENT )
OF EDUCATION,                  )
                               )
          Defendant.           )
                               )

## COMPLAINT FOR INJUNCTIVE RELIEF

### INTRODUCTION

1.       In 2014, Plaintiff, Jeffrey Isaacs, M.D. ("Dr. Isaacs"), sought an investigation into activities surrounding his short-lived experience as a resident at the Dartmouth Hitchcock Medical Center ("Dartmouth Hitchcock"). Dr. Isaacs traveled a long road to his residency at Dartmouth Hitchcock, having endured difficult circumstances before successfully completing his medical education at the American University of the Caribbean and receiving a score in the top decile on the difficult Part 1 of the United States Medical Licensure Examination.

2.       Unfortunately, Dr. Isaacs' experience at Dartmouth Hitchcock involved supervisor harassment and abusive treatment, all stemming, upon information and belief, at least partially from a retaliation claim made against the Keck School of Medicine of the University of Southern California ("Keck") relating to a head injury originally suffered as an undergraduate student at Dartmouth College. Dr. Isaacs settled the matter following litigation, and, as an integral part of the settlement agreement, the related papers were sealed.

3.      Nevertheless, Dartmouth Hitchcock apparently learned of the circumstances of Dr. Isaacs' experience at Keck despite the papers being sealed.  Setting aside any impropriety that may have occurred to obtain such access, Dartmouth Hitchcock officials and supervising physicians reacted with a pattern of mistreatment and abuse of Dr. Isaacs from the first day of his residency.  This treatment included meritless (and later withdrawn) allegations that Dr. Isaacs lacked appropriate medical training, directions to perform repeated uncomfortable and unnecessary tests, and a failure to acknowledge or take seriously physical conditions arising out of his fragile and impaired health.  Dartmouth Hitchcock ultimately terminated Dr. Isaacs without adequate cause or due process.

4.      Dr. Isaacs eventually filed legal actions against Dartmouth Hitchock and Dartmouth, representing himself at significant cost.  He learned of additional facts through these lawsuits, including that his computer files and medical records had been destroyed.

5.      Most relevant to this action, Dr. Isaacs also requested that the United States Department of Education, Office of Civil Rights ("OCR"), investigate the circumstances of his residency and termination at Dartmouth Hitchcock.  On April 19, 2014, Dr. Isaacs submitted a request for investigation to OCR's Boston, Massachusetts office, describing his treatment at Dartmouth Hitchcock as well as the court cases he had filed seeking relief from his treatment and termination.  OCR denied this request on October 17, 2014, based upon a purported failure to submit the complaint within the applicable limitations period.  Dr. Isaacs filed an appeal of this determination on November 5, 2014, with additional support being offered on December 12, 2014.  To date, OCR has not acted upon Dr. Isaacs' appeal.  Dr. Isaacs files this action to require the agency to reach a legally and factually supported decision.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal question jurisdiction), and 5 U.S.C. § 702, (the Administrative Procedure Act).

7.      Venue is appropriate pursuant to 28 U.S.C. § 1391(e) because, at the very least, a substantial part of the events and omissions giving rise to this action occurred in this district.

## PARTIES

8.      Plaintiff Dr. Isaacs is located at 3553 West Chester Pike, Unit 177, Newtown Square, Pennsylvania 19073. Dr. Isaacs holds a Bachelor of Arts degree from Dartmouth College and a Masters in Business Administration from the Wharton School/Insead. Dr. Isaacs obtained a Doctor of Medicine degree from the American University of the Caribbean in 2010. Dr. Isaacs began a residency at Hitchcock in June 2011, and his superiors terminated him from the residency in March 2012.

9.      The United States Department of Education is an agency of the United States. The relevant office within the Department of Education, the OCR, is located at 5 Post Office Square, 8th Floor, Boston, Massachusetts 02109-3921. OCR's mission is to "ensure equal access to education and to promote educational excellence throughout the nation through vigorous enforcement of civil rights." https://www2.ed.gov/about/offices/list/ocr/aboutocr.html

## FACTS

10.      In 1997, as an undergraduate student at Dartmouth College, Dr. Isaacs suffered a head injury from an incident with an intoxicated student. The head injury lingered and caused what was then described as post-concussion syndrome. Shortly after it occurred, the head injury severely affected Dr. Isaacs' ability to pursue his pre-med curriculum. He dropped the most

3

difficult of his classes and focused instead on less rigorous schoolwork. Dr. Isaacs ultimately

obtained his degree, in computer science, without delay, as he had completed most of the CS

requirements prior to the head injury.

11.     Over the following several years, Dr. Isaacs, among other activities, obtained a

Masters in Business Administration. He also, over time, completed the pre-med curriculum

requirements that he had not finished at Dartmouth College.

12.     Dr. Isaacs enrolled in Keck in August 2005. An unfortunate series of

circumstances occurred during his first year there that ultimately led to his leaving that school.

These circumstances were characterized by Keck as "professionalism," rather than academic

deficiencies, in light of an allegation made by one of Dr. Isaacs's Keck classmates. Dr. Isaacs

informed the Keck Dean that the "unprofessional" behavior in all likelihood was irritability

and/or hypomania which stemmed from an adverse reaction to a medication he had re-started for

post-concussive syndrome. The Dean chose to ignore Isaacs's disability concern; Isaacs

believed that this omission was due to the Dean having received $30 million in National

Institutes of Health grant funding from the complaining classmate's father, a National Institute of

Health Director.

13.     Litigation ensued, and two court settlements eventually addressed the incidents

that occurred at Keck. The first settlement, which occurred in September 2007, sealed certain

Keck records relating to Dr. Isaacs. This confidentiality was the full consideration obtained by

Dr. Isaacs in the settlement. The second settlement, in 2008, "discharge[d] all contracts and

agreements" relating to Dr. Isaacs' time at Keck, including his enrollment there.

14.     In the meantime, Dr. Isaacs enrolled in the school of medicine at the American

University of the Caribbean and received his Medical Doctor degree in 2010. Dr. Isaacs was

4

highly successful at this institution, receiving honors from most of his competitive clinical medical student rotations, which included the Cleveland Clinic and Mount Sanai School of Medicine. His score on the United States Medical Licensing Examination exceeded that of the average neurosurgeon, his desired specialty.

15.     Later in 2010, Dr. Isaacs began a surgical program residency at the University of Arizona ("Arizona"). Unfortunately, by his third day at Arizona, he was described as being "far behind his peers" and lacking "technical ability." Dr. Isaacs experienced difficulties understanding these criticisms, as he had perfectly completed the only procedure, a sub-cuticular suture, that he had been required to perform. Dr. Isaacs voluntarily resigned at Arizona after he had worked there for approximately six weeks.

16.     Dr. Isaacs subsequently applied for a residency at Dartmouth Hitchcock, and that institution offered him a psychiatric residency position in March 2011. Dr. Isaacs's New Hire Packet contained multiple references to his tenure at Arizona. He began at Dartmouth Hitchcock in July 2011.

17.     From the first days of his residency, Dr. Isaacs was subject to mistreatment and abuse. Superiors and attending physicians criticized his every move and described him as having "incapacitating anxiety." Dr. Isaacs spent much of his first week on an internal medicine rotation, and, during this time, his superior ordered him to perform two unnecessary prostate examinations, one of which was on a 90-year old individual with terminal cancer. This direction appeared to be part of a pattern of treating Dr. Isaacs differently from other residents; Dartmouth has never officially responded to, or investigated, this allegation.

18.     Dr. Isaacs received predominantly positive reviews of his performance during the the vast majority of residency time he spent in psychiatry rotations. Nevertheless, the stress of

being placed on probation soon after starting at Dartmouth Hitchcock and suffering criticism from superiors and attending doctors led to the development of significant health problems. Despite previously functioning effectively through 30-hour rotations, Dr. Isaacs became unable to stay awake for more than three hours at a time. Implicitly recognizing this significant condition, the Dartmouth Hitchcock psychiatry department attempted to evaluate his condition during his residency through testing, ultimately to no avail.

19.     Dr. Isaacs requested accommodations for his severe sleep disorder during his residency, including on several occasions requesting a finite period of medical leave in order to recuperate and further evaluate his condition. His superiors repeatedly denied these requests.

20.     Dr. Isaacs' sleep condition constituted a "physical . . . impairment which substantially limit[ed] one or more major life activities," as those terms are described in the regulations implementing Section 504 of the Rehabilitation Act of 1973.  34 C.F.R. § 104.3(j)(1). This law is designed to preclude discrimination based on handicaps in federally funded programs. Dr. Isaacs's requests for medical leave fell within the guidelines describing "reasonable accommodations" under Section 504-related regulations. *See* 34 C.F.R. § 104.12.

21.     Dr. Isaacs' residency began to reach its end in January 2012, when his superior accused him of concealing his time at Arizona from Dartmouth Hitchcock. This accusation occurred despite the Arizona disclosure in Dr. Isaacs' New Hire packet. This unfounded accusation, combined with everything that had already transpired, drove Dr. Isaacs to the Emergency Room with a psychological crisis. Dr. Isaacs later discovered that within days of this event, Dartmouth Hitchcock deleted both his email account and the test results relating to the evaluation of his sleep condition.

22.    On March 19, 2012, Dartmouth Hitchcock issued a termination letter to Dr. Isaacs. The letter purportedly based his termination, in part, on the unfounded failure to disclose Dr. Isaacs' tenure at Arizona. The termination occurred without any of the administrative procedures established by Dartmouth policies. Specifically, Isaacs was terminated without any probation or fair hearing, termination elements required by Dartmouth Hitchcock bylaws.

23.    Dr. Isaacs repeatedly attempted to have Dartmouth investigate his claims. Beginning in 2012, his attempts were met with obfuscations and denials, seemingly each time based upon a different purported justification. Marc Bertrand, GME Dean, promised Dr. Isaacs a hearing in 2013 that was rescheduled several times, until Attorney Edward Kaplan withdrew that offer in 2014. Dartmouth administrators and counsel continued to deny Dr. Isaacs' reasonable requests for an investigation into 2014.

24.    Dr. Isaacs also brought litigation, *pro se*, to reach the bottom of his treatment and dismissal at Dartmouth Hitchcock. He originally filed an action in a District Court for the District of New Hampshire in February 2012 and later brought an action in the Eastern District of Pennsylvania. The New Hampshire Court granted summary judgment against him on April 18, 2014, and the Pennsylvania action containing new and additional claims was dismissed for lack of jurisdiction. During discovery in the New Hampshire action, deposition testimony revealed that no investigation of his claims never occurred. Yet no reason for this failure became clear.

25.    On April 19, 2014, Dr. Isaacs sent a complaint in an electronic mail message to OCR. *See* Exhibit A, attached. In this email, Dr. Isaacs described the disability he suffered in the time period leading up to January 2012, as well as the head injury for which he had previously filed an Americans With Disabilities Act claim. Dr. Isaacs further described the

treatment he suffered at the hands of his supervisors beginning in June 2011 during his residency at Dartmouth-Hitchcock. He explained that he was, at the time, bedridden and unable to stay awake for more than three hours at a time, a condition that began during his ill-fated residency. Dr. Isaacs' email concluded by requesting that OCR investigate his complaint, and he offered to provide any other information that OCR might require.

26.     On or about October 16, 2017, Jane Lopez, OCR Team Leader/Civil Rights Attorney attempted to contact Dr. Isaacs by telephone about his complaint but reached his father. That same day, Ms. Lopez sent Dr. Isaacs an email to set up a telephone conference about Dr. Isaacs' complaint. The telephone conference occurred during the afternoon of October 17, 2014. During the call, Dr. Isaacs described the circumstances of his situation in greater detail, and Ms. Lopez stated that her office previously had experienced difficulties with complaints against Dartmouth. For example, Ms. Lopez explained that her office had received complaints against Dartmouth years after the relevant occurrences, and that she had knowledge of other individuals being ostracized by Dartmouth. Dr. Isaacs and Ms. Lopez also noted that the Department of Education was investigating Dartmouth relating to its responses to OCR-related complaints.

27.     In a letter dated that same day, October 17, 2014, OCR informed Dr. Isaacs that it was "closing" his complaint. *See* Exhibit B. This letter, authored by Anthony Cruthird, a Team Leader/Civil Rights Attorney, explained that OCR evaluated the complaint pursuant to its authority relating to the prohibition of discrimination based on disability as well as the prohibition of discrimination on the basis of sex. After repeating Dr. Isaacs' allegations, OCR concluded that the allegations were untimely because the "alleged discriminatory conduct occurred in 2011 and 2012." Mr. Cruthird explained that OCR does not investigate allegations that are filed more than 180 days after the date of the alleged discrimination.

8

28.     Mr. Cruthird then assessed whether Dr. Isaacs qualified for a waiver of the 180 day period, specifically considering whether Dr. Isaacs was sufficiently incapacitated to qualify for a waiver. The OCR letter concluded that he was not, because Dr. Isaacs had made various efforts to address his circumstances, including contact with police and Dartmouth officials and Dr. Isaacs' litigation efforts. Responding to Dr. Isaacs' statement that the complaint was timely because he was unaware of Dartmouth's obligation to investigate his complaint until late 2013, Mr. Cruthird stated that Dr. Isaacs was aware of the underlying conduct and an obligation to respond as early as early 2012.

29.     After informing Dr. Isaacs that OCR was dismissing his complaint, the letter indicated that any questions should be directed to Attorney Jane Lopez. Dr. Isaacs sent an email to Ms. Lopez on November 5, 2014, in response to the October 17 letter. In the email, Dr. Isaacs explained that he was prepared to file an appeal. He further corrected one statement about the relevant facts from the OCR letter, then focused on the issue of waivers of the 180-time period on which OCR relied to dismiss the complaint. Dr. Isaacs asserted that waiver (c) should have applied because he filed his complaint with OCR before the courts reached decisions in the two cases he pursued. Indeed, portions of his claims that were pending in Pennsylvania at the time OCR dismissed the case have never been adjudicated. He further stated that (d) also applied because he only learned in early 2014 that Dartmouth never initiated an internal grievance investigation, after informing Dr. Isaacs that one would occur.

30.     On November 12, 2014, Ms. Lopez informed Dr. Isaacs that she would process his November 5 email as an appeal and that any additional information or documents Dr. Isaacs wished to file in support of his appeal were due on December 16, 2014. *See* Exhibit C.

31.     Dr. Isaacs submitted a letter to OCR on December 12, 2014, providing further information and documents in support of his appeal. *See* Exhibit D. In this letter, Dr. Isaacs explained that Dartmouth refused to investigate his Title IX claims over a period of time ending in early 2014, typically in response to Dr. Isaacs's inquiries and using different justifications on each occasion. At one point in early 2013, Dr. Isaacs was told by Dean Bertrand that an investigation would commence, but he ultimately learned that would not occur. Dr. Isaacs' letter then cited statements in depositions by Dartmouth administration officials denying that any investigation occurred. Although this letter focused on Title IX claims, it applies with equal force to Dr. Isaacs' claims based on his handicap(s).

32.     OCR never provided Dr. Isaacs with a decision on his appeal. Dr. Isaacs tried to learn the status of his appeal by attempting to contact OCR at various times, including sending an email to Ms. Lopez on April 1, 2015. The return email that Dr. Isaacs received informed him that Ms. Lopez had left OCR. Dr. Isaacs then emailed the author of the October 17, 2014, letter closing his complaint, Anthony Cruthird. He received no response. Dr. Isaacs has never received any further communication from OCR.

33.     Failure to provide Dr. Isaacs with a decision on his appeal violates OCR's policies. When Ms. Lopez informed Dr. Isaacs that she would treat his November 5, 2014, email as an appeal, she provided him with the excerpt from OCR's complaint handling procedures addressing appeals. That section stated that "[a] written response to an appeal will be issued as promptly as possible. The decision of the Office Director constitutes the agency's final decision." Currently, the section of the complaint procedures appearing on OCR's website states that "[a] written response to an appeal will be issued. A decision of the Office of the Director

constitutes the agency's final decision." https://www2.ed.gov/about/offices/list/ocr/complaints-how.html.

## COUNT ONE

### Violation of 5 U.S.C. § 706(1), agency action
### unlawfully withheld or unreasonably delayed

34.     Plaintiff re-alleges and incorporates Paragraphs 1 through 33 as set forth above

35.     The Administrative Procedure Act ("APA") dictates that agencies must conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). OCR represented at the time of Dr. Isaacs's appeal that it decided appeals "as promptly as possible." APA Section 706(1) authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

36.     OCR's decision to close Dr. Isaacs' complaint file occurred on October 17, 2014. OCR treated his email submission on November 5, 2014, in response to this decision as an appeal, and he supported his appeal with additional information and documents on December 12, 2014. Well over two years later, OCR has not provided a decision on this appeal. This despite Dr. Isaacs' efforts to inquire about the status of his appeal.

37.     OCR's failure to issue a decision on Dr. Isaacs' appeal constitutes agency action unlawfully withheld, violative of Section 706(1) of the APA. Alternatively, OCR's failure to act on Dr. Isaacs' appeal constitutes agency action unreasonably delayed, again violative of Section 706(1) of the APA.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Dr. Isaacs respectfully requests that the Court grant the following relief:

11

1.      Enter judgment in favor of Dr. Isaacs and against Defendant United States Department of Education;

2.      Declare that Defendant is in violation of Section 706(1) of the APA by unlawfully withholding its decision on Dr. Isaacs' appeal to OCR or failing to act on the appeal within a reasonable time;

3.      Order Defendant to issue a decision on Dr. Isaacs' appeal that is supported by the law and the facts;

4.      Award Dr. Isaacs his attorney's fees and costs in this action pursuant to 28 U.S.C. § 2412; and

5.      Award such other legal, equitable, and declaratory relief as the Court deems just and proper.

Respectfully submitted,

Jeffrey Isaacs, M.D.

By his attorney,

Dated:  June 30, 2017

Mark L. Josephs
Bar No. 568454
Law Office of Mark Josephs, LLC
10 Derne Street
Boston, MA  02114
(857) 250-4998
mark.josephs@markljosephslaw.com

12

# EXHIBIT A

5 Post Office Square,
Boston, MA 02109-3921

Tel 617.289.0049

Fax 617.289.0150

ruth.ricker@ed.gov

OCR is committed to providing the public, including students, parents, educators, representatives of school districts, colleges, and universities, and other interested persons, with information about the civil rights laws OCR enforces. In responding to correspondence, OCR provides customers with general, publicly-available information about a wide variety of civil rights issues in the education context. However, OCR does not provide legal or other advice or issue advisory opinions to customers concerning specific factual scenarios. Correspondence issued by OCR in response to an inquiry from the public does not constitute a formal statement of OCR policy and should not be construed as creating or articulating new policy. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

**From:** jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] **On Behalf Of** Jeffrey Isaacs
**Sent:** Saturday, April 19, 2014 9:07 PM
**To:** OCR Boston
**Subject:** Complaint - Dartmouth College and Dartmouth Hitchcock Medical Center

Dear United States Department of Education Office for Civil Rights:

In January 2012, I was diagnosed with mental shock in the Dartmouth-Hitchcock Emergency Room. While in the ED, I hand-wrote a complaint alleging various crimes that had occurred during the six months I was a resident physician GME (graduate medical education) student in the Dartmouth College Department of Psychiatry. For over two years since, my pro se efforts to achieve justice have been brutally retaliated against by the most senior of the Dartmouth administration, including nine law firms representing Defendants in various venues.

The nature of my complaint is that I was hazed and abused by my supervisors and professors, because they wanted to oust me for being a student who had previously filed ADA litigation pertaining to a head injury I sustained from an intoxicated Dartmouth student back in 1997. In fact, during the present litigation, Dartmouth has made concerted efforts to deny that I suffered a head injury, and to deny it was related to binge drinking and violence problems associated with the Dartmouth fraternity culture.

The hazing as a GME student began on my first day as a resident in June 2011. I was scolded and yelled at constantly by my supervisors, to the point I could only stutter responses treating patients. On my third and fourth day of work, I was ordered to conduct unnecessary prostate exams on two of my patients. To this day, nobody has investigated the unnecessary prostate exams, despite my repeated letters to former

president Jim Yong Kim, and president Hanlon. The local police force is not caring or the investigating as it was a "medical procedure." The federal judge overseeing the case has denied me discovery of the relevant patient charts. I believe the four federal judges in New Hampshire will not allow my case to proceed, because they had relations with Dartmouth and specifically Jim Yong Kim.

The current processes are:

- USDC for Pennsylvania Eastern District (13-5708-PBT - including a Title IX claim for failure to investigate the assault and hazing )

- First Circuit Court of Appeals in Boston 14-1085 - Evidence destruction involving President Jim Yong Kim and Dartmouth Psychiatry

- USDC for New Hampshire - 12-cv-40-LM - ADA and IIED claims

- USDC for Western Texas - 14-mc-12-XR - Motion to retrieve evidence from Federal PACER computer system to prove timing and motive for hazing/assault

Although I have some significant legal training and a medical degree, I am in way over my head and Dartmouth has abused me during the litigation process itself. I have been left bedridden and am unable to stay away most days more than three hours at a time ( this began shortly after the unnecessary prostate exams). I have reported criminal charges to the FBI and US Attorney's office. I do not know the status, but I do believe the complexity of my claims confuses many people at first. I would be happy to interview , if possible, with your department to elaborate upon any of my claims.

Please let me know what I am able to do to ensure that my complaint is investigated by your office. Thank you in advance for any assistance you might be able to provide to me.

Sincerely,

Jeffrey Isaacs

# EXHIBIT B



**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE FOR CIVIL RIGHTS, REGION I**

5 POST OFFICE SQUARE, 8TH FLOOR
BOSTON, MASSACHUSETTS 02109-3921

OCT **1 7** 2014

Jeffrey Isaacs
8 Chase Circle
Fort Washington, Pennsylvania 19034

Re:    Complaint No. 01-14-2163
        Dartmouth College

Dear Mr. Isaacs:

This is to notify you that the U.S. Department of Education (Department), Office for Civil Rights
(OCR) is closing the above-reference complaint that you filed against Dartmouth College
(College) and Dartmouth-Hitchcock Medical Center, alleging discrimination on the bases of
disability, sex and retaliation. As explained below, OCR determined that your allegations of
discrimination are untimely and that the information you provided does not establish a basis for
granting a waiver of OCR's timeframes for filing a complaint with our office.

OCR evaluated your complaint pursuant to our authority under Section 504 of the Rehabilitation
Act of 1973 and its implementing regulation found at 34 C.F.R. Part 104 (Section 504), which
prohibit discrimination on the basis of disability, and Title IX of the Education Amendments of
1972, 20 U.S.C. Section 1681, and its implementing regulation at 34 C.F.R. Part 106 (Title IX),
which prohibit discrimination on the basis of sex. Section 504 and Title IX also prohibit
retaliation against individuals who engage in activities protected under these laws. As a recipient
of Federal financial assistance from the Department, the College is subject the requirements of
Section 504 and Title IX.

In your complaint, you alleged that while you were a general medical student and resident you
were subject to hazing and abuse by professors. You informed OCR that the treatment occurred
during a six-month period from June 2011 to January 2012. Specifically, you alleged that on the
third and fourth day of work you were ordered to conduct unnecessary prostate exams on two of
your patients. You also alleged that during this six-month period you were scolded and ridiculed
by professors. You stated that you believe this treatment was in retaliation for your having filed
"ADA litigation" against the College related to a brain injury you sustained as a result of a car
accident involving a Dartmouth student.

You stated that in January 2012, you experienced a nervous breakdown as a result of the hazing
and your suspicion that the prostate exams you were instructed to administer were a "sham." You
informed OCR that you went to the Dartmouth-Hitchcock Emergency Room and were diagnosed
with "mental shock." You stated that while in the Emergency Department, you hand-wrote a
complaint regarding treatment you experienced during the six-month period. You stated that as a
result of the hazing, you became bedridden and were unable to stay awake most days for more
than three hours.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by
fostering educational excellence and ensuring equal access.*

Page 2 of 3, Dartmouth College – OCR Complaint No. 01-14-2163

You stated that you spent the next two years engaged in pro se efforts to seek justice, including involvement of civil litigation and inquiries to the police, and writing letters to the current and former presidents of the College. You informed OCR that it was not until the end of 2013 that you learned that the College had an obligation to respond to complaints under Title IX, and that you sent a letter to the College President requesting an investigation. You also stated that you discovered during your recent litigation with the College that they had not investigated your complaint previously.

OCR determined that your allegations are untimely because the alleged discriminatory conduct occurred in 2011 and 2012. OCR generally does not investigate allegations that are filed more than 180 days after the date of the alleged discrimination. A waiver may be granted for good cause shown, such as under any of the following circumstances:

(a) The complainant could not reasonably be expected to know the act was discriminatory within the 180-day period, and the complaint allegation was filed within 60 days after the complainant became aware of the alleged discrimination (note that lack of previous awareness of OCR or the civil rights laws enforced by OCR is not a basis for a waiver);

(b) The complainant was unable to file a complaint because of incapacitating illness or other incapacitating circumstances during the 180-day period, and the complaint allegation was filed within 60 days after the period of incapacitation ended;

(c) The complainant filed a complaint alleging the same discriminatory conduct within the 180-day period with another federal, state, or local civil rights enforcement agency, or federal or state court, and filed a complaint with OCR within 60 days after the other agency had completed its investigation or, in the case of a court, reached a determination, or the agency or court notified the complainant that it would take no further action;

(d) The complainant filed, within the 180-day period, an internal grievance with a recipient of federal financial assistance, or a due process hearing, alleging the same discriminatory conduct that is the subject of the OCR complaint, and the complaint is filed no later than 60 days after the internal grievance is concluded; or

(e) Unique circumstances generated by OCR's action have adversely affected the complainant.

In your complaint, you indicated that you are seeking a waiver because as a result of the mistreatment you experienced you have become bedridden and are unable to stay awake most days for more than three hours. You also indicated that you have a long-term disability. However, the information you provided does not establish that you were unable to file a complaint with OCR earlier due to incapacitation. OCR considers incapacitation under its waiver criteria to mean that a complainant was not capable of communicating with OCR by phone, fax, e-mail, through a third party or otherwise during the timely filing period. Here, you stated that since January 2012, you have contacted the police, sent letters to the former president of the College, and have been involved in litigation with the College. Based on this information, OCR concluded that you do not qualify for a waiver.

Page 3 of 3, Dartmouth College – OCR Complaint No. 01-14-2163

You also stated that you believe your complaint is timely because you were unaware that the College had an obligation to investigate your complaint until late 2013 and that you then sent a letter to the College President requesting investigation in January 2014. However, the information you provided indicates that as early as January 2012, you believed that you were instructed to administer unnecessary prostate exams to patients. In fact, you stated that you contacted the police department and hand-wrote a complaint regarding your treatment. You also stated that you wrote letters to the prior president of the College and did not receive a response. Therefore, you were aware of the underlying conduct at that time and believed that the College had an obligation to respond. As noted above, you stated that you believed the College was investigating your concerns and only recently discovered that they had not. Under these circumstances, after such an extensive period of time, OCR determined that a waiver on this basis is unwarranted.

Because OCR has determined that your allegations are untimely, and the information you provided does not justify a waiver of our 180-filing requirement, OCR is dismissing your complaint, effective the date of this letter.

We regret that we could not be of further assistance to you but thank you for bringing your concerns to our attention. If you have any questions concerning this letter, please contact Attorney Jane López at (617) 289-0083, or you may contact me at (617) 289-0037.

Sincerely,

Anthony Crunhird
Team Leader/Civil Rights Attorney

# EXHIBIT C

3/16/17, 5:17 PM

 Gmail

Jeffrey Isaacs <jeffreydi@gmail.com>

## Appeal of OCR Complaint No. 01-14-2163- Dartmouth
1 message

Lopez, Jane <Jane.Lopez@ed.gov>
To: "jeffreydi@gmail.com" <jeffreydi@gmail.com>
Cc: "Cruthird, Anthony" <Anthony.Cruthird@ed.gov>

Wed, Nov 12, 2014 at 7:52 PM

Hi Jeffrey:

Here's a link to OCR's webpage where our complaint process is explained, including appeals.
http://www2.ed.gov/about/offices/list/ocr/complaints-how.html. For your convenience, I cut and pasted the
section on our appeals process below.

I will process your 11/5/14 email to me as an appeal. Also let me know as soon as possible, if you plan on
submitting further documentation or information in support of your appeal. Please keep in mind our timelines
for filing appeals if you plan on submitting additional information or documentation. The deadline for filing an
appeal with us is 60 days from the date of the determination letter, therefore in this case, I would need to have
any further information or documentation connected with your appeal, no later than December 16, 2014 for it to
be considered.

If you have any questions, please feel free to contact me or Attorney Anthony Cruthird at
Anthony.Cruthird@ed.gov. or by phone at 617-289-0037.

Thank you,

Jane

Jane E. Lopez

Team Leader/Civil Rights Attorney

U.S. Department of Education
Office for Civil Rights

5 Post Office Square, 8th floor

Boston, MA 02109-3291

Direct Phone line: 617.289.0083

Email: Jane.Lopez@ed.gov

www.ed.gov

# APPEAL OF OCR'S DETERMINATIONS

OCR is committed to a high quality resolution of every case. OCR affords an opportunity to the complainant to submit an appeal of OCR's dismissal or administrative closure of a complaint or letter finding insufficient evidence of a violation. The appeal process provides an opportunity for complainants to bring information to OCR's attention that would change OCR's decision. The appeal process will not be a *de novo* review of OCR's decision.

If the complainant disagrees with OCR's decision, he or she may send a written appeal to the Director of the Enforcement Office (Office Director) that issued the determination. If the complainant has documentation to support the appeal, the documentation must be submitted with the complainant's appeal. In an appeal, the complainant must explain why he or she believes the factual information was incomplete, the analysis of the facts was incorrect, and/or the appropriate legal standard was not applied, *and* how this would change OCR's determination in the case. Failure to do so may result in the denial of the appeal.

In order to be timely, an appeal (including any supporting documentation) must be submitted within 60 days of the date of the determination letter. The Office Director may exercise discretion in granting a waiver of the 60-day timeframe where:

1. the complainant was unable to submit the appeal within the 60-day timeframe because of illness or other incapacitating circumstances and the appeal was filed within 30 days after the period of illness or incapacitation ended; or
2. unique circumstances generated by agency action have adversely affected the complainant.

A written response to an appeal will be issued as promptly as possible. The decision of the Office Director constitutes the agency's final decision. The decision will inform the complainant that he or she "may have the right to file a private suit in federal court whether or not OCR finds a violation."

---

**From:** Lopez, Jane
**Sent:** Thursday, November 06, 2014 7:05 PM
**To:** JDI
**Subject:** RE: OCR Complaint No. 01-14-2163- Dartmouth

3/16/17, 5:17 PM

Hi Jeffrey,

Thank you for writing. I am not in the office and am responding to you from my cell phone. I just wanted you to be assured that I received your email this morning and that I will follow up with you tomorrow to provide you with information about our appeals process.

Take care,

Jane

Sent from my Windows Phone

---

**From:** JDI
**Sent:** 11/5/2014 11:04 PM
**To:** Lopez, Jane
**Subject:** Re: OCR Complaint No. 01-14-2163- Dartmouth

Dear Ms Lopez,

I am writing in response to the letter dated October 17 2014, dismissing my complaint against Dartmouth with the Department of Education.

Upon reviewing the facts of the letter in more detail, and reconsidering the nature of my complaint, I am prepared to file an appeal. As you are aware, I have filed allegations against Dartmouth in two federal courts and with numerous other agencies. To date, all have shied away from investigating the core of the complaint: that I was hazed to the point of substantial medical breakdown, including heinous acts such as being ordered to conduct unnecessary prostate exams. This is a travesty of justice; unethical treatment is clearly, it seems to me, being ignored or implicitly assented to because it happened at an Ivy League hospital, by leading Harvard-trained physicians, to an intern who was fired and disgraced. By assented to, it seems there is a belief that the medical training system polices itself; the people who took adverse actions against me knew this very well (in short, that they were as Harvard trained doctors who could get away with abuse) and judges and agencies were reluctant to allow claims to proceed against the complex - and prestigious - world of medical residency training. I have no choice but to appeal every avenue possible until I obtain justice, or at the very least, an investigation and/or trial.

Electronic medical chart records at Dartmouth have never been investigated. They will show (if they haven't been spoliated) that I was ordered to conduct two prostate exams in my first three days at Dartmouth. In contrast, I believe reviewing the charts of other psychiatry interns in my cohort would show that prostate exams were rarely conducted by other psychiatry interns. Moreover, the charts will show that the exams were unnecessary. I believe the combination of the rarity and lack of necessity would prove culpability on Dartmouth's part.

The facts of the DoE letter are largely correct, however it is worth noting that my brain injury was caused by an intoxicated Dartmouth fraternity student, not a "car accident" as stated in Paragraph 3.

Rather than the facts of the letter, it is the waiver of time limitation that I am considering appeal.

3/16/17, 5:17 PM

In particular, two exemptions listed in the letter appear to apply to my case:

--(c) "...filed a complaint with OCR within 60 days after the other agency [or federal or state court] reached a determination or notified complainant that it would take no further action."

Exemption (c) applies in this case. I had claims pending in the NH USDC and PAED USDC, which were dismissed in April and August 2014, respectively. As such, the Department of Education Complaint was filed well before the Federal courts reached a determination to dismiss my case. Please note the cases were not dismissed on merits of the hazing/prostate exams.

--(d) "... complaint filed 60 days after the internal grievance is concluded."

Exemption (d) should have applied to my case as well, as I learned in early 2014 that Dartmouth never even initiated an internal grievance investigation, let alone did the grievance ever properly conclude.In short, Dartmouth failed to follow due process, never properly concluded an investigation, and rather, the Department of Education is penalizing me for purported untimeliness. I filed timely complaints with multiple agencies, and waited three years believing justice would be obtained. When I realized due process was ignored, I filed my DoE complaint. This should also trigger exemption (e) for unique circumstances, in addition to (c) and (d).

I realize my case is a difficult, time-consuming, and complex case against arguably the most reputable people in American society -- a group of Ivy League leaders in academic. They betrayed the trust of their positions, and have gotten away with it thus far.  I have watched and suffered for three years as agencies and Courts have tried to pass the baton, so to speak, and avoid opening up the ugly allegations herein. However, the Department of Education is best suited to investigate it, and is my last realistic possibility of obtaining justice, and hence I plan to appeal the dismissal.

Sincerely,

Jeffrey Isaacs

On Fri, Oct 17, 2014 at 2:07 PM, Lopez, Jane <Jane.Lopez@ed.gov> wrote:

Thanks, I will call you in 30 minutes.

Jane

**From:** JDI [mailto:jeffreydi@gmail.com]
**Sent:** Friday, October 17, 2014 2:04 PM
**To:** Lopez, Jane
**Subject:** Re: OCR Complaint No. 01-14-2163- Dartmouth

Ok for 2:30. My number is 610-202-1460, I'm not sure if I incorrectly put my father's phone on the complaint.

# EXHIBIT D

OCR Complaint No. 01-14-2163
Dartmouth College

Jeffrey D. Isaacs
8 Chase Circle
Fort Washington, PA 19034

Attn: Anthony Cruthird
Attn: Jane E. Lopez
5 Post Office Square
8th Floor
Boston, MA 02109

December 12, 2014

Dear Office For Civil Rights:

This letter cites additional grounds for appeal of your decision not to investigate my Title IX complaint against Dartmouth College. The College, through various officers, repeatedly denied my requests to investigate an alleged assault involving unnecessary rectal exams that I was ordered to do on my first days of work. The Department of Education has not upheld its own duty to investigate a timely filed Title IX violation report involving a student physician being ordered to conduct an unnecessary rectal exam on a terminally ill cancer patient.

Enclosed is an MPEG format Federal District Court Deposition of Dr Simon Khagi, the individual I believe ordered me to conduct the unnecessary rectal examination. I include the deposition as evidence to be incorporated within this OCR complaint documenting the incident and the need for further review. As noted earlier, my intent is to exercise all judicial and procedural appeals, including injunctive remedies, to obtain what is right and, hopefully, closure on this matter. A Title IX civil complaint against relevant parties is still pending in federal court, awaiting jurisdictional determination by the appeals circuit.

Your letter dated October 17, 2014 incorrectly determined that the last discriminatory act against me occurred in 2012. Dartmouth's flagrant refusal to investigate Title IX obligations is an act of discrimination (or retaliation) that, in and of itself, should be subject to intervention by the OCR. The Dartmouth administration proactively and repeatedly refused to investigate, well into early 2014. In late 2013 I was told I no longer deserved a hearing at Dartmouth that had been promised earlier in 2013. I was repeatedly told I "didn't deserve" an investigation, well into 2014, by Dartmouth administrators and or counsel that acted in an administrative capacity.

There are at least four examples within federal depositions of Dartmouth administration openly flaunting the fact that they would not investigate my claims. Thus, this was a *gradual process spanning two* years that made me realize that Dartmouth *adamantly refused to investigate or process my Title IX compliant.* In other words, Dartmouth

solidified its discriminatory and retaliatory refusal to adhere to Title IX, and I became aware of this, over a slowly escalating discourse that continued into 2014.

My letters to the President, Trustees, and Counsel for Dartmouth all served as further attempts to file a Title IX report, and each letter was met with a *new refusal on different grounds*. I have tens of thousands of pages of documents that cannot be summarized by my initial complaint alone. Following are examples of their statements (under oath) refusing to follow Title IX.

In one deposition, early in January 21, 2014, Dartmouth General Counsel O'Leary affirmed to me that there was no investigation whatsoever ( O'Leary Deposition , Page 39 )

> Q: And did you write back to Mr. Baker stating that there would be no investigation?

> A: I don't recall that, but I may have. **That was the case. There was no investigation.**

Likewise, on January 15, 2014, my direct supervisor, Dr Christine Finn, stated under oath that the matter was not investigated, in any part: Finn , page 142:
> **Q. Do you know if anyone's ever investigated that unnecessary DREs [digital rectal exams] have been alleged?**

> **A. Not that I'm aware of.**

In another deposition on January 21, 2014, the Chair of Dartmouth Psychiatry Alan Green declared:
> **A. I have no reason to believe there's anything I need to investigate.**

In his deposition on October 22, 2013, Dr Simon Khagi confirmed he was never investigated by *any* entity:
> **Q: Have you ever been questioned or investigated by any authority, including the New Hampshire Board of Medicine, New Hampshire State Police or the FBI?**

> **A: No.**

Dartmouth requested that I interact solely with their attorneys, and for a span of two years, told me that my employment had "no relation" to Dartmouth College. Dartmouth's William Torrey (Torrey Depo p 170) then testified as such on October 17, 2013:

> **A. The residency training program is not a college program. It's a --**

> **Q. I'm saying, does the college stand behind investigating**

wrongdoing and taking appropriate punitive matters if necessary of its employees?

MR. PYLES: Same objection.


In conclusion, I made diligent attempts spanning 2011-2014 to obtain investigation of improper hazing I suffered as a medical intern. As new information or evidence evolved, I would write the Trustees, the College President, their Risk Management Office, General Counsel, or others, seeking investigation. I was met with constant threats by Dartmouth attorneys not to file any more complaints, and told I didn't deserve and would not get any investigation. These actions occurred through emails, phone calls, and even the four federal depositions I have referenced. The Department of Education has a duty to advance this matter as I have documented actions, well within 180 days of my OCR complaint, that were in violation of the spirit of Title IX. Please do not hesitate to contact me for any further questions or documentation.

Sincerely,


Jeffrey Isaacs