Dr. Jeffrey Isaacs

    v.                           Civil No. 17-cv-040-LM
                                     Opinion No. 2017 DNH 136

Trustees of Dartmouth
College, NH Board of
Medicine, and Dartmouth-
Hitchcock Medical Center

**O R D E R**

Asserting claims that arise from a disciplinary action taken against him by the New Hampshire Board of Medicine ("Board"), Dr. Jeffrey Isaacs has sued the Board, the Trustees of Dartmouth College ("Trustees"), and Dartmouth-Hitchcock Medical Center ("DHMC").[1]  Against DHMC (and the Trustees), plaintiff brings: (1) substantive and procedural due process claims, through the vehicle of 42 U.S.C. § 1983 (Count VI); (2) a claim under 42 U.S.C. § 1985(3) (Count VII); (3) a retaliation claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (Count VIII); and (4) a claim captioned "Injunctive Relief" (Count IX).  Before the court is DHMC's

---

[1] Plaintiff's First Amended Complaint, which is the operative complaint in this case, see doc. no. 33, names two additional defendants, Jeff Cahill, Esq. and Penny Taylor, who are affiliated with the Board.  At this point, the docket gives no indication that either Cahill or Taylor has been served with the FAC.

motion to dismiss.  Plaintiff objects.  For the reasons that follow: (1) DHMC's motion to dismiss is granted as to Counts VI, VII, and IX; (2) Counts VI, VII, and IX are dismissed as to the Trustees, sua sponte; (3) plaintiff's § 1985(3) claim against the Board, asserted in Count II, is dismissed sua sponte; and (4) plaintiff is ordered to show cause why the ADA retaliation claims he asserts in Counts IV and VIII should not be dismissed, with prejudice, for failure to exhaust the administrative remedies available to him.

## I. The Legal Standard

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

## II. Background

The facts recited in this section are drawn from: (1) plaintiff's First Amended Complaint ("FAC"); (2) exhibits attached to plaintiff's original complaint; (3) other "documentation incorporated by reference in the complaint," Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016) (quoting Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 388 (1st Cir. 2014)); and (4) the summary judgment order in an action that plaintiff brought in 2012 against DHMC, the Trustees, and several other defendants.

Isaacs attended the Keck School of Medicine of the University of Southern California ("Keck" or "USC") until, during his first year, "he was suspended and ultimately dismissed for harassing a classmate." Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. Apr. 18, 2014). Dr. Isaacs then sued USC, and his suit resulted in two settlement agreements, one with USC's deans and one with USC itself.

After he left USC, Isaacs attended the American University of the Caribbean, Netherlands Antilles, which awarded him an M.D. degree. Thereafter, he began a residency in general surgery at the University of Arizona ("UA"), but he resigned after approximately three weeks.

Next, Dr. Isaacs applied for a residency at DHMC through the Electronic Residency Application Service ("ERAS"). "In [his ERAS] application, he omitted both his attendance at USC and his aborted residency at UA." Isaacs, 2014 WL 1572559, at *2. Based upon his ERAS application, Dr. Isaacs was accepted into the DHMC residency program in psychiatry.

Dr. Isaacs began his DHMC residency in June of 2011. He was dismissed in March of 2012. DHMS's letter of dismissal states, in pertinent part:

> The decision to dismiss you from your position in the residency is based on academic deficiency issues as well as behavior incompatible with the role of a physician including the omission of material information from your Electronic Residency Application Service (ERAS) application, falsification of information provided to the New Hampshire Board of Medicine, and false reporting in a patient's electronic medical record as well as other substantiated competency and integrity concerns.
>
> Specifically, your ERAS application lacked information regarding your prior residency training in Arizona as well as time served as a medical student at the University of Southern California. You also failed to divulge your dismissal from medical school at USC in information provided to the New Hampshire Board of Medicine in support of a NH training license.

Compl., Ex. K (doc. no. 3-11), at 1.

Before he was dismissed from the DHMC residency program in 2012, Dr. Isaacs had filed suit against four defendants, including DHMC and the Trustees. After his dismissal, he amended his complaint to add defendants and causes of action.

In his amended complaint, he asserted multiple causes of action, under state and federal statutes, including the ADA, and under the common law of New Hampshire. The defendants in Dr. Isaacs' 2012 action all prevailed at summary judgment.

After DHMC dismissed Dr. Isaacs, it notified the Board of his dismissal, and further informed the Board that Dr. Isaacs had "allegedly omitted material facts from his Application for Training License for Residents and Graduate Fellows and the supplement filed along with the application." Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 1. "As a result of [that] information, the Board commenced an investigation to determine whether [Dr. Isaacs] committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18." Id.

In October of 2013, the Board issued a Notice of Hearing, informing Dr. Isaacs that a hearing had been scheduled for February 5, 2014. On January 29, 2014, Dr. Isaacs notified the Board that he had filed suit against it in Pennsylvania, and asked the Board to postpone his hearing. He also asked to appear at his hearing telephonically, for medical reasons. The Board denied both requests. On the morning of the day of his hearing, which was scheduled for 1:00 p.m., Dr. Isaacs sent the Board an e-mail indicating that he would not be attending, due to inclement weather that would make it impossible for him to

drive to New Hampshire from Pennsylvania.  The hearing went on

as scheduled, without Dr. Isaacs.  "Attorney Jeff Cahill

appeared as hearing counsel."  Def.'s Mot. to Dismiss, Ex. 1

(doc. no. 7-1), at 4.

About a month after the hearing, the Board issued a Final

Decision and Order, which was signed by Penny Taylor, in her

capacity as Administrator and Authorized Representative of the

New Hampshire Board of Medicine.  Taylor described the evidence

before the Board as including the two e-mails in which Dr.

Isaacs had requested continuances of the hearing, and she also

characterized the three exhibits produced by hearing counsel:

> Exhibit 1 is [Dr. Isaacs'] 2011 NH Application for
> Residency Training License; Exhibit 2 is an excerpt of
> a March 1, 2007 court order in <u>Isaacs v. USC</u>; and
> Exhibit 3 [is] the April 2008 Confidential Settlement
> in <u>Isaacs v. USC</u>.  These exhibits along with notice of
> witnesses to be presented were provided to [Dr.
> Isaacs] on January 31, 2014.
>
> Hearing counsel also presented the testimony of
> Dori Lefevbre, Board Investigator.  Ms. Lefevbre
> testified that she was able to obtain the documents
> that were marked as exhibits 2 and 3 as public records
> available on-line from the federal court system.

Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 5.  According

to its order, the Board relied upon no exhibits other than Dr.

Isaacs' two e-mails, his ERAS application, and the court order

and settlement agreement that its investigator had obtained from

the public record of Dr. Isaacs' case against USC.

In its decision, the Board noted that DHMC's dismissal of Dr. Isaacs resulted in the cancellation of his medical license as a matter of law. But, it also went on to issue a reprimand, based upon its findings that when Dr. Isaacs applied for his license, he "knowingly made a false statement and further failed to disclose a material fact." Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 8-9. Since the Board reprimanded him, Dr. Isaacs has applied to many residency programs, including the program at DHMC, but he has not received a single interview.[2]

On February 3, 2017, two days before the third anniversary of his hearing before the Board, Dr. Isaacs filed the complaint that initiated this action. His case now consists of five claims against the Board and four claims against DHMC and the Trustees, which plaintiff lumps together as the "Dartmouth Defendants."[3]

---

[2] DHMH rejected applications from Dr. Isaacs in 2013, 2014, 2015, and 2016. The FAC, however, does not provide specific dates for those rejections.

[3] In his objection to a motion to dismiss filed by the Trustees, plaintiff had this to say about those two defendants: "The Trustees vs. Dartmouth-Hitchcock distinction is confusing and hopefully through discovery and stipulation we can narrow this down to name the appropriate party or parties with more precision and clarity." Doc. no. 16, at 4 n.3.

# III. Discussion

In its motion to dismiss, DHMC argues that all four of plaintiff's claims against it are barred by res judicata. It also argues, in the alternative, that even if res judicata does not bar those claims, they are each individually subject to dismissal under Rule 12(b)(6). In the discussion that follows, the court considers each of plaintiff's claims individually.

## A. Count VI

In Count VI of his FAC, plaintiff claims that DHMC violated his constitutional rights to both substantive and procedural due process by participating in the disciplinary action that resulted in the reprimand he received from the Board. He frames his claim this way:

> Agents of Dartmouth acting under color of State law, as actors, or as willful participants in a joint activity with Atty. Cahill, Penny Taylor and the other Board members, under color of the authority vested in them by State law, went above and beyond or outside the scope of their job duties and descriptions by taking the actions and inactions described herein. To wit-
>
>     a.    Employing <u>confidential</u> out of state and inaccurate settlement documents to [d]eprive Dr. Isaacs of his livelihood and publicly embarrass him;
>
>     b.    Failing to consider the relevant documents provided by Dr. Isaacs in his defense;
>
>     c.    Failing to honor the solemnity of a confidential Court Settlement Agreement;

d.  Failing to honor Dr. Isaacs' reasonable
        request to continue the hearing for medical
        reasons;

    e.  Failing to honor Dr. Isaacs' reasonable
        request to continue the hearing for
        inclement weather;

    f.  Failure to allow Dr. Isaacs' reasonable
        request to participate electronically.

FAC (doc. no. 14-1) ¶ 111 (emphasis in the original).  As relief

for the claims he asserts in Count VI, plaintiff "seeks monetary

relief to be made whole, or, the retraction, withdrawal, and

elimination from the public domain of the Board's Order."  FAC ¶

117.

    As a preliminary matter, it is necessary to identify the

specific conduct by DHMC on which plaintiff bases the § 1983

claim he asserts in Count VI.  Without doing so, the court would

be unable to address DHMC's argument that Count VI should be

dismissed because plaintiff has failed to allege any conduct on

its part that was undertaken under color of state law, which is

a necessary element of any claim brought by means of 42 U.S.C. §

1983.  See Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir.

2016) (citing Chongris v. Bd. of Appeals, 811 F.2d 36, 40 (1st

Cir. 1987)).

    There is a good argument to be made that Count VI alleges

no conduct at all by DHMC.  For one thing, the list of "actions

and inactions" described in paragraph 111 of the FAC is identical to the list of "actions and inactions" described in paragraph 52, which supports Count I, plaintiff's § 1983 claim against Jeff Cahill and the individual members of the Board. In a similar vein, the equitable relief plaintiff seeks in Count VI, i.e., removal of the Board's March 11, 2014, order from the public domain, see FAC ¶ 117, is not something DHMC could possibly provide. Thus, it appears that Count VI is nothing more than plaintiff's § 1983 claim against members of the Board with DHMC's name attached to it. Be that as it may, the court must construe the complaint favorably to plaintiff, see Foley, 772 F.3d at 71, and in the interest of so doing, it will examine each of the subparagraphs in paragraph 111 individually, to determine whether any of them may reasonably be construed as alleging conduct by DHMC.

Based upon the factual allegations elsewhere in plaintiff's complaint, at least four of the six subparagraphs may not reasonably be construed as alleging conduct by DHMC. First, given that plaintiff alleges that he provided a key document to Atty. Cahill, i.e., one of the two settlement agreements from his case against USC, and that Cahill "failed to provide the agreement to the Board or its investigator," FAC ¶ 40, and given that the only "defense" that Dr. Isaacs has mounted was to the

charge of professional misconduct that was adjudicated by the
Board, plaintiff has not alleged that DHMC "[f]ail[ed] to
consider the relevant documents provided by Dr. Isaacs in his
defense," FAC ¶ 111(b).[4]  Second, given plaintiff's allegations
that the Board conducted the February 5, 2014, hearing, and that
he asked the Board to continue that hearing, he has not alleged
that DHMC failed to: (1) "honor [his] reasonable request to
continue the hearing for medical reasons," FAC ¶ 111(d); (2)
"honor [his] reasonable request to continue the hearing for
inclement weather," FAC ¶ 111(e); or (3) "allow [his] reasonable
request to participate [in his hearing] electronically," FAC ¶
111(f).  Thus, the only allegations in paragraph 111 that might
possibly pertain to DHMC are those described in subparagraphs
(a) and (c).

     In subparagraph (a), plaintiff alleges that DHMC
"[e]mploy[ed] confidential out of state and inaccurate
settlement documents to [d]eprive [him] of his livelihood and
publically embarrass him" (emphasis in the original).  The FAC

---

     [4] If, however, plaintiff is alleging that DHMC failed to
consider relevant documents during the process that led to his
dismissal, any claim based upon such an allegation would be
untimely, given that DHMC dismissed him in 2012.  See Coleman v.
New Hampshire, No. 16-cv-498-LM, 2017 WL 1968676, at *2 (D.N.H.
Apr. 18, 2017) (citing Gorelik v. Costin, 605 F.3d 118, 121 (1st
Cir. 2010)) ("The statute of limitations for § 1983 claims
arising out of events occurring in New Hampshire is three
years."), R & R adopted by 2017 WL 1968647 (May 10, 2017).

does not, however, allege what documents DHMC employed, or how DHMC employed them, deprived him of his livelihood, or publically embarrassed him.  In subparagraph (c), plaintiff alleges that DHMC "[f]ail[ed] to honor the solemnity of a confidential Court Settlement Agreement."  While subparagraph (c) is a bit opaque, this appears to be the gist of it:

> It is claimed that the Board's investigator allegedly obtained records from PACER.  Plaintiff believes Dr. Finn, or another Dartmouth agent provided sealed and/or confidential records.  It was wholly improper for Dr. Finn to provide these records, even those publically available on PACER, to the Board in the absence of any explanation as to the reason they were sealed or any related circumstances.

FAC ¶ 34.  While it is far from clear that the allegations in subparagraphs (a) and (c) are sufficient to pass muster under Iqbal, 556 U.S. at 677-80, they suffer from an antecedent problem, identified by DHMC, to which the court now turns.  That problem is plaintiff's failure to adequately allege that the acts he complains of, i.e., "[e]mploying . . . settlement documents," FAC ¶ 111(a), and "[f]ailing to honor the solemnity of a confidential Court Settlement Agreement," FAC ¶ 111(c), were committed under color of state law.

Plaintiff brings Count VI through the vehicle of 42 U.S.C. § 1983.  To prevail on a § 1983 claim, a plaintiff "must show: (1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated his

constitutional or federal statutory rights." Miller, 833 F.3d at 51.

In his complaint, plaintiff describes DHMC as a private entity, specifically "a non-profit corporation." FAC ¶ 12. However, "§ 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014) (internal quotation marks omitted) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); citing Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). On the other hand, "a private party can be fairly characterized as a state actor if the circumstances of the case meet one of three tests: the public function test, the joint action/nexus test, or the state compulsion test." Grapentine, 755 F.3d at 32 (quoting Alberto San, Inc. v. Consejo de Titulares del Condo. San Alberto, 522 F.3d 1, 4 (1st Cir. 2008)). That said, "[i]t is only in rare circumstances that private parties can be viewed as state actors." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (internal quotation marks and brackets omitted) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).

Plaintiff asserts that DHMC is a state actor under the public function test and the joint action/nexus test. On this issue, he bears the burden of proof. See Grapentine, 755 F.3d

at 32 (citing Mead v. Independence Ass'n, 684 F.3d 226, 231 (1st Cir. 2012)).  He has failed to carry that burden.

"The public function [test] is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities." Grapentine, 755 F.3d at 32 (quoting Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18-19 (1st Cir. 1999)).  Here, the public function at issue is the licensure and discipline of physicians.  Nowhere does plaintiff allege that the State of New Hampshire delegated that responsibility to DHMC.  Rather, he alleges that the Board conducted an investigation into whether he had committed professional misconduct, and determined that he had.  As for DHMC, he merely alleges that DHMC referred him to the Board and provided the Board with several pieces of evidence.  Suffice it to say that DHMC's interaction with a state agency performing a public function falls far short of establishing that DHNC engaged in state action by performing a public function that had been delegated to it by the State of New Hampshire.  Thus, plaintiff has failed to show that if DHMC employed any confidential court documents or dishonored the sanctity of a confidential settlement agreement in the first instance, it did either of those things under color of state law.

While plaintiff identifies "joint action" and "nexus" as two separate tests in his FAC, Grapentine uses those terms to describe a single test, and this court follows suit. "Under the nexus or joint action test, state action may be found where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'" Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 357-58 (1974)); see also Estades-Negroni, 412 F.3d at 5 (relying on Bass). Here, the "enterprises" at issue are the employment of confidential documents and the dishonoring of a confidential settlement agreement. See FAC ¶¶ 111(a) & (c).

Plaintiff has failed to allege that the government insinuated itself into a position of interdependence with DHMC with respect to the acquisition, dissemination, or use of documents generated by or referred to in Isaacs' suit against USC. Rather, he alleges "that Agents of the Dartmouth Defendants dug up, by legal or illegal means, and disseminated to the Board, confidential and sealed documents." FAC ¶ 105. He does not allege that DHMC did so in conjunction with the Board or any other arm of the State; he merely alleges that once DHMC acquired the documents at issue, the Board received them.

Those are two sequential actions, not a joint action.  That view of events is reinforced by an excerpt from a deposition that plaintiff attached to his complaint.  In that deposition, Dr. Christine Finn, the director of DHMC's adult psychiatry training program, testified that DHMC acquired the material at issue from its attorney, no later than February of 2012.  <u>See</u> Compl., Ex. H, Finn Dep. (doc. no. 3-8) 61:7-11.  Because plaintiff alleges no contact between DHMC and the Board until after DHMC dismissed him, and also alleges that contact between DHMC and the Board was initiated by DHMC, he has not alleged that the Board, or any other arm of the State, ever insinuated itself into the process of DHMC's acquisition, dissemination or use of the documents at issue.  In other words, he has failed to adequately allege joint action of a sort that would establish that DHMC engaged in any of the challenged conduct under color of state law.

Because plaintiff has failed to allege any conduct in which DHMC engaged under color of state law, DHMC is entitled to the dismissal of Count VI.  Furthermore, because plaintiff himself treats DHMC and the Trustees as one and the same, DHMC's entitlement to dismissal of Count VI entitles the Trustees to the same relief.  Accordingly, as to the Trustees, the court dismisses Count VI sua sponte.

The court is aware that "[s]ua sponte dismissals, which by definition are entered on the court's own initiative and without advance notice or an opportunity to be heard, are disfavored." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Muni. of San Juan, 773 F.3d 1, 13 (1st Cir. 2014) (citing González-González v. United States, 257 F.3d 31, 36-37 (1st Cir. 2001); Berkovitz v. HBO, Inc., 89 F.3d 24, 31 (1st Cir. 1996)); see also Garayalde-Rijos v. Muni. of Carolina, 747 F.3d 15, 22 (1st Cir. 2014) ("Sua sponte dismissals are strong medicine, and should be dispensed sparingly.") (quoting Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002)). However, because plaintiff himself draws no distinction whatsoever between DHMC and the Trustees, there is nothing in the FAC to support plaintiff's continued prosecution of Count VI against the Trustees. Accordingly, sua sponte dismissal of Count VI as to the Trustees is appropriate.

B. Count VII

In Count VII of his FAC, plaintiff claims that DHMC is liable to him under 42 U.S.C. § 1985(c) for conspiring to deprive him of equal protection under the law. He frames his claim this way:

> As yet unknown individual agents of the Dartmouth
> Defendants, along with Penny Taylor, the other Board
> members, and Atty. Jeff Cahill conspired here for the
> purpose of preventing or hindering the Plaintiff's
> equal protection of the laws. It is apparent from the

record that these two or more persons worked together
to deprive Dr. Isaacs of his ADA rights, his State
statutory rights, and Constitutional due process
rights as described above.  As well as violating his
common law and contract rights, in furtherance of
depriving him due process, by crediting and
publicizing a confidential document and ignoring the
confidentiality of said documents, and the sanctity of
the reasons for settling civil . . . disputes.

FAC ¶ 121.

DHMC argues that Count VII should be dismissed because
plaintiff has failed to allege that the deprivation on which he
bases his § 1985(3) claim resulted from invidious class-based
discriminatory animus.  Plaintiff responds by contending that he
"has clearly set forth facts to show that the conspiracy of the
Defendants was [based on] his position in a class of disabled
individuals."  Pl.'s Reply (doc. no. 26) ¶ 16.  DHMC is entitled
to the dismissal of Count VII.

"Section 1985 permits suits against those who conspire to
deprive others 'of the equal protection of the laws, or of the
equal privileges and immunities under the law . . . .'"  Soto-
Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012)
(quoting 42 U.S.C. § 1985(3)).  As the court of appeals went on
to explain:

The elements of a section 1985 claim are . . . : (1)
"a conspiracy," (2) "a conspiratorial purpose to
deprive the plaintiff of the equal protection of the
laws," (3) "an overt act in furtherance of the
conspiracy," and, lastly, (4) either (a) an "injury to
person or property" or (b) "a deprivation of a

constitutionally protected right." Pérez–Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). A section 1985 claim "requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action,'" id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) . . . .

Soto-Padró, 675 F.3d at 4 (parallel citations omitted).

In the section of his FAC devoted to his § 1985(3) claim, plaintiff makes no mention of any "class-based, invidiously discriminatory animus," Soto-Padró, 675 F.3d at 4. In his objection to DHMC's motion to dismiss, he attempts to remedy that deficiency by pointing to an allegation elsewhere in his FAC that "neither Dartmouth nor the Board of medicine want any disabled individuals to become Doctors," FAC ¶ 87, and his allegation, in paragraph 121, that DHMC conspired to deprive him of his ADA rights. However, the court of appeals for this circuit has held that § 1985 does not provide a remedy for ADA violations. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012); see also D'Amato v. Wisc. Gas Co., 760 F.2d 1474, 1485-87 (7th Cir. 1985) (holding that conspiracy based upon animus toward the disabled as a class is not actionable under § 1985(3)); Wilhelm v. Cont'l Title Co., 720 F.2d 1173, 1177 (10th Cir. 1983) ("We must conclude that class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now

19

§ 1985(3).") (citing Cain v. Archdiocese of Kan. City, Kan., 508 F. Supp. 1021 (D. Kan. 1981)).  Because plaintiff has failed to allege any "class-based, invidiously discriminatory animus," Soto-Padró, 675 F.3d at 4, that is cognizable under § 1985(3), DHMC is entitled to dismissal of Count VII.

Moreover, because the reasoning that applies to plaintiff's § 1985(3) claim against DHMC applies with equal force to his § 1985(3) claim against the Trustees, also asserted in Count VII, and to the § 1985(3) claim that plaintiff asserts in Count II, those two counts are dismissed in their entirety, as to all defendants, sua sponte.  As the court has already noted, sua sponte dismissal is disfavored.  See Watchtower, 773 F.3d at 13. But, because all of plaintiff's § 1985(3) claims rest solely upon his membership in a class of disabled individuals, and because discriminatory animus based upon disability does not give rise to liability under § 1985(3), see D.B., 675 F.3d at 44, "it is crystal clear that the plaintiff cannot prevail [on any of his § 1985(3) claims] and that amending the complaint would be futile," Garayalde-Rijos, 747 F.3d at 23 (quoting González-González, 257 F.3d at 37).  In other words, the "allegations contained in [plaintiff's] complaint [with respect to his § 1985(3) claims], taken in the light most favorable to plaintiff, are patently meritless and beyond all hope of

redemption." Id. (quoting Chute, 281 F.3d at 319).

Accordingly, sua sponte dismissal of all of plaintiff's §

1985(3) claims is appropriate.

### C. Count VIII

Count VIII is plaintiff's claim that DHMC retaliated

against him, in violation of the Americans with Disabilities

Act, for exercising rights he had under the ADA. Specifically,

he claims that in retaliation for his having brought an ADA

claim against it in his 2012 lawsuit, DHMC: (1) informed the

Board that it had dismissed Dr. Isaacs from his residency; (2)

provided the Board with court documents from Isaacs' action

against USC; (3) convinced the Board to hold the February 5

hearing despite Dr. Isaacs' absence; and (4) failed to offer him

the residencies he applied for in 2013, 2014, 2015, and 2016.

According to plaintiff:

> Given his qualifications, and viewed in the light
> most favorable to the Plaintiff, the only plausible
> explanation for Dartmouth's failure to interview Dr.
> Isaacs is that they were retaliating against him for
> filing an ADA complaint against them.

FAC ¶ 146.

DHMC moves to dismiss Count VIII on several grounds,

including Dr. Isaacs' failure to exhaust the administrative

remedies available to him. In his reply to DHMC's motion to

dismiss, plaintiff does not address the issue of exhaustion. In

any event, Dr. Isaacs' failure to allege exhaustion is fatal to the claim he asserts in Count VIII.

With respect to exhaustion, the court of appeals has recently explained:

> Claims of employment discrimination and retaliation under the ADA are subject to the procedural requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 to -9. See 42 U.S.C. §§ 12117(a), 12203(c); Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 142 (1st Cir. 2012). Under this procedural regime, litigation "is not a remedy of first resort" for either discrimination or retaliation cases. Jorge [v. Rumsfeld], 404 F.3d [556,] 564 [(1st Cir. 2005)] (internal quotation mark omitted). Rather, a would-be plaintiff must first exhaust his administrative remedies. This task embodies "two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." Id.

Rivera-Díaz, 748 F.3d at 389-90 (emphasis added). Here, plaintiff has not alleged that he filed a timely charge with the EEOC or that he has received a right-to-sue letter. Accordingly, DHMC is entitled to dismissal of Count VIII.

Plaintiff's ADA retaliation claim, however, stands on a slightly different footing than his § 1985(3) claims, which are entirely irredeemable. With respect to the ADA retaliation claim plaintiff asserts in Count VIII, it is possible, if unlikely, that plaintiff: (1) has actually exhausted it, but merely failed to so allege; (2) has a valid reason for his failure to exhaust that would entitle him to the benefit of

equitable tolling, see Rivera-Díaz, 748 F.3d at 390; or (3)
still has time to exhaust an ADA retaliation claim based upon
DHMC's rejection of his 2016 application for a residency.  Thus,
it would be premature to dismiss Count VIII with prejudice.  By
the same token, Count VIII also asserts an ADA retaliation claim
against the Trustees, and Count IV asserts an ADA retaliation
claim against the Board.  Obviously, a failure to exhaust would
also entitle the Trustees and the Board to dismissal of the ADA
retaliation claims plaintiff asserts against them.  Given that
the facts necessary to determine whether plaintiff has exhausted
his ADA retaliation claims are readily ascertainable, and in the
interest of judicial economy, plaintiff is directed to show
cause why his ADA retaliation claims against all defendants
should not be dismissed for failure to exhaust.

D. Count IX

Count IX is captioned "Injunctive Relief," and concludes in
the following way:

> The Plaintiff is requesting an order requiring
> Dartmouth to train the Plaintiff as he has the skills
> and training necessary to complete the [DHMC
> residency] program and allowing him to complete the
> program is the only way to fully compensate him for
> the injuries that the Dartmouth Defendants have caused
> him.

FAC ¶ 154.

Count IX is somewhat unusual in that it requests a particular form of relief, but does not identify any cause of action that would entitle plaintiff to the relief he requests. According to DHMC, "Dr. Isaacs' claim for injunctive relief must . . . be dismissed because he is unlikely to succeed in the . . . claims [asserted] against DHMC [in Counts VI-VIII]." Def.'s Mem. of Law (doc. no. 22-1) 19. Plaintiff counters: "Plaintiff's complaint sets forth claims that are likely to succeed on the merits and therefore his Injunctive requests should stand." Pl.'s Reply (doc. no. 26) ¶ 24. In light of the parties' agreement that Count IX does not independently assert a cause of action but merely identifies a form of relief that may be available if plaintiff succeeds on one or more of the claims he asserts in Counts VI-VIII, Count IX is dismissed, as to both DHMC and the Trustees, but without prejudice to plaintiff's right to seek equitable relief for the ADA retaliation claims he asserts in Counts IV and VIII, should he be able to show cause why those claims should not be dismissed.[5]

---

[5] Most courts that have addressed the question, but not all, have held that equitable relief is the only form of relief available on an ADA retaliation claim. See Lavalle-Cervantes v. Int'l Hosp. Assocs., S. en C. (SE), Civ. No. 14-1356 (BJM), 2016 WL 3264124, at *2 (D.P.R. June 14, 2016) (citing Kramer v. Bank of Am. Sec, LLC, 355 F.3d 961, 965 (7th Cir. 2004); Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1270 (9th Cir. 2009); Bowles v. Carolina Cargo, Inc., 100 F. App'x 889, 890 (4th Cir. 2004);

## IV. Conclusion

For the reasons detailed above, DHMC's motion to dismiss, document no. 22, is granted to the extent that Counts VI, VII, and IX are dismissed as to DHMC.  In addition, acting sua sponte, the court dismisses Counts VI, VII, and IX as to the Trustees and also dismisses Count II.  As a result, this case now consists of Counts I, III-V, and VIII.  Finally, plaintiff shall have twenty days from the date of this order to show cause why Counts IV and VIII should not be dismissed with prejudice for failure to exhaust.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


July 12, 2017

cc:  Pierre A. Chabot, Esq.
     Keith A. Mathews, Esq.
     William D. Pandolph, Esq.
     John F. Skinner, III, Esq.
     Seth Michael Zoracki, Esq.

---

Collazo-Rosado v. Univ. of P.R., 775 F. Supp. 2d 376, 388 (D.P.R. 2011)).