UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DR. JEFFREY ISAACS | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:17-CV-00040-LM |
| | ) |
| NH BOARD OF MEDICINE , | ) |
| Jeff Cahill, ESQ. | ) |
| Penny Taylor | ) |
| | ) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER | ) |
| | ) |
| TRUSTEES OF DARTMOUTH COLLEGE | ) |
| Defendants. | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. Plaintiff, Jeffrey Isaacs, M.D. ("Dr. Isaacs") brings this Amended Complaint to remedy the damages he has suffered following the March 11, 2014 Decision of the New Hampshire Board of Medicine (the "Board").[1] The Board, in concert with the Dartmouth Defendants worked independently and together to deny Dr. Isaacs his Constitutional and statutory rights in violation of 42 USC §§1983, 1985; and 42 USC §§ 12203 and 12131 *et seq.*; to effectively deprive him of access to justice, due process, and his ability to pursue his chosen career of practicing medicine.

---

[1] Where applicable, as in the §§1983 & 1985 claims, references to the Board shall mean Atty. Jeff Cahill, Penny Taylor, and the other Board members *individually*, as the Board itself has chosen to claim immunity under the 14th Amendment to the United States Constitution. Otherwise, as in ADA Claims, the Board shall mean the New Hampshire Board of Medicine.

2.      Thus, the Defendants' conduct relating to and treatment of Dr. Isaacs constitute violations of his constitutional, statutory, civil and contract rights, and warrant an award of damages and entry of injunctive relief.

3.      It is important to note as well that Dr. Isaacs is not seeking monetary relief against any Defendant who may be immune from such relief. In such an instance, plaintiff seeks merely the prospective equitable relief available under the law.

## II.  JURISDICTION AND VENUE

4.   Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here in the District of New Hampshire.

5.   Jurisdiction in this Court arises under 28 U.S.C. s. 1331.

## III. *RES JUDICATA,* COLLATERAL ESTOPPEL, SOL

6.   This Amended Complaint was necessitated by the Defendants various predictable defensive posturing and assertions of *Res Judicata,* Collateral Estoppel, and Statute of Limitations ("SOL").  Plaintiff's counsel point out that such predictable defenses have erroneously been brought given the extensive factual background in this Complaint, which, is not necessarily relevant to the main claims asserted herein, which arise out of the NH Board of Medicine's February 5, 2014 Hearing, and their March 2014 Final Decision and Order.

7.   Thus, these claims were timely filed on February 03, 2017- two days before the earliest possible SOL bar.

8.   Furthermore, these claims were not, and could not possibly have been raised or adjudicated in the Plaintiff's prior case cited by Dartmouth, which commenced on February 03, 2012.

9. Thus, they cannot possibly be barred by either *Res Judicata,* Collateral Estoppel, or statute of limitations.

## IV. PARTIES

10. Plaintiff Dr. Jeffrey Isaacs has a mailing address of: 3553 West Chester Pike, Unit #177, Newton Square, PA 19073. Dr. Isaacs holds an A.B. from Dartmouth College, an MBA from Wharton/Instead, and an M.D. from the American University of the Caribbean.  He began his residency at Dartmouth in June 2011, and his superiors terminated him in March 2012.

11. Defendant New Hampshire Board of Medicine is located at 121 South Fruit Street, Suite 301, Concord, NH 03301-2412.  The Board's mission, according to its website, is to "protect the public from the unprofessional, incompetent, or impaired practice of medicine."  The Board maintains a database on its website of past Board actions, which includes links to Board decisions.  The Executive Director of the Board of Medicine is Peter Danles. Relief sought against the Board is limited to declaratory and prospective injunctive relief.

    a. Defendant, Jeff Cahill, ESQ. served duel rules as "prosecutor" and "investigator" for the Board participating in the February 5, 2014 hearing resulting in the March 11, 2014 Order Reprimanding the plaintiff and Revoking his license.

    b. Penny Taylor, was the signatory, Administrator and Authorized Representative for the Board and signed the March 11, 2014 Order Reprimanding the plaintiff and Revoking his license.

    c. Plaintiff reserves his right to name other Board members individually as their participation comes to light.

12. Defendant Dartmouth Hitchcock Medical Center is a non-profit corporation with a principal address of One Medical Center Drive, Lebanon, NH 03756. Defendant Dartmouth Hitchcock Medical Center does not have a registered agent in the State of New Hampshire. Plaintiff was a salaried employee of Mary Hitchcock Memorial Hospital, related to DHMC, but was a trainee of Dartmouth Psychiatry (see below).

13. Defendant Trustees of Dartmouth College has a principal office address at 63 South Main Street, Ste. 301, Hanover, NH 03755 and no registered agent. According to its webpage, the Board of Trustees "has ultimate responsibility for the financial, administrative and academic affairs of [Dartmouth] College.' The College disowned the Psychiatry department in August of 2016; at the time of the alleged events, Plaintiff was in a training program administered by faculty employed by the College.

## DARTMOUTH[2]

14. The Plaintiff was a medical resident at Dartmouth from 2011 to early 2012. For background information on the relationship between the Plaintiff and these defendants please see Isaacs v. Dartmouth Hitchcock Medical Center et al, Case No.: 1:12-cv-00040-LM, in this Court, USDC D. NH.

15. In the prior case, it was alleged that Dartmouth took several wrongful actions against the plaintiff during his time at Dartmouth and in connection with his separation therefrom. Those claims have all been adjudicated in Dartmouth's favor on unopposed Summary Judgment motions filed on or about 02/18/2014. See Case No.: 1:12-cv-00040-LM.

---

[2] This section is intended to provide background information about the relationship between the Plaintiff and the Dartmouth Defendants and to explain the *modus operandi* and potential motivation of the Dartmouth in working closely with the NH Board of Medicine to effectively deprive Dr. Isaacs of his rights. Because it was confusing, the outlined background contained in the Original Complaint has been removed from this amended Complaint in favor of this reference. However, further background may still be gleaned from a review of the Original Complaint in this case

16. The instant claims did not arise until the date of the NH Board of Medicine Order on 03/11/2014.

17. It is alleged in *this* case that Dartmouth agents could not help themselves from retaliating against the Plaintiff by, among other things, willfully participating in a joint prosecution with the State against Dr. Isaacs, manipulating the Board adjudicatory process, providing confidential and sealed documents, and prejudicing the Board, resulting in a denial of due process and deprivation of rights as described more fully herein.  Essentially, the State Board, and individuals connected therewith, were doing the bidding of Dartmouth as they worked together hand in hand to violate and deny the Plaintiff his rights.

18. Dartmouth argues that it is "implausible" for Plaintiff to *ever* return to work. The actions of the Defendants described herein have all but prevented Plaintiff from securing any employment, in any field, by publishing false accusations that had been sealed and discharged over a decade ago.

19. However, in recent years, Plaintiff has been able to cancel his disability claim, and created an internet project that has served 229 million individuals via Google and Apple. Plaintiff is not seeking compensation in the present action,[3] in fact, is essentially looking to volunteer in clinical research training at Dartmouth. Doctors *routinely* are rehabilitated for Board infractions, and permitted to recommence their work after 2-3 years of efforts.

---

[3] Although plaintiff wishes to make it clear that he is not actively seeking monetary compensation, and instead seeks equitable relief to rescind and retract the Board Decision and be re-admitted to Dartmouth, he is not waiving his claims to monetary compensation if it is awarded by Judge or Jury.  For purposes of maintaining an active case or controversy at law, plaintiff seeks money damages, and only wishes to make clear here that he has not filed the suit for that base purpose, but instead to correct the record and return to medicine.

20. Plaintiff believes the Defendants took their Summary Judgment win and have doubled-down, first in conjunction with the Board, and then on their own, to permanently damage, the Plaintiff.

## NH BOARD OF MEDICINE

21. The New Hampshire Board of Medicine granted Dr. Isaacs a Resident Training license pursuant to N.H. Admin. Rules Med 305.04 in May of 2011.

22. The Board commenced an investigation at Dartmouth Hitchcock Medical Center's request into claims of professional misconduct.

23. Throughout the three year investigation by the Board Dr. Isaacs's requested on several occasions that they also open investigations against the Dartmouth employees that had been party to his termination.

24. Despite these requests no investigation in to the actions of these individuals ever occurred.

25. On January 29, 2014 the plaintiff notified the Board that he had filed suit against them in Pennsylvania and requested that the hearing be postponed. The Plaintiff further requested that he be allowed to appear at the hearing telephonically because of medical reasons.

26. The Board denied the request for postponement, reasoning that the litigation was not a proper reason to stay the case.  The Board also stated that Dr. Isaacs had not provided details of his medical issues and further would not allow him to appear by telephone or video conference.   Dr. Isaacs received notification of the Board's actions a little over a day before the hearing was to be held.

27. On February 5, 2014 Dr Isaacs emailed the board as follows:

    NH Board of Medicine:

Due to the inclement weather between myself and New Hampshire, including snow, sleet and dangerous driving conditions around Boston and New York, I am not able to attend today's scheduled hearing. I currently have a rental car as my car is in the shop, and this car is particularly unequipped to drive in poor weather.

Thank you for your understanding.

28. The Board ignored that email and held a hearing without Dr. Isaacs in attendance. As such, Dr. Isaacs could not present evidence to the Board.

29. A hearing was apparently held on February 5, 2014 at 1:00 pm.

30. Dr. Isaacs was unable to attend the hearing or present evidence.

31. These denials and obstacles were baffling and egregious violations of Dr. Isaacs rights to Due Process and the protections afforded him under the ADA. It is clear that the constant and unreasonable denials and insistence on proceeding against him, *in absentia*, and with confidential, sealed, defamatory, out of State documents was a concerted effort to railroad someone regarded to be a thorn in the side of Dartmouth.

32. Neither the State, nor State actors, nor individuals cloaked in the imprimatur of the State, should employ their power to advance a vendetta of private organization, even one as respected as Dartmouth.

33. In so doing, the Board members, and Atty. Cahill opened themselves up to individual liability for their actions.

34. It is claimed that the Board's investigator allegedly obtained records from PACER. Plaintiff believes Dr. Finn, or another Dartmouth agent provided sealed and/or confidential records. It was wholly improper for Dr. Finn to provide these records, even those publicly available on PACER, to the Board in the absence of any explanation as to the reason they were sealed or any related circumstances.

35. The American Association of Medical Colleges (AAMC) is the authority that manages the nationwide residency application process, ERAS (Electronic Residency Application Service). AAMC has an investigation unit for application problems, and it investigated Isaacs' application relating to the disclosure issue regarding his time at Keck. At the conclusion of its investigation, AAMC determined that the disciplinary records had been sealed, and therefore, that Dr. Isaacs did not need to disclose them on ERAS. In January of 2014, Finn testified under oath to accept the AAMC determination as a 'competent authority.' Yet Dr. Isaacs's termination remains in place.

36. Additionally the Board of Medicine's decision was based primarily on the exact interpretation of the settlement agreements that the AAMC determined was inaccurate, the very interpretation previously championed during litigation by Dartmouth and related entities.

37. The Board entered an order without Dr. Isaacs' input, presence, or defense, based on misapplication of the facts and a misuse and withholding of the evidence. Specifically, the Board withheld the fact that Keck had settled a lawsuit with Dr. Isaacs, with the main consideration flowing to Dr. Isaacs being the sealing of contested disciplinary records.

38. Dr. Isaacs entered into two settlement agreements with Keck, one for dismissal of his action against its Deans, and another, dismissal against Keck as an institution.  The Institutional Settlement is available on PACER, but the settlement with the deans was not online at the time.

39. The Institutional Settlement ordered Dr. Isaacs not to disclose his enrollment at Keck to others, and further, ordered Keck to cancel "all Administrative Charges," including Isaacs' expulsion from Keck.

40. Dr. Isaacs had emailed the Institutional Settlement to the Board's counsel, Assistant Attorney General Cahill, months before the hearing. Attorney Cahill failed to provide the agreement to the Board or its investigator.

41. The Board decision specifically denies the existence of any provision of the Keck settlement sealing Isaacs's disciplinary records. That is incorrect, and Attorney Cahill possessed the settlement document that sealed the records but failed to give it to the Board.

42. The Plaintiff's medical license had already lapsed by the mere fact he was no longer employed at Dartmouth. The Board instead continued further and issued a severe reprimand which damaged Dr. Isaacs's career and reputation. The Board further failed to serve the final Order and Plaintiff did not receive the order by mail or email. Plaintiff found out about the Board's decision online, well after the date was up to appeal.

## DR. ISAACS' CONTINUED EFFORTS TO PRACTICE MEDICINE

43. Since the NH Board of Medicine's decision, Dr. Isaacs has been persistent in his efforts to continue to practice medicine.

44. Dr. Isaacs has applied to an enormous number of residency programs.

45. Because of the Board's decision he has not received a single interview or call on his applications.

46. Dr. Isaacs has been ostracized and excluded from the medical community because of the unnecessarily incendiary Board of Medicine order based on falsehoods, and conjecture which was either Court Ordered as Confidential by settlement or sealed by agreement, due to its speciousness.

47. Dr. Isaacs is an extremely capable and skilled individual who has the ability and drive to practice medicine if given the opportunity.

## V. CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983
*Atty. Jeff Cahill and New Hampshire Board Members Individually*

48. Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

49. Penny Taylor, the other Board members, and Atty. Jeff Cahill have wrongfully deprived Dr. Isaacs of his substantive and procedural due process rights in violation of the 5th and 14th Amendments. Moreover, their actions and inactions as described herein, worked to defame and discredit Dr. Isaacs in violation of a confidential settlement agreement, as well as deprive him of his God given abilities and Constitutional rights to pursue his chosen vocation.

50. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 USC 1983.

51. The right to practice an occupation is a liberty interest protected by the 14th Amendment of the United States Constitution. Gibson v. Berryhill, 411 US 564 (1973). This, and the right to due process, are clearly established rights to which the Board was well aware.

52. Atty. Cahill, Penny Taylor and the other Board members, under color of the authority vested in them by State law, went above and beyond or outside the scope of their job duties and descriptions by taking the actions and inactions described herein.  To wit-

   a. Employing *confidential* out of state and inaccurate settlement documents to Deprive Dr. Isaacs of his livelihood and publicly embarrass him;

   b. Failing to consider the relevant documents provided by Dr. Isaacs in his defense;

   c. Failing to honor the solemnity of a confidential Court Settlement Agreement;

   d. Failing to honor Dr. Isaacs' reasonable request to continue the hearing for medical reasons;

   e. Failing to honor Dr. Isaacs' reasonable request to continue the hearing for inclement weather;

   f. Failure to allow Dr. Isaacs' reasonable request to participate electronically.

53. Any reasonable person, acting under color of State law, within the scope of their administrative capacity, would have granted these reasonable requests; and/or adhered to the confidentiality of a Federal Court Settlement; and/or credited, or at least considered the Plaintiffs arguments and request.

54. The conduct of the Defendants under this Count clearly violated Dr. Isaacs established statutory, common law, contractual, and Constitutional rights.  Any reasonable person would have recognized that Dr. Isaacs was entitled to due process, and in need of reasonable accommodations under the ADA and RSA 354-A.

55. Any reasonable person would recognize that Dr. Isaacs was entitled to the confidentiality for which he bargained, and under which the CA Federal Court Ordered.

56. Anyone would have similarly recognized that Dr. Isaacs was being unjustly deprived of his right to procedural due process by, among other things, denying his reasonable requests for continuance and/or electronic participation.

57. Moreover, it would have been self evident to the Board defendants that they were denying Dr. Isaacs his fundamental Constitutional substantive due process rights and protections by slandering him in this way, and stripping away his ability to continue to learn and practice medicine, his God given gift.

58. Upon information and belief, Jeff Cahill, or the individual Board members, acting alone, or in concert with Dartmouth, or other as yet unknown 3rd parties, obtained and used confidential information in assessing Dr. Isaacs' case and whether or not their decision was ultimately explicitly based on such information, it clouded their judgment, and worked a grave injustice on the plaintiff by depriving him of his right to due process.

59. Penny Taylor signed the Board's decision. Ms. Taylor's and the individuals on the Board's Final Decision and Order regarding Dr. Isaacs, issued on March 11, 2014, misrepresents a settlement agreement found online as the settlement agreement referenced by Dr. Isaacs as the reason for not disclosing his attendance at Keck Medical School on the New Hampshire Application for Residency Training.

60. Dr. Isaacs had presented the correct settlement agreement – the one that sealed the disciplinary records – to Attorney Cahill months before the hearing.  Attorney Cahill either failed to provide this settlement document to the Board, or Ms. Taylor's and her cohorts on the Board failed to consider it, or both.  This was an abuse of power resulting in a gross miscarriage of justice.  It worked to deny Dr. Isaacs his right to due process as well as his liberty interest in pursuing his chosen vocation.

61. This settlement agreement, approved by the USDC of California, is in effect a Federal Court Order. The operative provision sealing the records, constitute the justification for Dr. Isaacs' not identifying his attendance at Keck in the residency documents.

62. Because Dr. Isaacs did not appear at the Board hearing, and was not permitted to appear by telephone or video conference, he was unable to present the previously provided contradictory evidence to the Board at the hearing.

63. Ms. Taylor and her cohorts justified their reprimand on the only settlement agreement it had – the wrong one (illegally obtained in contravention of a settlement agreement approved by the Court) - and branded him a "stalker" on their website.[4]

64. Ms. Taylor's and her cohorts actions have precluded Dr. Isaacs from the practice of medicine. By depriving Dr. Isaacs of his liberty interest in pursuing his chosen profession, specifically by withholding exonerating evidence, the Board violated the United State Constitution, and 42 U.S.C. § 1983.

65. The individual Board members and Atty. Cahill were acting under the color of State law and while doing so they deprived Dr. Isaacs of his 5th and 14th Amendment rights to substantive due process; procedural due process; and his right to pursue his education, training, and career in medicine as is a graduate of an accredited medical school.

66. WHEREFORE, Dr. Isaacs seeks monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order.

---

[4] Isaacs and a Keck classmate had a dispute, resulting in Keck issuing a "stay-away" order. Isaacs complied with the order, despite his allegations it was difficult to comply in a tight-knit class of one hundred students. After two months, Isaacs telephoned the other student and apologized, hoping to end the conflict. Keck thereafter convened its faculty and expelled Isaacs for disobeying the stay-away order. Isaacs alleged in the Central California District Court that favoritism played a role; email evidence showed the Keck Dean emailing the student's father at the NIH headquarters; an office where he had issued $20 million in federal grants to the Keck Dean prior to the other student's admission to Keck.

**COUNT II**
**VIOLATIONS OF 42 USC 1985(3)**
*Atty. Jeff Cahill and New Hampshire Board Members Individually*

67. Plaintiff repeats and realleges each and every allegation contained herein as if fully stated within this count.

68. Specifically, each and every paragraph of the Count against Atty. Jeff Cahill and New Hampshire Board Members Individually for violating 42 USC § 1983 is repeated here under this count and incorporated herein by reference.

69. 42 USC 1985(3) provides civil liability for "two or more persons in any State or Territory [who] conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or for equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory for giving or securing to all persons within such State or Territory the equal protection of the laws..."

70. Penny Taylor, the other Board members, and Atty. Jeff Cahill conspired here for the purpose of preventing or hindering the Plaintiff's equal protection of the laws.  It is apparent from the record that these two or more persons worked together to deprive Dr. Isaacs of his ADA rights, his State statutory rights, and Constitutional due process rights as described above.  As well as violating his common law and contract rights, in furtherance of depriving him due process, by crediting and publicizing a confidential document and ignoring the confidentiality of said documents, and the sanctity of the reasons for settling doubtful and denied and civil disputes.

71. Finally, to deny the plaintiff his simple request for a continuance for medical reasons and inclement weather as well as electronic participation, the inescapable conclusion is that

these defendants worked together to deprive Dr. Isaacs of his rights and privileges as described herein and in more detail throughout, which is and has been repeated and incorporated by reference in this Count.

72. As more completely stated above the Defendants conspired in their failures to allow the Plaintiff to present evidence or testimony and in their failure to properly investigate the Plaintiff's claims.

73. The failures and actions of these individuals resulted in the Plaintiff being denied equal protection of law, due process, and his God given, Constitutional, and statutory rights. All to the severe detriment of the Plaintiff.

74. WHEREFORE, Dr. Isaacs seeks monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order.

## COUNT III
## AMERICANS WITH DISABILITIES ACT - Title II
*The New Hampshire Board of Medicine*

75. Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

76. "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U. S. C. § 12202.

77. The plaintiff is a qualified individual with a disability. The Board is a public entity.

78. As described throughout this Complaint, the Board excluded Dr. Isaacs from participation in his February 5, 2014 hearing. The effectively denied the plaintiff of the benefits of the services, programs and activities of the Board at the hearing, and throughout the investigatory process. In short, he was discriminated against by the Board

and denied equal access to justice, and to the administration of Justice, in violation of Title II of the Americans with Disabilities Act. 42 USC § 12131 *et seq.*

79. It is alleged that Dartmouth has discriminated against Dr. Isaacs due to his disabilities. The Board, in working with Dartmouth to solidify their narrative, and banish Dr. Isaacs from medicine, thereby sought to exclude Dr. Isaacs from access to Justice, and deny him his rights, [and indeed the common courtesy of a new hearing date in a snow storm]. All of this was by reason of his disability.[5]

80. The Board's actions to require a disabled individual to drive through 8" of snow from Philadelphia constituted violation of the ADA. Videoconferencing appearance was a reasonable accommodation that would have ensured Plaintiff could present exonerating evidence. The Board denied this reasonable accommodation and hence further obstructed Plaintiff's ability to present exonerating evidence. This denied the Plaintiff equal access to justice, and to the administration of Justice, in violation of Title II of the Americans with Disabilities Act. 42 USC § 12131 *et seq.*

81. Indeed the very failure to recognize that Dr. Isaacs needed a continuance for "medical reasons" is alone enough to show that it is plausible that the Board discriminated against the plaintiff because of his disability and thereby excluded him and deprived him of his rights by denying him access to the administration of Justice in violation of Title II of the Americans with Disabilities Act. 42 USC § 12131 *et seq.* Or, retaliated against him for asserting such rights with Dartmouth in the lawsuit which ended around that time, in 2014.

---

[5] As an accomplished student, and businessman, Plaintiff does not wish to exacerbate his situation any further by publicly explicating his disability. If the Defense doubts he has overcome disability to achieve his academic and professional successes, it can be explored in discovery and dealt with in a strictly confidential and sealed manner. Certainly the law does not require the publication one's medical records to plead a claim.

82. Moreover, the Boards failure to include evidence the Plaintiff had emailed prior to the hearing, and the Boards failure to timely notify Plaintiff of the adverse ruling against him were also violative.  Plaintiff reserves his right to plead additional violations as they come to light.  By the very nature of a denial of access to the administration of Justice, it would be difficult, if not impossible for the plaintiff to know the full extent of his claims without the aide of discovery.

83. "The remedies, procedures, and rights set forth in section 794a of title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 USC § 12133.

84. WHEREFORE, plaintiff seeks all lawful damages, costs, attorneys fees interest and an Order deleting, retracting, or otherwise removing the Board's decision from publication or dissemination.

## COUNT IV
## ADA RETALIATION - Title IV
### The New Hampshire Board of Medicine

85. It is hereby alleged that the Board retaliated against Dr. Isaacs for reasons including but not necessarily limited to the following:

   a.   Asserting his ADA rights with Dartmouth;

   b.   Asserting his ADA rights with the Board;

   c.   Seeking access to justice and the fair administration of Justice at the Board.

86. The Board thereafter took those several actions complained of in more detail throughout this complaint: using confidential and sealed information as "evidence"; ignoring other information; denying reasonable accommodations requests- all in retaliation for Dr.

Isaacs attempts, and past attempts to avail himself of the rights and protections afforded under the ADA.

87. Upon information and belief, neither Dartmouth nor the Board of medicine want any disabled individuals to become Doctors.  Such a policy is against the law and Plaintiff has been severely harmed by these illegal practices and retaliation in violation of the ADA.

88. "Retaliation  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 USC § 12203(a).

89. "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 USC § 12203(b).

90. "The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively." 42 USC § 12203(c).

91. The Board retaliated against or coerced, intimidated, threatened, or interfered with Dr. Isaacs due to his claims and failed claims for relief under the ADA.

92. WHEREFORE, plaintiff seeks all lawful damages, costs, attorneys fees interest and an Order deleting, retracting, or otherwise removing the Board's decision from publication or dissemination.

**COUNT V**
**PROSPECTIVE INJUNCTIVE RELIEF AGAINST THE NH BOARD OF**
**MEDICINE IN ITS OFFICIAL CAPACITY**

93. The statutory and constitutional violations outlined above have resulted in a deprivation of the plaintiff's rights; and, the wrongful dissemination of false, confidential, and detrimental information regarding the plaintiff.

94. It would be unjust to allow such damages, stemming from these Constitutional violations to continue to accrue, even after a monetary award or other lawful resolution to this case.

95. The Board has asserted, through counsel, certain Eleventh Amendment immunity defenses.

96. The relief sought would not cause the State any financial burden or even any cost whatsoever beyond nominal or *deminimus*.

97. Whereas Declaratory, and prospective injunctive relief *are allowed* against the State under the United States Constitution, so long as it only governs *future* conduct, and has no monetary relief component. Edelman v. Jordan, 415 US 651, 663-69 (1974).

98. "[T]he Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. Id., at 666-667. In particular, Edelman held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." Pennhurst State School and Hospital v. Halderman, 465 US 89, 102-03 (1984).

99. The plaintiff is seeking injunctive and declaratory relief against the State, or the "office" of the NH Board of Medicine to take down and/or retract the Constitutionally infirm March 11, 2014 Decision against the Plaintiff.

100.     WHEREFORE, the Plaintiff Respectfully PRAYS for a prospective ORDER of

Equitable relief deleting, retracting, or otherwise removing the Board's decision from

publication or dissemination.

**COUNT VI**
**VIOLATIONS OF 42 U.S.C. § 1983**
*Dartmouth Defendants*

101.     Plaintiff repeats and re-alleges each and every allegation contained herein as if

fully stated under this count.

102.     As has been alleged throughout this Complaint, agents of Dartmouth, as willful

participants in a joint activity with the State or its Agents undertook an extensive

investigation and prosecution of Dr. Isaacs to advance their vendetta and agenda

*subsequent* to his lawsuit against them.

103.     These Dartmouth agents are "State actors" or are otherwise acting under color of

State law due to their receipt of Federal Funding and State support, their high level of

involvement and with State and Federal regulations, as well as their entrenchment in and

symbiotic relationship with the State of New Hampshire, and finally their willful

participation in and joint activity in banishing Dr. Isaacs through the Board of Medicine.

104.     Plaintiff avers that Dartmouth qualifies as a State actor under the Public Function

test.  West v. Atkins 487 US 42, 49-50 (1988).  Dartmouth is providing a public function

by training and investigating young doctors and aiding in the approval or disapproval of

their medical license.  Here, Dartmouth essentially took over the Board and used it to

deprive Dr. Isaacs of his livelihood.  Such decisions are traditionally reserved to the State

and thus, they were performing a "public function" and subject to liability as a State

actor.

105.    Plaintiff also avers that Dartmouth qualifies as a State actor under the <u>Joint Action</u> test. <u>Lugar v. Edmundson Oil Co</u>, 456 US 922, 941 (1982). Agents of Dartmouth were, quite literally, engaged in a joint venture to railroad Dr. Isaacs for *complying* with the California Federal Courts Orders related to a *confidential* settlement agreement and *sealed* records. As described herein, it is believed that Agents of the Dartmouth Defendants dug up, by legal or illegal means, and disseminated to the Board, confidential and sealed documents. This had the purpose and effect of depriving Dr. Isaacs of his Constitutional rights to substantive due process to pursue his vocation, procedural due process (callous denials of routine requests); violations of his ADA Title II access to justice, and generally to destroy the man in stark violation of his Constitutional and Statutory rights.

106.    Plaintiff also avers that Dartmouth qualifies as a State actor under the <u>Nexus Test.</u> <u>Jackson v. Metropolitan Edison Co</u>., 419 U.S. 345, 351 (1974). The Dartmouth organization in New Hampshire is extensive. The state could not function without it. It is believed that high ranking State officials and high ranking Dartmouth officials work together closely hand in hand to protect the health of the citizens and the State. A substantial figure of funds, as yet unknown, must come from State and Federal coffers to fund Dartmouth. Dartmouth is a non-profit and there again, the tax breaks and incentives provided by the State and Federal government, in that way, fund Dartmouth. In short, it is an institution.[6]

---

[6] "Dartmouth-Hitchcock Medical Center (DHMC), the state's only academic medical center, and the only Level I Adult and Pediatric Trauma Center in New Hampshire. The Dartmouth-Hitchcock Advanced Response Team (DHART), based in Lebanon and Manchester, provides ground and air medical transportation to communities throughout northern New England.... Mary Hitchcock Memorial Hospital, New Hampshire's only teaching hospital, with an inpatient capacity of 396 beds.... Children's Hospital at Dartmouth-Hitchcock (CHaD), New Hampshire's only comprehensive, full service children's hospital and a member of the Children's Hospital Association, provides

107.    Additional nexus, joint action, and public functions will no doubt be revealed in discovery if this cannot be stipulated to, but a cursory investigation also reveals that: Dartmouth works "[t]ogether with public health organizations, town leaders, schools, police, and community organizations, we complete Community Health Needs Assessments every three years, then work together with these partners to change the behaviors and community conditions that have the greatest impact on health, as detailed in our Community Health Improvement Plan." http://www.dartmouth-hitchcock.org/about_dh/community_benefits_program.html A plainly public function.

108.    Agents of Dartmouth worked alongside of, and may have instructed or coerced, Penny Taylor, the other Board members, and Atty. Jeff Cahill to wrongfully deprive Dr. Isaacs of his substantive and procedural due process rights in violation of the 5th and 14th Amendments.  Moreover, their actions and inactions as described herein, worked to defame and discredit Dr. Isaacs in violation of a confidential settlement agreement, as well as deprive him of his God given abilities and Constitutional rights to pursue his chosen vocation.

109.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 USC 1983.

---

advanced pediatric inpatient, outpatient and surgical services at DHMC in Lebanon as well as in Bedford, Concord, Manchester, Nashua and Dover." http://www.dartmouth-hitchcock.org/about_dh/our-organization.html

110.    The right to practice an occupation is a liberty interest protected by the 14th Amendment of the United States Constitution. <u>Gibson v. Berryhill</u>, 411 US 564 (1973). This, and the right to due process, are clearly established rights to which the Board was well aware.

111.    Agents of Dartmouth acting under color of State law, as actors, or as willful participants in a joint activity with Atty. Cahill, Penny Taylor and the other Board members, under color of the authority vested in them by State law, went above and beyond or outside the scope of their job duties and descriptions by taking the actions and inactions described herein.  To wit-

    a.  Employing *confidential* out of state and inaccurate settlement documents to Deprive Dr. Isaacs of his livelihood and publicly embarrass him;

    b.  Failing to consider the relevant documents provided by Dr. Isaacs in his defense;

    c.  Failing to honor the solemnity of a confidential Court Settlement Agreement;

    d.  Failing to honor Dr. Isaacs' reasonable request to continue the hearing for medical reasons;

    e.  Failing to honor Dr. Isaacs' reasonable request to continue the hearing for inclement weather;

    f.  Failure to allow Dr. Isaacs' reasonable request to participate electronically.

112.    The conduct of the Dartmouth Defendants under this Count clearly violated Dr. Isaacs's established statutory, common law, contractual, and Constitutional rights.

113.    Upon information and belief, the Dartmouth Defendants, perhaps working with as yet unknown 3rd parties, obtained and used confidential information in assessing Dr. Isaacs' case and it whether or not their decision was ultimately explicitly based on such

information, it clouded their judgment, and worked a grave injustice on the plaintiff by depriving him of his right to due process.

114.    At the instruction of Dartmouth, Ms. Taylor's and her cohorts justified their reprimand on the only settlement agreement they had – the wrong one (illegally obtained and provided by Dartmouth agents in contravention of a settlement agreement approved by the Court) - and branded him a "stalker" on their website.[7]

115.    These actions, at the behest of Dartmouth agents, have precluded Dr. Isaacs from the practice of medicine.  By depriving Dr. Isaacs of his liberty interest in pursuing his chosen profession, specifically by withholding exonerating evidence.

116.    The Dartmouth Defendants were acting in concert with the Board members and Atty. Cahill, acting under the color of State law and while doing so they deprived Dr. Isaacs of his 5th and 14th Amendment rights to substantive due process; procedural due process; and his right to pursue his education, training, and career in medicine as is a graduate of an accredited medical school.

117.    WHEREFORE, Dr. Isaacs seeks monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order.

## COUNT VII
## VIOLATIONS OF 42 USC 1985(3)
*Dartmouth Defendants*

118.    Plaintiff repeats and realleges each and every allegation contained herein as if fully stated within this count.

---

[7] Isaacs and a Keck classmate had a dispute, resulting in Keck issuing a "stay-away" order. Isaacs complied with the order, despite his allegations it was difficult to comply in a tight-knit class of one hundred students. After two months, Isaacs telephoned the other student and apologized, hoping to end the conflict. Keck thereafter convened its faculty and expelled Isaacs for disobeying the stay-away order. Isaacs alleged in the Central California District Court that favoritism played a role; email evidence showed the Keck Dean emailing the student's father at the NIH headquarters; an office where he had issued $20 million in federal grants to the Keck Dean prior to the other student's admission to Keck.

119.     Specifically, each and every paragraph of the Count against Dartmouth Defendants for violating 42 USC § 1983 is repeated here under this count and incorporated herein by reference.

120.     42 USC 1985(3) provides civil liability for "two or more persons in any State or Territory [who] conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or for equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory for giving or securing to all persons within such State or Territory the equal protection of the laws..."

121.     As yet unknown individual agents of the Dartmouth Defendants, along with Penny Taylor, the other Board members, and Atty. Jeff Cahill conspired here for the purpose of preventing or hindering the Plaintiff's equal protection of the laws.  It is apparent from the record that these two or more persons worked together to deprive Dr. Isaacs of his ADA rights, his State statutory rights, and Constitutional due process rights as described above.  As well as violating his common law and contract rights, in furtherance of depriving him due process, by crediting and publicizing a confidential document and ignoring the confidentiality of said documents, and the sanctity of the reasons for settling civil denied and disputed civil disputes.

122.     Finally, to deny the plaintiff his simple request for a continuance for medical reasons and inclement weather as well as electronic participation, the inescapable conclusion is that these the Dartmouth Agents "poisoned the well" so to speak with the NH Board.  The defendants worked together to deprive Dr. Isaacs of his rights and

privileges as described in herein and in more detail throughout, which is and has been repeated and incorporated by reference in this Count.

123.    As more completely stated above the Defendants conspired in their failures to allow the Plaintiff to present evidence or testimony and in their failure to properly investigate the Plaintiff's claims.

124.    The failures and actions of these individuals resulted in the Plaintiff being denied equal protection of law, due process, and his God given, Constitutional, and statutory rights. All to the severe detriment of the Plaintiff.

125.    WHEREFORE, Dr. Isaacs seeks monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order.

**COUNT VIII**
**AMERICANS WITH DISABILITIES ACT - Title IV Retaliation**
*Dartmouth Defendants*

126.    Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

127.    "Retaliation  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 USC § 12203(a).

128.    "Interference, coercion, or intimidation It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 USC § 12203(b).

129.    "Remedies and procedures  The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively." 42 USC § 12203(c).

130.    The plaintiff is a qualified individual with a disability. The Dartmouth Defendants are "persons" within the meaning of the statute.

## Retaliation With or Through or At The NH Board of Medicine

131.    It has been established that Dr. Isaacs was engaged in a Complaint about protected conduct in his prior action against Dartmouth cited herein.

132.    It is alleged that Dartmouth Defendants retaliated against him for that lawsuit, and interfered, coerced and intimidated the Board and Atty. Jeff Cahill.

133.    It is averred that Dartmouth Defendants "poisoned the well" with the Board and needlessly pushed for a censure to bolster their own claims and defenses in the previous litigation.

134.    Dr. Isaacs medical license would have simply lapsed and been revoked from his removal from the residency program.   Dartmouth did not have to retaliate by manipulating the board and providing confidential and sealed out of State documents.

135.    Instead, Dartmouth pushed for an identical narrative.  One which essentially punishes Dr. Isaacs for honoring a Federal Court's Confidential Settlement agreement and sealed records.

136.    These claims could not have accrued until well past the time that anyone would reasonably believe they could have or should have been adjudicated in the prior action.

137.     Indeed, the "Damages" were not known until the Board decision was published 03/11/2014, the month after Summary Judgment was filed in the then two year old case.

138.     As described throughout this Complaint, the Board as a result of pressure from Dartmouth excluded Dr. Isaacs from participation in his February 5, 2014 hearing. Effectively denying the plaintiff of the benefits of the services, programs and activities of the Board at the hearing, and throughout the investigatory process. In short, he was discriminated against by the Dartmouth Defendants and denied equal access to justice, and to the administration of Justice, in violation of Title II of the Americans with Disabilities Act. 42 USC § 12131 *et seq.*

139.     The Board's actions at the urging and as a direct result of Dartmouth's urging and narrative regarding the Plaintiff to require a disabled individual to drive through 8" of snow from Philadelphia constituted violation of the ADA. Videoconferencing appearance was a reasonable accommodation that would have ensured Plaintiff could present exonerating evidence.

## Continued Retaliation of Dartmouth Defendants

140.     As cited by the Defense, Dr. Isaacs has brought ADA claims against the Dartmouth Defendants in the past.

141.     Dr. Isaacs applied for federal residency at DHMC in 2013, 2014, 2015 and 2016.

142.     Dr. Isaacs was well qualified for those programs.

143.     Dartmouth's own witnesses have testified under oath that Isaacs' medical knowledge was adequate for DHMC.

144.     The Dartmouth Defendants refused to interview Isaacs.

145.    Dartmouth actively rejected Isaacs' applications on multiple occasions between 2013 and 2017.

146.    Given his qualifications, and viewed in the light most favorable to the Plaintiff, the only plausible explanation for Dartmouth's failure to interview Dr. Isaccs is that they were retaliating against him for filing an ADA complaint against them. Whether or not his prior complaint was successful is not material to the analysis.[8]

147.    Additionally, through counsel the Trustees of Dartmouth College have indicated that Dr. Isaacs attempt to return to his position was *implausible*.

148.    This language admits that even with medical improvement by Dr. Isaacs or additional life experience Dartmouth would continue to prevent Dr. Isaacs from working with him as a result of his previous legal actions against them.

149.    This type of behavior is unlawful and such retaliation is not permitted by law.

150.    WHEREFORE, plaintiff seeks all lawful damages, costs, attorney's fees interest and an Order deleting, retracting, or otherwise removing the Board's decision from publication or dissemination.

---

[8] "Anti-retaliation protections extend to many individuals, including those who make formal or informal allegations of EEO violations (whether or not successful), those who serve as witnesses or participate in investigations, those who exercise rights such as requesting religious or disability accommodation, and even those who are retaliated against after their employment relationship ends."   https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm
The EEOC also cited to the 9th Circuit: "[91] Supra note 54; see also *Learned v. City of Bellevue*, 860 F.2d 928, 932-33 (9th Cir. 1988) ("[I]t is not necessary to prove that the underlying discrimination in fact violated Title VII in order to prevail in an action charging unlawful retaliation . . . . If the availability of that protection were to turn on whether the employee's charge were ultimately found to be meritorious, resort to the remedies provided by the Act would be severely chilled."). https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm#_ftn91

**COUNT IX**
**INJUNCTIVE RELIEF**
*Dartmouth Defendants*

151.     Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

152.     By actively preventing Dr. Isaacs to return to his position at Dartmouth, the Dartmouth Defendants continue to cause him damage and prevent him from pursuing a career in medicine.

153.     It is not uncommon for Doctors to be rehabilitated for transgressions much more egregious then Dartmouth has levied against Dr. Isaacs, their admission that his return is impossible further shows that the reason that Dartmouth will not consider Dr. Isaacs' applications is retaliatory.

154.     The Plaintiff is requesting an order requiring Dartmouth to train the Plaintiff as he has the skills and training to necessary complete the program and allowing him to complete the program is the only way to fully compensate him for the injuries that the Dartmouth Defendants have caused him.

**CONCLUSION**

155.     The claims in this matter do not arise out of the shabby treatment Plaintiff received at Dartmouth as a medical student there in 2011. That has been litigated and concluded in Dartmouth's favor.[9]  *These* claims, the claims in *this* case, could not have arisen, much less accrued at that early date and thus were not, and could not possibly have been reviewed, considered, or adjudicated in the prior case. These current claims are the result of Dartmouth's *subsequent* overreach in concert with individuals of the NH

---

[9] The original Complaint in that matter was filed on 02/03/2012.  The Case was finally decided by this Court on or about 04/29/14. Isaacs v. Dartmouth-Hitchcock Medical Center, et al, Case No. 1:12-CV-00040-LM, (U.S.D.C. D. NH).

Board of Medicine to deny him substantive and procedural due process as well as his statutory and constitutional rights, as detailed herein, and to further defame him and deny his future medial training opportunity at *all* schools. Indeed the extent of the injury and damages suffered could not have even been fully realized, let alone measured until well *after* the Board issued it's final decision on or about March 11, 2014.

156.     Thus, any arguments for *Res Judicata*, Collateral Estoppel, Statute of Limitations, or sanctions (Rule 11 or otherwise) are baseless, unfounded, and not supported by the record. This controversy is anew, and must be decided on its own substantive merits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff further PRAYS that this Honorable Court:

A.   Enter judgment in favor of Jeffrey Isaacs on all Counts and award damages, punitive damages, costs, interest, and reasonable attorneys' fees; and

B.   Grant prospective Injunctive, equitable, or declaratory relief regarding the Board of Medicine directing them to remove and retract the March 11, 2014 Decision against Dr. Isaacs; and

C.   Order the retraction of Dr. Isaacs' termination from Hitchcock.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

May 1, 2017

Respectfully Submitted,
Dr. Jeffrey Isaacs,
By and through his counsel

/s/ Keith A. Mathews
Keith A. Mathews, Esq.
NH Bar No. 20997
587 Union Street
Manchester, NH 03104
(603) 622-8100
(888) 912-1497 fax
Keith@aaone.law