**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Dr. Jeffrey Isaacs

    v.                                         Civil No. 17-cv-040-LM
                                                 Opinion No. 2017 DNH 175
Trustees of Dartmouth
College, NH Board of
Medicine, and Dartmouth-
Hitchcock Medical Center


**O R D E R**

Asserting claims that arise from a disciplinary action taken against him by the New Hampshire Board of Medicine ("Board"), Dr. Jeffrey Isaacs has sued the Board, the Trustees of Dartmouth College ("Trustees"), and Dartmouth-Hitchcock Medical Center ("DHMC").[1]  Before the court is plaintiff's motion for preliminary injunctive relief.  The Board objects.  For the reasons that follow, plaintiff's motion is denied.

**I. Background**

Isaacs attended the Keck School of Medicine ("Keck") at the University of Southern California ("USC") until "he was suspended and ultimately dismissed for harassing a classmate."

---

[1] Plaintiff's First Amended Complaint ("FAC"), which is the operative complaint in this case, see doc. no. 40, also asserts a claim against the Board's attorney, its administrator, and its individual members, but the docket gives no indication that plaintiff has served any of those people with his FAC.

Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-CV-040-LM, 2014
WL 1572559, at *2 (D.N.H. Apr. 18, 2014).  Isaacs then sued USC,
and his suit resulted in two settlement agreements, one with
USC's deans and one with USC itself.

After he left USC, Isaacs attended the American University
of the Caribbean, Netherlands Antilles, which awarded him an
M.D. degree.  Thereafter, he began a residency in general
surgery at the University of Arizona ("UA"), but he resigned
after approximately three weeks.

Next, Dr. Isaacs applied for a residency at DHMC through
the Electronic Residency Application Service ("ERAS").  "In [his
ERAS] application, he omitted both his attendance at USC and his
aborted residency at UA."  Id.  Based upon his ERAS application,
Dr. Isaacs was accepted into the DHMC residency program in
psychiatry.  Dr. Isaacs also completed an application for, and
ultimately obtained, a residency training license from the
Board.  Dr. Isaacs began his DHMC residency in June 2011.  He
was dismissed from the program in March 2012.

After DHMC dismissed Dr. Isaacs, it notified the Board of
his dismissal, and further informed the Board that Dr. Isaacs
had "allegedly omitted material facts from his [training
license] [a]pplication . . . and the supplement filed along with
the application."  Doc. no. 7-1 at 1.  "As a result of [that]

2

information, the Board commenced an investigation to determine whether [Dr. Isaacs had] committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18."  Id.

In October 2013, the Board informed Dr. Isaacs that a hearing had been scheduled for 1:00 p.m. on February 5, 2014, "to determine whether in May 2011 [he had] engaged in professional misconduct by submitting false information to the Board and for failing to fully disclose all previous medical schools attended."  Id. at 2.  On January 29, 2014, Dr. Isaacs notified the Board that he had filed suit against it in Pennsylvania, and he asked the Board to postpone his hearing. He also asked to appear at his hearing telephonically, for medical reasons.  The Board denied both requests.  On the morning of the day of his hearing, Dr. Isaacs sent the Board an e-mail indicating that he would not be attending, due to inclement weather that would make it impossible for him to drive to New Hampshire from Pennsylvania.  The hearing went on as scheduled, without Dr. Isaacs.  "Attorney Jeff Cahill appeared as hearing counsel."  Id. at 4.

About a month after the hearing, the Board issued a Final Decision and Order, which was signed by Penny Taylor, in her capacity as Administrator and Authorized Representative of the New Hampshire Board of Medicine.  Taylor described the evidence

before the Board as including: (1) the two e-mails in which Dr. Isaacs had requested continuances of the hearing; (2) Dr. Isaacs's application to the Board for a residency training license; (3) an excerpt from a court order issued in his case against USC; and (4) the confidential settlement agreement that resulted from that suit. See id. at 5.

In its decision, the Board noted that DHMC's dismissal of Dr. Isaacs resulted in the cancellation of his medical license as a matter of law. But, it also went on to issue a reprimand, based upon its findings that when Dr. Isaacs applied for his license, he "knowingly made a false statement and further failed to disclose a material fact." Id. at 8-9. According to the Board's decision, the material fact that Dr. Isaacs failed to disclose was his expulsion from Keck. See id. at 2, 8. The Board's decision is posted online somewhere in the public domain. Since the Board reprimanded him, Dr. Isaacs has applied to many residency programs, including the program at DHMC, but he has not received a single interview.

This action followed. In his original complaint, plaintiff claimed, through the vehicle of 42 U.S.C. § 1983, that the Board had violated his constitutionally protected liberty interest in practicing his chosen occupation by reprimanding him.

4

However, in his First Amended Complaint, doc. no. 40, plaintiff drops the Board as a § 1983 defendant and, instead, asserts a § 1983 claim (Count I) against Cahill, Taylor, and the individual members of the Board, who are unnamed, for violating his rights to substantive and procedural due process under the Fifth and Fourteenth Amendments to the U.S. Constitution. Count I concludes with the following prayer for relief: "WHEREFORE, Dr. Isaacs seeks monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order." Id. at ¶ 66.

Against the Board, plaintiff brings: (1) a discrimination claim under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (Count III); (2) an ADA retaliation claim (Count IV); and (3) a claim captioned "Prospective Injunctive Relief Against the NH Board of Medicine in its Official Capacity," doc. no. 40 at 19 (capitalization omitted), (Count V). Count V begins this way: "The statutory and constitutional violations outlined above have resulted in a deprivation of the plaintiff's rights; and, the wrongful dissemination of false, confidential, and detrimental information regarding the plaintiff." Id. at ¶ 93. Count V concludes this way:

> The plaintiff is seeking injunctive and declaratory relief against the State, or the "office" of the NH Board of Medicine to take down and/or retract the

> Constitutionally infirm March 11, 2014 Decision
> against the Plaintiff.
>
> WHEREFORE, the Plaintiff Respectfully PRAYS for a
> prospective ORDER of Equitable relief deleting,
> retracting, or otherwise removing the Board's decision
> from publication or dissemination.

Id. at ¶¶ 99-100.

In the motion before the court, plaintiff asks the court to "enter a preliminary injunction removing the New Hampshire Board of Medicine decision from the public record." Doc. no. 27 at 1. While plaintiff's motion does not specify the defendant or defendants from which he seeks the relief he requests, the only defendant currently in the case that could possibly provide that relief is the Board.

## II. The Legal Standard

To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "[T]he first two factors, likelihood of success and of irreparable harm, [are] 'the most important' in the calculus," id. (quoting González-Droz v. González-Colón, 573 F.3d 75, 79 (1st Cir. 2009)), and

"the second factor, irreparable harm, is an 'essential prerequisite for equitable relief,'" Potts NH RE, LLC v. Northgate Classics, LLC, No. 12-cv-82-SM, 2012 WL 1964554, at *3 (D.N.H. May 10, 2012) (quoting Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 41 (1st Cir. 2010)), R. & R. adopted by 2012 WL 1969051 (May 30, 2012).  Finally, any "preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right," Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (citation omitted), and the form of injunctive relief that plaintiff seeks here—affirmative action by a defendant in advance of trial that consists of the very relief sought at trial—is especially disfavored and demands a heightened showing of exigencies that require it, see Potts, 2012 WL 1964554, at *3 (citing Braintree, 622 F.3d at 41; RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208-09 & n.3 (10th Cir. 2009)).

### III. Discussion

   In his motion, plaintiff argues that all four factors of the test for preliminary injunctive relief weigh in his favor. In its objection, the Board directs the court to its previously filed motion to dismiss plaintiff's original complaint and argues that because plaintiff has failed to state a claim upon which relief can be granted, he has necessarily failed to

establish a likelihood of success on the merits.  The court concludes that plaintiff is not entitled to the injunction he requests because he has failed to establish either a likelihood of success on the merits or the likelihood of irreparable harm in the absence of that injunction.

A. Likelihood of Success on the Merits

It is well established that "[i]n this circuit, proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction."  Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (citing New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).  Indeed, "if the moving party cannot demonstrate that he is likely to succeed [on the merits], the remaining factors become matters of idle curiosity."  New Comm, 287 F.3d at 9 (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).  Thus, to prevail, plaintiff must establish a likelihood that he will succeed on the merits.  He has not done so.

To support the proposition that he is likely to succeed on the merits, plaintiff states:

> A federal settlement agreement seals the academic
> records of Plaintiff that have been disclosed by the
> New Hampshire Board of Medicine by this order.

> The New Hampshire Board of Medicine completely and
> willfully ignored the second settlement agreement
> which clearly and fully sealed the Plaintiff's
> disciplinary records.

Doc. no. 27 at ¶¶ 20-21.  Notwithstanding those statements,

plaintiff, who bears the burden of proof, see Bruns, 750 F.3d at

65, does not appear to have produced the settlement agreement to

which he refers.  Nor has he explained how the Board, which was

not a party to his suit against USC, is bound by the settlement

agreement in that case.

While plaintiff's motion charges the Board with wrongfully

disclosing facts concerning his dismissal from Keck, his FAC

includes no claim against the Board based upon the manner in

which it handled information from his case against USC.  Rather,

he claims that the Board is liable to him for violating two

different provisions of the ADA, and his motion does not argue

that success on the merits of his ADA claims has any bearing on

his entitlement to the injunctive relief he seeks.

To be sure, the FAC also includes a claim for prospective

injunctive relief against the Board, Count V, which begins by

asserting that "[t]he statutory and constitutional violations

outlined above have resulted in a deprivation of the plaintiff's

rights; and, the wrongful dissemination of false, confidential,

and detrimental information regarding the plaintiff."  Doc. no.

40 at ¶ 93.  But the only claim "outlined above" that alleges an

unlawful dissemination of information about Dr. Isaacs is Count

I, and the Board is not a defendant in Count I.  In other words,

there is no claim against the Board arising from conduct that

even arguably could have led to the action that plaintiff seeks

to undo by means of a preliminary injunction.  Thus, Count V

seeks injunctive relief from the Board, see id. at ¶ 99, based

on conduct by three other defendants, or potential defendants.

Plaintiff cites no authority, and the court is aware of

none, for the proposition that in a multi-defendant case

involving multiple causes of action, a likelihood of success on

the merits of a claim asserting one cause of action against

defendant A entitles a plaintiff to injunctive relief from

Defendant B, against whom he has asserted an entirely different

cause of action.  Because plaintiff has not demonstrated a

likelihood of success on the merits against the Board on a claim

that has anything to do with the lawfulness of the Board's

publication of its March 11, 2014 order, he is not entitled to

the injunction he seeks.  See Arborjet, 794 F.3d at 173.[2]

---

[2] Even if a likelihood of success on the merits on Count I
could serve as the legal basis for a grant of injunctive relief
against the Board, plaintiff has not produced the settlement
agreement underlying the claim in Count I or any other evidence
that would support a determination that he is likely to succeed
on the merits of that claim.  Because plaintiff bears the burden
of demonstrating his entitlement to preliminary injunctive
relief, see Bruns, 750 F.3d at 65, his failure to produce any
evidence to support his request is an additional basis for

B. Irreparable Harm

Irreparable harm absent the requested injunction is an "essential prerequisite for equitable relief."  Braintree, 622 F.3d at 41 (quoting González–Droz, 573 F.3d at 81).  Moreover, as is the case with the other three factors, "[t]he burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant."  González–Droz, 573 F.3d at 79 (quoting Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)).

In his motion, plaintiff asserts that he has "suffered a cardiovascular event that had symptoms consistent with ventricular tachycardia," doc. no. 27 at ¶ 7, and that "[v]entricular [t]achycardia carries with it the ominous likelihood of fatal injury," id. at ¶ 9.  He continues:

> Dr. Isaacs has been told by his doctors that the stress he is under is extremely dangerous and this incident serves to solidify this concern.
>
> Having these claims published online is serving to exacerbate the Plaintiff's anxiety and stress leading to an increasingly dangerous deterioration of the Plaintiff's health.
>
> The longer this order remains published the more likely it becomes that Dr. Isaacs' declining health will become irreversible.
>
> The events described in the complaint including the twelve years of retaliation by Dartmouth agents have

concluding that he has not demonstrated a likelihood of success on the merits.

11

> caused the Plaintiff multiple stress related disorders
> including this most recent one, the continuation of
> the behavior causing this distress while this action
> is pending is dangerous given the Plaintiff's rapidly
> failing health.[3]

Id. at ¶¶ 11-14.  While plaintiff paints a bleak picture of his

prospects for survival if the Board does not remove its decision

in his case from the public domain, he has provided no evidence

of any sort to back up his argument on this issue.  This is

problematic for two reasons.

First, although plaintiff alleges that the publication of

the Board's decision has caused his health to deteriorate, he

did not bring this action until nearly three years after the

Board issued its decision.  Plaintiff then waited another four

months to file his motion seeking preliminary injunctive relief.

These considerable delays undercut plaintiff's claim of

irreparable harm, because they "impl[y] a lack of urgency."

Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc., 762 F.2d

1374, 1377 (9th Cir. 1985); see also Charlesbank Equity Fund II,

370 F.3d at 163 ("[D]elay between the institution of an action

and the filing of a motion for preliminary injunction . . .

---

[3] Plaintiff's reference to "twelve years of retaliation by Dartmouth agents" is somewhat difficult to understand given his allegation that he "was a medical resident at Dartmouth from 2011 to early 2012," doc. no. 40 at ¶ 14, which, obviously, is much less than twelve years ago.

detracts from the movant's claim of irreparable harm."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1 (3d ed. 2013) (collecting cases).

Second, plaintiff's attempt to establish that the proposed injunction would forestall deleterious effects on his health faces a significant logical problem. Even if the court were to order the removal of the Board's decision from the public domain, Isaacs's dismissal from Keck is discussed in the summary judgment order in his previous case against DHMC, see Isaacs, 2014 WL 1572559, at *2, which is also in the public domain. Because the harm that plaintiff seeks to prevent results from his knowing that information about his dismissal from Keck is in the public domain, and because the injunction he requests would not fully remove that information from the public domain, he cannot establish that the injunction he requests would prevent the harm he seeks to avoid.

In the absence of evidence corroborating plaintiff's allegations of ongoing injury, these factors militate against the conclusion that the denial of interim relief "is likely to cause irreparable harm." González-Droz, 573 F.3d at 79; see also Braintree, 622 F.3d at 42 (stating that plaintiff's "mere say-so" was insufficient to establish claim of "irreparable injury tied to outperforming the market"); Bruns v. Mayhew, 931

13

F. Supp. 2d 260, 275-76 (D. Me. 2013) (declining to issue
preliminary injunction where, _inter_ _alia_, plaintiffs offered
"very little concrete information [about their medical
conditions and treatment] . . . to sustain [their] claims of
irreparable harm"). Accordingly, in addition to failing to
establish a likelihood of success on the merits, plaintiff has
failed to establish that he faces irreparable harm in the
absence of the injunction he requests.

## IV. Conclusion

Because plaintiff has failed to carry his burden of
establishing either likelihood of success on the merits or
irreparable harm, his motion for preliminary injunctive relief,
doc. no. 27, is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 14, 2017

cc:  Pierre A. Chabot, Esq.
     Keith A. Mathews, Esq.
     William D. Pandolph, Esq.
     John F. Skinner, III, Esq.
     Seth Michael Zoracki, Esq.