# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Dr. Jeffrey Isaacs</u>

    v.

    Civil No. 17-cv-040-LM
    Opinion No. 2017 DNH 230

<u>Trustees of Dartmouth
College, NH Board of
Medicine, and Dartmouth-
Hitchcock Medical Center</u>

## O R D E R

Asserting claims that arise from a decision by the New Hampshire Board of Medicine ("Board") to reprimand him, after he was dismissed from a residency program in psychiatry operated by Dartmouth-Hitchcock Medical Center ("DHMC"), Dr. Jeffrey Isaacs has sued the Board, DHMC, and the Trustees of Dartmouth College ("Trustees"). As a result of a previous order, this case now consists of: (1) substantive and procedural due process claims, brought by means of 42 U.S.C. § 1983, against the Board's attorney, its Administrator, and the individual members of the Board (Count I);[1] (2) a disability discrimination claim under Title II of the Americans With Disabilities Act ("ADA"), <u>see</u> 42 U.S.C. § 12132, against the Board (Count III); (3) an ADA

---

[1] The individuals named as defendants in Count I of the FAC have yet to be served. In an endorsed order dated October 12, 2017, the court extended the time for serving those individuals until 60 days after the date of this order.

retaliation claim, see 42 U.S.C. § 12203, against the Board (Count IV); (4) a claim for prospective injunctive relief against the Board (Count V); and (5) an ADA retaliation claim against DHMC and the Trustees (Count VIII). Before the court are: (1) plaintiff's response to an order directing him to show cause why Counts IV and VIII should not be dismissed for failure to exhaust administrative remedies; (2) the Board's motion to dismiss plaintiff's First Amended Complaint ("FAC"); and (3) the Trustees' motion to dismiss the FAC. For the reasons that follow, both motions to dismiss are granted. But before turning to those motions, the court addresses ADA exhaustion, which is the subject of the parties' show cause briefing.

## I. ADA Exhaustion

Count IV asserts an ADA retaliation claim against the Board, and Count VIII asserts an ADA retaliation claim against DHMC and the Trustees. In its show cause order, the court noted that in Rivera-Díaz v. Humana Insurance of Puerto Rico, Inc., the court of appeals held that

> [c]laims of employment discrimination and retaliation under the ADA are subject to the procedural requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 to -9. See 42 U.S.C. §§ 12117(a), 12203(c); Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 142 (1st Cir. 2012). Under this procedural regime, litigation "is not a remedy of first resort" for either discrimination or retaliation cases. Jorge [v. Rumsfeld], 404 F.3d [556,] 558-59 [(1st Cir. 2005)]. Rather, a would-be plaintiff must

2

> first exhaust his administrative remedies.  This task
> embodies "two key components: the timely filing of a
> charge with the EEOC and the receipt of a right-to-sue
> letter from the agency."  Id.

748 F.3d 387, 389-90 (1st Cir. 2014).  In his response to the

show cause order, which incorporates by reference his objection

to the Board's motion to dismiss, plaintiff argues that because

his retaliation claims arise under Titles II and III of the ADA

rather than Title I, he was under no obligation to exhaust

administrative remedies before bringing those claims in court.

Of course, plaintiff's retaliation claims do not arise

under Titles II and III; like all ADA retaliation claims, they

arise under 42 U.S.C. § 12203, which was enacted under Title V

of the ADA.[2]  That said, the distinction that plaintiff draws

between Title I of the ADA and Titles II and III does have some

bearing on the exhaustion question.

In Rivera-Díaz, the plaintiff brought a Title I disability

discrimination claim against his former employer, and a Title V

retaliation claim that was based upon allegations that his

former employer had taken adverse actions against him in

response to his having asserted his rights under Title I of the

---

[2] To clarify, Subchapters I, II, and III of Chapter 126 of
the U.S. Code originated in Titles I, II, and III of the ADA,
i.e., Public Law 101-336, but Subchapter IV (which includes the
ADA anti-retaliation provision) began its life as Title V of the
ADA, not Title IV.  Title IV has no cognate in Chapter 126; it
pertains to telecommunications and is codified at 47 U.S.C.
§§ 225 and 611.

ADA.[3]  The court held that both the discrimination claim and the retaliation claim were subject to the exhaustion requirement. Thus, the rule of Rivera-Díaz is that when the protected conduct in an ADA retaliation claim is the exercise or vindication of a right granted by Title I, which pertains to disability discrimination by employers, the Title V retaliation claim is subject to the same exhaustion requirement as a Title I discrimination claim.  That is, such a retaliation claim must be adjudicated through the EEOC before it may be brought in court. See, e.g., Kelly v. N. Shore-Long Island Jewish Health Sys., 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016); Knaub v. Tulli, 788 F. Supp. 2d 349, 359 (M.D. Pa. 2011).

But when a plaintiff claims to have been retaliated against for exercising or vindicating a right granted by Title II (disability discrimination in the provision of services by a public entity) or Title III (disability discrimination in the provision of public accommodations and services operated by private entities), which do not concern disability discrimination by employers, courts have not required exhaustion through the EEOC.  See Cable v. Dep't of Devt'l Servs., 973 F.

---

[3] To prevail on an ADA retaliation claim, "a plaintiff must [prove] that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (citations omitted).

Supp. 937, 940 (C.D. Cal. 1997) ("Plaintiff's Title V claims rely on acts and practices Plaintiff alleges were unlawful under Title II of the ADA. Thus, Plaintiff was not required to exhaust administrative remedies before filing this action.") rev'd on other grounds, 54 F. App'x 263 (9th Cir. 2002); McInerney v. Rensselaer Poly. Inst., 505 F.3d 135, 139 (2d Cir. 2007) ("[W]e hold that there is no administrative-exhaustion requirement for ADA Title III claims or Title V claims predicated on asserting one's rights under Title III).

With the foregoing principles in mind, the court begins with the retaliation claim plaintiff asserts in Count VIII, and then turns to the retaliation claim he asserts in Count IV.

A. Count VIII

In Count VIII, plaintiff asserts that he was subjected to two different sets of adverse actions by the Trustees and DHMC because he engaged in the protected conduct of suing them in a previous case in this court, 12-cv-40-LM. See FAC ¶¶ 131, 140. In 12-cv-40-LM, Dr. Isaacs asserted an ADA discrimination claim against the Trustees, DHMC, and Mary Hitchcock Memorial Hospital, and his claim was strictly limited to discrimination in employment, under Title I.[4] Thus, before he can bring the

---

[4] While plaintiff says that "[t]he Defendants throughout this action have labeled themselves as employers when it is convenient for them," Pl.'s Mem. (doc. no. 39) ¶ 19, the court

retaliation claim he asserts in Count VIII in this court, he must exhaust his administrative remedies. See Rivera-Díaz, 748 F.3d at 389. He has not alleged that he has done so. Accordingly, the Trustees are entitled to dismissal of Count VIII.[5] Moreover, while DHMC has not moved to dismiss Count VIII, the foregoing analysis applies with equal force to plaintiff's retaliation claim against DHMC. Thus, as to DHMC, Count VIII is dismissed sua sponte. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 23 (1st Cir. 2014) (explaining that sua sponte dismissal is appropriate "where 'it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile'") (quoting Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002)).

Plaintiff attempts to avoid the reach of Rivera-Díaz by arguing that Count VIII should not be dismissed because he pled Title III retaliation against an educational institution, which

---

notes that in 12-cv-40-LM, it was plaintiff who alleged, in support of his ADA claim, that "DHMC is considered an employer under the act," Am. Compl. ¶ 43, Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-cv-40-LM (D.N.H. Feb. 6, 2013), ECF No. 54. Nowhere in 12-cv-40-LM did plaintiff characterize any of the defendants as public entities providing services or as private entities providing public accommodations, nor did he invoke any rights granted by Title II or Title III of the ADA.

[5] Because the Trustees are entitled to dismissal as a result of plaintiff's failure to exhaust his administrative remedies, the court need not address the other issues raised in the Trustees' motion to dismiss.

does not require administrative exhaustion.  Plaintiff is
mistaken.  First of all, as the court has explained, there is no
such thing as Title III exhaustion.  But, more importantly,
Count VIII asserts a claim that the Trustees retaliated against
plaintiff for suing them in 12-cv-40-LM, and the complaint in
12-cv-40-LM asserts a claim against the Trustees and DHMC, under
Title I, for disability discrimination in employment.  Nowhere
in the complaint in 12-cv-40-LM did plaintiff assert a Title III
claim against any defendant.  Because plaintiff is not now
claiming, in Count VIII, that the Trustees or DHMC retaliated
against him for asserting any right granted by Title III, the
rule stated in McInerney, 505 F.3d at 139, does not excuse him
from the exhaustion requirement.

     Both the Trustees and DHMC are entitled to dismissal of the
ADA retaliation claims that plaintiff asserts against them in
Count VIII due to plaintiff's failure to exhaust the
administrative remedies available to him.  Moreover, those
claims are, with one exception, dismissed with prejudice.  The
acts of retaliation alleged in Count VIII include: (1)
"poison[ing] the well with the Board and needlessly push[ing]
for a censure," FAC ¶ 133; and (2) rejecting applications for
admission to the DHMC residency program that he filed in 2013,
2014, 2015, and 2016, see FAC ¶ 141.  With the possible
exception of the most recent rejection of a residency

application, none of the acts of purported retaliation that plaintiff alleges in support of Count VIII took place recently enough for plaintiff to file a timely charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); N.H. Rev. Stat. Ann. ("RSA") 354-A:21, III; Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999)).  The precise timing of plaintiff's most recent residency application is not entirely clear.  In paragraph 141 of his FAC, plaintiff alleges that he "applied for federal residency at DHMC in 2013, 2014, 2015, and 2016," and in paragraph 145, he alleges that "Dartmouth actively rejected [his] applications on multiple occasions between 2013 and 2017." Thus, depending upon the date of plaintiff's most recent rejection, there remains a possibility that a retaliation claim based upon the most recent rejection could still be administratively exhausted.  Accordingly, Count VIII is dismissed with prejudice, except that plaintiff may, if possible, assert a properly exhausted ADA retaliation claim based upon the rejection of his 2016 application to DHMC for a residency.

B. Count IV

In Count IV, plaintiff claims that he was subjected to three different adverse actions by the Board because, among other things, he asked the Board for a reasonable accommodation that would have allowed him to participate in his disciplinary

hearing.  Asking for a reasonable accommodation from a public entity is conduct directed to vindicating a right granted by Title II of the ADA.  Thus, plaintiff was not obligated to exhaust administrative remedies before bringing the retaliation claim he asserts in Count IV.  See Cable, 973 F. Supp. at 940. Accordingly, the court cannot dismiss Count IV on the basis of plaintiff's failure to exhaust.

## II. The Board's Motion to Dismiss

This case includes three claims against the Board: (1) the ADA discrimination claim plaintiff asserts in Count III; (2) the ADA retaliation claim he assert in Count IV; and (3) the claim for prospective injunctive relief he asserts in Count V.  The Board moves to dismiss Counts III, IV, and V, arguing that the court lacks subject matter jurisdiction over the claims asserted therein, see Fed. R. Civ. P. 12(b)(1), and that even if the court has subject matter jurisdiction, plaintiff has failed to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6).  In addition, the Board asks the court to dismiss Count I, sua sponte.  In this section, the court begins with a brief recitation of the relevant factual allegations and then considers, in turn, each of the three claims the Board moves to dismiss as well as the claim the Board urges the court to dismiss on its own motion.

A. Background

The court assumes the reader's familiarity with its previous order in this case, document no. 34, and provides a truncated recitation of the relevant facts.

In March of 2012, DHMC dismissed Dr. Isaacs from his residency.  In its letter of dismissal, DHMC identified four grounds for its action, including Dr. Isaacs' "omission of material information from [his] Electronic Residency Application Service (ERAS) application [and] falsification of information provided to the New Hampshire Board of Medicine."  Compl., Ex. K (doc. no. 3-11), at 1.  The letter went on to describe the factual basis for its charges of omission and falsification:

> [Y]our ERAS application lacked information regarding your prior residency training in Arizona as well as time served as a medical student at the University of Southern California.  You also failed to divulge your dismissal from medical school at USC in information provided to the New Hampshire Board of Medicine in support of a NH training license.

Id.

Shortly after DHMC dismissed Dr. Isaacs, it notified the Board of its action and informed the Board of its belief that Dr. Isaacs had omitted material facts from the license application he had submitted to the Board.  "As a result of [the] information [the Board received from DHMC], the Board commenced an investigation to determine whether [Dr. Isaacs]

committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18." Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 1.

In October of 2013, the Board notified Dr. Isaacs that a hearing had been scheduled for February 5, 2014. According to the decision the Board issued after Dr. Isaacs's hearing, its "Notice [of Hearing] informed [Dr. Isaacs] . . . that failure to appear [could] result in the hearing being held in absentia with disciplinary sanctions imposed without further notice or opportunity to be heard." Def.'s Mot. to Dismiss, Ex. 1 (doc. 7-1), at 2. On January 29, 2014, Dr. Isaacs notified the Board that he had filed suit against it in federal court in Pennsylvania and asked the Board to stay his hearing, presumably pending the outcome of his action in Pennsylvania. He also stated that he was "unable to drive to NH for medical reasons," Compl., Ex. R (doc. no. 3-18), at 1, and asked to appear at his hearing remotely, by telephone or video conference, in the event that his request for a stay was denied. Dr. Isaacs did not identify the "medical reasons" that prevented him from driving to New Hampshire. The Board denied Dr. Isaacs's request for a stay and also denied his request to appear remotely. On the morning of the day of his hearing, which was scheduled for 1:00 p.m., Dr. Isaacs sent the Board an e-mail indicating that he would not be attending because it was impossible for him to

drive to New Hampshire from Pennsylvania, under inclement weather conditions, in the rental car he was then using. The hearing went on as scheduled, without Dr. Isaacs. According to the Board's Final Decision and Order ("Order"), which is dated March 11, 2014, "Attorney Jeff Cahill appeared as hearing counsel." Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 4.

The Board's Order was signed by Penny Taylor, in her capacity as Administrator and Authorized Representative of the New Hampshire Board of Medicine. In it, the Board noted that DHMC's dismissal of Dr. Isaacs resulted in the cancellation of his medical license as a matter of law. But, it also issued a reprimand, based upon its findings that when Dr. Isaacs applied for his license, he "knowingly made a false statement and further failed to disclose a material fact." Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 8-9.[6]

B. Count III: ADA Discrimination

In Count III, plaintiff claims that the Board violated Title II of the ADA by: (1) "requir[ing] a disabled individual to drive through 8" of snow from Philadelphia," FAC ¶ 80, to

---

[6] The false statement was Dr. Isaacs's answer of "no" to a question about whether he had ever "been 'reprimanded, sanctioned, restricted or disciplined in any activities involving medical education . . .,'" Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 6, and the material fact he failed to disclose was his attendance at the U.S.C. medical school, see id. at 7-8.

attend his hearing rather than granting him the reasonable accommodation of a remote appearance; (2) failing to include evidence he had e-mailed before the hearing; and (3) failing to provide him with timely notice of its decision.  For those purported ADA violations, "plaintiff seeks all lawful damages, costs, attorneys fees[,] interest[,] and an Order deleting, retracting, or otherwise removing the Board's decision from publication or dissemination."  FAC ¶ 84.  While plaintiff claims to be disabled, his complaint includes no factual allegations about the impairment that purportedly disables him.

The nature of the remedy that plaintiff seeks is at the heart of the Board's argument that the court lacks subject matter jurisdiction over plaintiff's ADA claims.  The Board construes plaintiff's request for an order "deleting, retracting, or otherwise removing the Board's decision from publication," FAC ¶¶ 84, 92, 100, as an attempt to have this court stand in review of that decision, which, the Board argues, is impermissible under the Rooker-Feldman doctrine.  See Bettencourt v. Bd. of Reg. in Med., 721 F. Supp. 382, 384 (D. Mass. 1989) ("A federal court has no jurisdiction to review a decision of a state administrative agency that is judicial in nature.") (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983)).

Plaintiff counters by arguing that the Rooker-Feldman doctrine is inapplicable here because he "is not seeking to overturn the Board's decision or to have this Court review the Board's Order." Pl.'s Obj. (doc. no. 37) ¶ 11. Rather, according to plaintiff, he "seeks monetary damages to make him whole for the Board's violations of the ADA, and/or an Order minimizing the detrimental effects of the publication of the erroneous, extraneous and defamatory language needlessly contained in the Order." Id. However, in his FAC, plaintiff states that he "is not seeking compensation in the present action." FAC ¶ 19 (emphasis added). He "clarifies" that statement in a footnote:

> Although plaintiff wishes to make it clear that he is not actively seeking monetary compensation, and instead seeks equitable relief to rescind and retract the Board Decision and be re-admitted to Dartmouth, he is not waiving his claims to monetary compensation if it is awarded by Judge or Jury. For purposes of maintaining an active case or controversy at law, plaintiff seeks money damages, and only wishes to make clear here that he has not filed the suit for that base purpose, but instead to correct the record and return to medicine.

FAC ¶ 19 n.3.

As a preliminary matter, the court cannot see how a request for the deletion, retraction, or removal of the Board's decision is not also a request to overturn that decision. Similarly, given that one of the three acts of purported discrimination that plaintiff identifies in Count III involves the manner in

which the Board handled evidence while adjudicating his case,[7] plaintiff is clearly asking the court to review the Board's order.  Indeed, it seems self-evident that for the court to grant plaintiff the equitable relief he seeks, the court would have to determine that the Board would have ruled in plaintiff's favor had it not committed the ADA violations that plaintiff alleges.  But, the court could not do that without reviewing the Board's decision.  For that reason, to the extent plaintiff asks the court to order the deletion, retraction, or removal of the Board's decision, Count III is "an attempt by plaintiff to seek appellate review," Bettencourt, 721 F. Supp. at 384, of the Board's Order.  Such a review is precluded by the Rooker-Feldman doctrine.  See id.

The court's conclusion that plaintiff's ADA discrimination claim is, at least in part, an impermissible bid for appellate review is reinforced by the nature of the equitable relief plaintiff seeks.  In Dufresne v. Veneman, the court of appeals pointed out that "injunctive relief under the ADA is limited to 'reasonable accommodations,'" 114 F.3d 952, 954 (9th Cir. 1997) (per curiam) (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)).  Here, Count III is a claim that the Board violated the

_____

[7] In like manner, two of the three acts of purported retaliation that plaintiff identifies in Count IV involve the manner in which the Board handled evidence while adjudicating his case.

ADA by failing to provide plaintiff with a reasonable
accommodation for his disability.  Yet, he does not ask the
court to order the Board to provide him with a reasonable
accommodation; he asks the court to order the Board to retract
its decision against him.  That Count III seeks equitable relief
that is not available under the ADA is further support for the
court's conclusion that to the extent that plaintiff requests
such relief, the claim for which he seeks it is a request for
appellate review, not an ADA claim.

However, plaintiff also asks for monetary damages, and to
the extent that he seeks that form of relief, the foregoing
analysis does not apply, and the court would appear to have
subject matter jurisdiction.  But that is not enough to save
Count III.  As to the part of plaintiff's ADA discrimination
claim over which the court has subject matter jurisdiction, the
Board is entitled to dismissal under Rule 12(b)(6) of the
Federal Rules of Civil Procedure.

Under Rule 12(b)(6), the court must accept the factual
allegations in the complaint as true, construe reasonable
inferences in the plaintiff's favor, and "determine whether the
factual allegations in the plaintiff's complaint set forth a
plausible claim upon which relief may be granted." Foley v.
Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014)
(citation omitted).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

Count III asserts a claim under Title II of the ADA, which provides, in pertinent part:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Beyond that, "Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden." Toledo v. Sánchez, 454 F.3d 24, 32 (1st Cir. 2006) (citing Parker v. Univ. de P.R., 225 F.3d 1, 5 (1st Cir. 2000); 28 C.F.R. § 35.150).

To prevail on a claim under Title II of the ADA, a plaintiff must prove:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting
Parker, 225 F.3d at 5).  As for the second element, ADA
discrimination can take several different forms including
disparate treatment, see Nunes v. Mass. Dep't of Corr., 766 F.3d
136, 144 (1st Cir. 2014) (citations omitted), disparate impact,
see id. at 145 (citations omitted), and the form of
discrimination at issue here: "refus[al] to affirmatively
accommodate [a] disability where such accommodation was needed
to provide 'meaningful access to a public service,'" id.
(quoting Henrietta D. v Bloomberg, 331 F.3d 261, 273-76 (2d Cir.
2003)).

The Board argues that plaintiff has not adequately alleged
the first element of his claim, i.e., that he is a qualified
individual with a disability.  The court agrees.

Title II of the ADA defines the term "qualified individual
with a disability" to mean:

> an individual with a disability who, with or without
> reasonable modifications to rules, policies, or
> practices, the removal of architectural,
> communication, or transportation barriers, or the
> provision of auxiliary aids and services, meets the
> essential eligibility requirements for the receipt of
> services or the participation in programs or
> activities provided by a public entity.

42 U.S.C. § 12131(2).  The ADA defines the term "disability" to
mean "a physical or mental impairment that substantially limits

one or more major life activities." 42 U.S.C. § 12102(1)(A).[8]

Major life activities, in turn,

> include, but are not limited to, caring for oneself,
> performing manual tasks, seeing, hearing, eating,
> sleeping, walking, standing, lifting, bending,
> speaking, breathing, learning, reading, concentrating,
> thinking, communicating, and working.

42 U.S.C. § 12102(2)(A).

In Toledo, the plaintiff survived a motion to dismiss by alleging, with respect to the first element of his Title II claim, that he had "a mental impairment, schizoaffective disorder, that substantially limits the major life activity of learning." 454 F.3d at 32. Unlike the plaintiff in Toledo, Dr. Isaacs has not alleged a physical or mental impairment. He justifies his decision not to do so this way:

> As an accomplished student, and businessman, Plaintiff
> does not wish to exacerbate his situation any further
> by publicly explicating his disability. If the
> Defense doubts he has overcome disability to achieve
> his academic and professional successes, it can be
> explored in discovery and dealt with in a strictly
> confidential and sealed manner. Certainly the law
> does not require the publication of one's medical
> records to plead a claim.

FAC (doc. no. 40) ¶ 79 n.5. Notwithstanding plaintiff's argument to the contrary, the nature of his purported disability

---

[8] In addition, the ADA considers a person to be disabled if he has a record of having an impairment that substantially limits a major life activity, see 42 U.S.C. § 12102(1)(B), or if he is regarded as having such an impairment, see § 12102(1)(C).

is something the Board has a right to learn from his complaint, not something the Board can be forced to explore in discovery. See Fed. R. Civ. P. 8(a)(2); Ashcroft, 556 U.S. at 678.

In his objection to the Board's motion to dismiss, plaintiff goes one step further; after offering to provide medical records to the court, under seal, for in camera review, he argues that dismissal of Count III under Rule 12(b)(6) "in and of itself would appear to be a violation of Title II by depriving a disabled individual the ability to participate in the civil resolution of and adjudication of disputes absent a public flogging on the nature and extent of their disability." Pl.'s Obj. (doc. no. 37) 20. Plaintiff provides no legal authority for that proposition, and the court declines to rule that it is required, by Title II of the ADA, to waive the Iqbal pleading requirements as a reasonable accommodation for an undisclosed disability.

In short, because he has not adequately alleged that he has a disabling physical or mental impairment, plaintiff has failed to state a cognizable claim for ADA discrimination.[9]

---

[9] Given Dr. Isaacs's February 5 e-mail, in which he attributed his inability to attend his hearing to the weather between Philadelphia and New Hampshire, it is also far from clear that he has alleged a substantial limitation on a major life activity.

The Board also argues that plaintiff has not adequately alleged that he requested an accommodation. Plaintiff responds by arguing that requesting an accommodation is not an element of a Title II claim and that, in any event, he did request an accommodation in the form of remote participation in his hearing before the Board. The court does not agree.

With respect to the issue of requesting an accommodation, the court of appeals for this circuit has explained:

> In cases where the alleged violation involves the denial of a reasonable modification/accommodation, "the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.'" Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) (discussing the request requirement in the Title I context). This is because a person's "disability and concomitant need for accommodation are not always known . . . until the [person] requests an accommodation." Id. However, "sometimes the [person]'s need for an accommodation will be obvious; and in such cases, different rules may apply." Id. at 261 n.7.

Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (footnote omitted). Moreover, "[r]equests for reasonable accommodations must be express and specific, must provide an agency with notice of the need for an accommodation, and must link the need to a disability." Phillips v. Toumpas, No. 10-cv-588-JL, 2011 WL 3665381, at *3 (D.N.H. June 30, 2011) (citing Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 113 (1st Cir. 2006); Reed, 244 F.3d at 261)), R. & R. adopted by 2011 WL 3665330 (Aug. 19, 2011).

To begin, a request for an accommodation is a requirement for relief on a failure to accommodate claim, see Kiman, 451 F.3d at 283, and the exception for an obvious need for accommodation does not apply here, given plaintiff's own statement that "[n]ot all disabilities [including, presumably, his own purported disability] manifest themselves in an obvious physical way," Pl.'s Obj. (doc. no. 37) ¶ 20.  As for allegations that he met the request requirement, plaintiff directs the court to paragraphs 77 through 82 of his FAC.  While plaintiff alleges that he was "denied the common courtesy of a new hearing date in a snow storm," FAC ¶ 79, and refers to the Board's "failure to recognize that [he] needed a continuance for 'medical reasons,'" FAC ¶ 81, paragraphs 77 through 82 are bereft of any actual allegation that Dr. Isaacs requested an accommodation from the Board.

But, construing the complaint as favorably to plaintiff as possible, the court presumes that plaintiff's reference to the snow storm is an allegation that his February 5 e-mail satisfied the request requirement and that his reference to a continuance for medical reasons is an allegation that his January 29 e-mail satisfied the request requirement.

In his January 29 e-mail, Dr. Isaacs began by stating: "You have noticed a February 5th hearing, which I Hereby motion to

stay, pending federal litigation in the Pennsylvania District
Court." Compl., Ex. R (doc. no. 3-18), at 1. He continued:

> While this resolves in the US district court, I would
> hope the NH Board can defer to the legal authority of
> the federal judiciary system and postpone my hearing.
> This is a question of law, rather than any matter
> requiring additional evidence, and Chief Judge Tucker
> is in the appropriate position to determine matters of
> law.
>
> Furthermore, I am unable to drive to NH for medical
> reasons right now. I have conducted the last 3
> depositions via skype for the USDC lawsuit. If the NH
> Board denies this request for a stay, I request to
> appear by telephone or video conference.

Id. Dr. Isaacs's cryptic reference to "medical reasons" is far
from specific, which is a problem. See Reed, 244 F.3d at 261
("[t]he employee's request must be 'sufficiently direct and
specific'") (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d
791, 795 (1st Cir. 1992); citing Nathanson v. Med. Coll. of Pa.,
926 F.2d 1368, 1381 (3d Cir. 1991)). And given that a bare
reference to "medical reasons" does not satisfy the statutory
definition of disability, see 42 U.S.C. § 12102(1), Dr. Isaacs's
e-mail did not satisfy the request requirement because it did
not "explain how the accommodation requested is linked to some
disability," Reed, 244 F.3d at 261. In short, to the extent
that Dr. Isaacs relies upon his January 29 e-mail to satisfy the
request requirement, his reliance is misplaced; whatever else
that e-mail may have been, it was not a request for an

accommodation for a disability for the purposes of a Title II ADA claim.

Even less needs be said about the February 5 e-mail, in which Dr. Isaacs wrote:

> Due to the inclement weather between myself and New Hampshire, including snow, sleet and dangerous driving conditions around Boston and New York, I am not able to attend today's scheduled hearing. I currently have a rental car as my car is in the shop, and this car is particularly unequipped to drive in poor weather.

FAC ¶ 29. On the morning of his hearing, Dr. Isaacs ascribed his inability to attend to bad weather and a sub-standard rental car, but said nothing about any physical or mental impairment that precluded him from getting to New Hampshire. Taking that e-mail at face value, it would appear that the "medical reasons" that concerned Dr. Isaacs on January 29 had abated to the point where, on February 5, he was prepared to drive to New Hampshire so long as his rental car was up to it. Thus, if he had asked for an accommodation on February 5, which he did not, it would have been an accommodation for his lack of a weather worthy vehicle, not an accommodation for a disability. In short, the February 5 e-mail does not satisfy the reasonable accommodation request requirement.

To sum up, because plaintiff's request for an order deleting, retracting or removing the Board's decision is barred by the Rooker-Feldman doctrine, the court lacks subject matter

jurisdiction over it. And, as for any part of plaintiff's ADA
discrimination claim over which the court has subject matter
jurisdiction, plaintiff has failed to state a claim upon which
relief can be granted. Accordingly, the Board is entitled to
dismissal of Count III.

That dismissal, in turn, is with prejudice. Dismissal with
prejudice as to plaintiff's request for injunctive relief is
appropriate, as there is no way plaintiff could amend his
complaint to overcome the Rooker-Feldman problem created by his
request for an order directing the Board to retract its
decision. As for the remainder of Count III, if the only
problem were plaintiff's failure to allege a disability, then
dismissal without prejudice would be appropriate as to the part
of his claim that is not subject to dismissal on Rooker-Feldman
grounds, to give plaintiff an opportunity to reconsider his
reluctance to identify his disability. However, Count III
suffers from a further fatal flaw: plaintiff has failed to
allege a legally sufficient request for an accommodation. When
all inferences from the FAC are drawn in plaintiff's favor, the
complaint alleges that he requested an accommodation in the
January 29 e-mail and/or the February 5 e-mail. Both are before
the court in their entirety.[10] Given the inadequacy of those e-

_____

[10] Plaintiff attached the January 29 e-mail to his original
complaint, and he quoted the February 5 e-mail, in full, in his

25

mails, there is nothing that plaintiff could possibly allege in an amended complaint that would cure his failure to plead facts sufficient to satisfy the request requirement. Accordingly, Count III is dismissed with prejudice.

## C. Count IV: ADA Retaliation

In Count IV, plaintiff asserts a claim against the Board under Title V of the ADA, which provides, in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(a) & (b). As for the elements of the claim plaintiff asserts in Count IV:

> To make out a prima facie case of retaliation under [42 U.S.C. § 12203] a plaintiff must show that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action. See

---

FAC. Moreover, because the January 29 e-mail was attached to a complaint, it is properly before the court. See Foley, 772 F.3d at 71-72 (explaining that when considering Rule 12(b)(6) motions, courts generally limit their review to "the complaint, documents attached to it, and documents expressly incorporated into it").

> Carreras v. Sajo, García & Partners, 596 F.3d 25, 35
> (1st Cir. 2010); Reinhardt [v. Albuquerque Pub. Sch.
> Bd. of Ed.], 595 F.3d [1126,] 1131 [(10th Cir. 2010)];
> Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir.
> 2006).  Once a plaintiff makes such a showing, the
> burden shifts to the defendant to articulate a
> legitimate, non-retaliatory explanation for the
> adverse action.  See Carreras, 596 F.3d at 36.  If the
> defendant does so, the burden shifts back to the
> plaintiff to show that the proffered legitimate
> explanation is pretextual, meaning that the defendant
> was motivated by a retaliatory animus.  See id.

D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).

As with Count III, the Board argues that it is entitled to dismissal of Count IV because the court lacks subject matter jurisdiction over the claim asserted therein, and because plaintiff has failed to state a claim upon which relief can be granted.  Given that the relief plaintiff seeks for the claim he asserts in Count IV is the same relief he seeks for the claim he asserts in Count III, the discussion of subject matter jurisdiction that pertains to Count III applies with equal force to Count IV.  Thus, to the extent that the claim plaintiff asserts in Count IV is a request for equitable relief, the court lacks subject matter jurisdiction over it.  Turning to the part of Count IV that is not barred by the Rooker-Feldman doctrine, plaintiff has failed to make out a prima facie case of ADA retaliation.

The court begins by describing Count IV.  Plaintiff alleges the following protected conduct: (1) "[a]sserting his ADA rights with Dartmouth," FAC ¶ 85(a); (2) "[a]sserting his ADA rights with the Board," FAC ¶ 85(b); and (3) "[s]eeking access to justice and the fair administration of [j]ustice at the Board," FAC ¶ 85(c).  Then he alleges the following adverse actions: (1) "using confidential and sealed information as 'evidence,'" FAC ¶ 86; (2) "ignoring other information," id.; and (3) "denying reasonable accommodation[] requests," id.  After identifying the protected conduct and adverse actions on which he bases his claim, plaintiff continues with this allegation:

> Upon information and belief, neither Dartmouth nor the Board of [M]edicine want any disabled individuals to become [d]octors.  Such a policy is against the law and Plaintiff has been severely harmed by these illegal practices and retaliation in violation of the ADA.

FAC ¶ 87.  The remainder of Count IV consist of three quotations from 42 U.S.C. § 12203, and this summation:

> The Board retaliated against or coerced, intimidated, threatened, or interfered with Dr. Isaacs due to his claims and failed claims for relief under the ADA.

FAC ¶ 91.

The Board argues that plaintiff has "fail[ed] to provide sufficient, non-conclusory facts to support a retaliation claim."  The court agrees.

Turning to the first element of his claim, plaintiff makes two allegations that he asserted his ADA rights and one allegation that he sought access to justice. But he says nothing about how he did those things, which means that his purported allegations are nothing more than bare legal conclusions, which are insufficient to survive a motion to dismiss. See Privitera v. Curren (In re Curren), 855 F.3d 19, 25 (1st Cir. 2017). However, even if the court were to fill in the blanks for plaintiff, he has failed to adequately allege the first element of his claim.

With respect to asserting his ADA rights with Dartmouth, plaintiff alleges no specific conduct, but may be referring to the ADA claim he asserted against DHMC in 12-cv-40-LM. If so, there is a rather large causation problem; plaintiff makes no allegations that would plausibly link protected conduct directed toward DHMC with alleged retaliation by the Board, which is the defendant in Count IV.

With respect to asserting his ADA rights with the Board, plaintiff alleges no specific conduct, but based upon factual allegations elsewhere in his complaint, he can only be referring to his purported assertion of a right, under the ADA, to a reasonable accommodation. But, for reasons explained in the previous section, plaintiff has failed to adequately allege that he ever made a bona fide request for an accommodation for the

purposes of an ADA discrimination claim.  Thus, as to that form
of protected conduct, he has failed to make allegations that
satisfy the first element of an ADA retaliation claim.

Finally, plaintiff's third allegation of protected conduct,
"seeking access to justice," is too vague to discern its
meaning.  Moreover, Title II of the ADA is not about providing
access to justice; it is about providing disabled persons with
access to public services.  However, if by "seeking access to
justice," plaintiff is referring to an attempt to participate in
his hearing before the Board, the court can discern no
difference between the conduct underlying plaintiff's third
allegation and the conduct underlying his second allegation.
Accordingly, plaintiff's third allegation also falls short of
alleging facts that would establish the first element of an ADA
retaliation claim.

Plaintiff's attempt to make allegations to support the
second element of his claim are equally unavailing.  In light of
the Rooker-Feldman doctrine, the court lacks subject matter
jurisdiction to consider a claim that would require it to
evaluate the manner in which the Board handled the evidence
before it when adjudicating plaintiff's case.  Thus, the first
two forms of adverse action plaintiff alleges cannot form the
basis for a cognizable ADA retaliation claim.  As for the third
form of adverse action, denying plaintiff's request(s) for a

reasonable accommodation, the court has already ruled that plaintiff has not adequately alleged that the Board denied any such request.

In sum, plaintiff has failed to adequately allege facts to support either of the first two elements of his ADA retaliation claim. Accordingly, the Board is entitled to dismissal of Count IV. And, given that the specific pleading deficiencies that entitle the Board to dismissal of Count IV are not amenable to correction in an amended complaint, for reasons that the court has already explained in its discussion of Count III, Count IV is dismissed with prejudice.

### D. Count V: Prospective Injunctive Relief

Count V is captioned "Prospective Injunctive Relief against the NH Board of Medicine in its Official Capacity," and it concludes in the following way:

> The plaintiff is seeking injunctive and declaratory
> relief against the State, or the "office" of the NH
> Board of Medicine to take down and/or retract the
> Constitutionally infirm March 11, 2014 Decision
> against the Plaintiff.

FAC ¶ 99. The Board argues that dismissal of Counts III and IV necessarily entitles it to dismissal of Count V. The court agrees.

Injunctive relief is not a cause of action; it is a remedy. But, as the court has already explained, it could not award the

particular form of injunctive relief that plaintiff seeks in Count V without running afoul of the Rooker-Feldman doctrine. Moreover, in paragraph 99, plaintiff appears to suggest that he is entitled to the injunctive relief he seeks as a remedy for a constitutional violation, but he has no constitutional claim against the Board. For those reasons, and principally because Count V does not assert a cause of action in the first instance, the Board is entitled to dismissal of Count V, with prejudice.

### E. Count I: Denial of Due Process

In Count I, plaintiff uses the vehicle of 42 U.S.C. § 1983 to assert a claim that Attorney Cahill, Penny Taylor, and the individual members of the Board violated his rights to substantive and procedural due process under the U.S. Constitution. For that purported constitutional violation, he seeks "monetary relief to be made whole, or, the retraction, withdrawal, and elimination from the public domain of the Board's Order." FAC ¶ 66.

In a footnote in its motion to dismiss, the Board urges the court, in the interest of judicial economy, to dismiss Count I sua sponte. The board argues that dismissal is appropriate because: (1) Count I is time-barred; (2) all the defendants against whom plaintiff plans to assert Count I are absolutely

immune from liability; and (3) plaintiff seeks relief in Count I
that is not legally available from the individuals against whom
he proposes to assert his § 1983 claim.  Plaintiff acknowledges
the Board's suggestion, but asks the court to disregard it,
citing Keegel v. Key West Caribbean Trading Company for the
proposition that "courts . . . universally favor trial on the
merits," 627 F.2d 372, 375 (D.C. Cir. 1980) (quoting Bridoux v.
E. Air Lines, Inc., 214 F.2d 207, 210 (D.C. Cir. 1954))
(internal quotation marks omitted).  He continues:

> [I]t would be patently unfair and unjust to summarily
> dismiss the Plaintiff's claim under § 1983 at this
> early stage when no salient argument for dismissal has
> been presented and the standard of review at this
> stage requires a light most favorable to the
> Plaintiff.  Therefore, Count I should stand.

Pl.'s Obj. (doc. no. 37) ¶ 10.

The court shares both the Board's concern about the
timeliness of the claim in Count I and plaintiff's concern that
that sua sponte dismissal might be precipitous.  "Sua sponte
dismissals are strong medicine, and should be dispensed
sparingly." Garayalde-Rijos, 747 F.3d at 22.  But, at the same
time, allowing plaintiff to serve a claim that is plainly time
barred would be pointless and would lead to an inefficient use
of judicial resources.  Moreover, if the claim in Count I is
timely, there is nothing to prevent plaintiff from demonstrating

that right now.[11]   Therefore, in an attempt to balance all of

those competing interests and out of an abundance of caution,

the court declines the Board's invitation to dismiss Count I <u>sua

sponte</u>, but rather than allowing plaintiff to serve Attorney

Cahill, Penny Taylor, and the individual members of the Board,

the court charts a middle course: plaintiff is hereby ordered to

show cause why Count I should not be dismissed as untimely.   To

guide plaintiff's show cause briefing, the court will devote the

balance of this section to outlining the legal principles that

will inform the court's consideration of the issue at hand.   In

addition, because this issue has already been briefed to some

extent, the court will offer its impressions of the relevant

issues based upon the arguments that plaintiff has already made.

       "Because section 1983 does not have its own statute of

limitations . . . courts use the personal-injury limitations

period adopted by the state where the injury supposedly

occurred."   <u>Martínez-Rivera v. Puerto Rico</u>, 812 F.3d 69, 74 (1st

Cir. 2016) (citing <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d

746, 748 (1st Cir. 1994)).   In New Hampshire,

       all personal actions, except actions for slander or
       libel, may be brought only within 3 years of the act

_____

       [11] Indeed, in its objection to plaintiff's motion to amend
his original complaint, the Board argued that Count I is time
barred, and plaintiff responded, going so far as to argue that
if he did file Count I outside the limitations period, he was
entitled to the benefit of equitable tolling.   <u>See</u> Pl.'s Reply
(doc. no. 24) ¶¶ 11-25.

or omission complained of, except that when the injury
and its causal relationship to the act or omission
were not discovered and could not reasonably have been
discovered at the time of the act or omission, the
action shall be commenced within 3 years of the time
the plaintiff discovers, or in the exercise of
reasonable diligence should have discovered, the
injury and its causal relationship to the act or
omission complained of.

RSA 508:4.

In Count I, plaintiff claims that defendants denied him both substantive and procedural due process, in six different ways, when conducting his hearing.  See FAC ¶ 52.  His claim appears to have accrued no later than March 11, 2014, the date on which the Board issued its Order, which identified Attorney Cahill as the Board's hearing counsel and which was signed by Penny Taylor.  Plaintiff first asserted his § 1983 claim against Attorney Cahill, Taylor, and the individual members of the Board in his FAC, which was filed on May 1, 2017, approximately six weeks after the limitations period had run.  Consequently, the claim plaintiff asserts in Count I appears to be time-barred.

Plaintiff, however, has argued that "[t]he legal princip[le] of equitable tolling would operate in regards to the relation-back doctrine to extend the statute of limitations in this instance where the [original] Complaint was timely filed." Pl.'s Reply (doc. no. 24) 6.

In § 1983 cases, federal courts "borrow the state's tolling rulings – unless of course they are hostile to federal

interests," Martínez-Rivera, 812 F.3d at 75 (citing Rodríguez v. Mun. of San Juan, 659 F.3d 168, 173 (1st Cir. 2011); López-González v. Mun. de Comerío, 404 F.3d 548, 552 (1st Cir. 2005)). New Hampshire has embraced the doctrine of equitable tolling, which the state supreme court has described this way:

> Equitable tolling allows a party "to initiate an action beyond the statute of limitations deadline," but "is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 623 (2005) (quotation omitted). Equitable tolling "applies principally if the plaintiff is actively misled by the defendant about the cause of action." Id. (quotation omitted).

Kierstead v. State Farm Fire & Cas. Co., 160 N.H. 681, 688 (2010) (parallel citation omitted). Here, plaintiff did not argue that he was prevented from exercising his rights in any extraordinary way, or that any defendant or potential defendant misled him about the cause of action. To the contrary, in his motion to amend, he explained that he was asserting claims against Attorney Cahill and Taylor in his FAC "in response to the Board's claims of immunity." Pl.'s Mot. to Amend (doc. no. 14) ¶ 9. And in his reply to the Board's objection to his motion to amend, attributed his decision not to name Attorney Cahill and Taylor as defendants to his "mistake in attempting to be civil and not name individuals as defendants." Pl.'s Reply (doc. no. 24) ¶ 17. Because plaintiff does not identify any way in which he was prevented from filing a timely § 1983 claim

against the defendants named in Count I of his FAC, he does not appear to be entitled to the benefit of equitable tolling.

Plaintiff's reference to the relation-back doctrine seems to be equally unavailing. In Perez v. Pike Industries, Inc., "the plaintiff allegedly injured his ankle when his foot sank into a patch of soft pavement on the edge of the highway," 153 N.H. 158, 159 (2005). Then,

> the plaintiff brought negligence claims against the State of New Hampshire, the Commissioner of the New Hampshire Department of Transportation, and the New Hampshire Department of Transportation (DOT), alleging his injury "was caused by the failure of defendant State of New Hampshire, through the agents, servants, and employees of the Department of Transportation to exercise due care and proper workmanship in the paving and patching of the area at the edge of the road."

Id. After the limitations period had run,

> the plaintiff moved to add Pike as a party defendant, alleging "[d]iscovery has revealed that Pike Industries held a subcontract with the state for maintenance of the roadway in question, and therefore may be liable for the condition of the roadway and in particular the paving at the time of the Plaintiff's injury."

Id. Pike moved to dismiss, arguing that the plaintiff's claim was time barred. See id. The trial court dismissed the plaintiff's claim against Pike, see id., and the plaintiff appealed.

On appeal, the plaintiff made two arguments, one of which is relevant here: he argued that "his initial writ named Pike as a party by its reference to the 'agents, servants, and

employees' of the State." Id. at 160.  In rejecting the
plaintiff's argument, the supreme court

> recognized that [its] policy of liberally allowing
> amendment permits the addition of a party in the case
> of misnomer, which involves the misdescription of a
> properly served party, whereas it does not generally
> permit the addition of an entirely new party in cases
> involving mistaken identity, where the wrong party had
> been brought before the court.

Id. at 162 (citing Dupuis v. Smith, 114 N.H. 625, 628 (1974)).

Here, plaintiff has not argued that substituting the
individuals named as defendants in Count I of the FAC for the
defendant named in Count I of his original complaint was an
attempt to correct a misnomer in the original complaint.
Rather, his own pleadings demonstrate that his addition of those
individuals was either an attempt to correct a legal
misunderstanding that was brought to his attention by the
Board's objection to his motion to amend or was an attempt to
correct his misguided act of civility.  Either way, based upon
Perez, it seems evident that if it were presented with the facts
of this case, the New Hampshire Supreme Court would rule that
plaintiff's claims against the individuals named in Count I of
the FAC do not relate back to the original complaint in a way
that would provide plaintiff with relief from the statute of
limitations.

Based upon the foregoing, it appears that the claims that
plaintiff asserts in Count I are time barred.  But in the

interest of giving plaintiff a full and fair opportunity to litigate those claims, he will be given an opportunity to show cause why Count I should not be dismissed as time barred, for the reasons outlined above.

### III. Conclusion

To summarize: (1) the Trustees' motion to dismiss Count VIII, document no. 36, is granted with prejudice, except for plaintiff's claim that the Trustees and/or DHMC retaliated against him for pursuing 12-cv-40-LM by rejecting his 2016 application for a residency, which is dismissed without prejudice; (2) the Board's motion to dismiss Counts III, IV, and V, document no. 35, is granted with prejudice, in its entirety; and (3) plaintiff is ordered to show cause why Count I should not be dismissed as time barred.

As for the portion of Count VIII that is dismissed without prejudice, plaintiff has 20 days from the date of this order to file a motion for leave to amend his FAC to assert a properly exhausted ADA retaliation claim based upon his most recent rejection for a residency. If plaintiff files a motion for leave to amend, the customary deadlines for responding will apply. If he does not file such a motion, then Count VIII will be dismissed, with prejudice, in its entirety.

As for Count I, plaintiff has 20 days from the date of this order to show cause, in a separate filing, see LR 7.1(a), why the § 1983 claim asserted therein should not be dismissed as time barred. If he fails to respond to the court's show cause order, or if he fails to show cause, Count I will be dismissed, for the reasons described above. However, if plaintiff is able to persuade the court that Count I is not time barred, then he shall have 60 days from the date of the court's favorable order on his show cause briefing to serve Attorney Cahill, Penny Taylor, and the individual members of the Board.

Finally, if plaintiff files neither a motion for leave to amend nor a response to the show cause order, then his FAC will be dismissed in its entirety, and the clerk of the court will be directed to close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 24, 2017

cc:  Pierre A. Chabot, Esq.
     J.D. Isaacs, pro se
     Edward M. Kaplan, Esq.
     Kathleen C. Peahl, Esq.
     Christopher James Pyles, Esq.