UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DR. JEFFREY ISAACS | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:17-CV-00040-LM |
| | ) |
| NH BOARD OF MEDICINE, | ) |
| Jeff Cahill, ESQ. | ) |
| Penny Taylor | ) |
| | ) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER | ) |
| | ) |
| TRUSTEES OF DARTMOUTH COLLEGE | ) |
| Defendants. | ) |

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## I.   INTRODUCTION

1.      Plaintiff, Jeffrey Isaacs, M.D. ("Dr. Isaacs") brings this Second Amended Complaint as allowed by this Court's October 24, 2017 to remedy the damages he has suffered following the March 11, 2014 Decision of the New Hampshire Board of Medicine (the "Board").[1] The Board, in concert with the Dartmouth Defendants worked independently and together to deny Dr. Isaacs his Constitutional, statutory and common law rights in violation of 42 USC §§1983 *et seq.*; to effectively deprive him of access to justice, due process, and his ability to pursue his chosen career of practicing medicine.

2.      The Defendants' conduct relating to and treatment of Dr. Isaacs constitute violations of his constitutional, statutory, civil and contract rights, and warrant an award of damages.

---

[1] Where applicable, as in the §1983 claim, references to the Board shall mean Atty. Jeff Cahill, Penny Tailor, and the other Board members *individually*, as the Board itself has chosen to claim immunity under the 14th Amendment to the United States Constitution. Otherwise, the Board shall mean the New Hampshire Board of Medicine.

3.    It is important to note as well that Dr. Isaacs is not seeking monetary relief against any Defendant who may be immune from such relief. In such an instance, plaintiff seeks merely the prospective equitable relief available under the law.

## II.  JURISDICTION AND VENUE

4.    Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here in the District of New Hampshire.

5.    Jurisdiction in this Court arises under 28 U.S.C. s. 1331.

## III. *RES JUDICATA,* COLLATERAL ESTOPPEL, SOL

6.    This Second Amended Complaint was necessitated by this Court's October 24, 2017 order. In order to clarify the causes of action against the Defendants.

7.    These claims were not, and could not possibly have been raised or adjudicated in the Plaintiff's prior case cited by Dartmouth, which commenced on February 03, 2012.

## IV. PARTIES

8.    Plaintiff Dr. Jeffrey Isaacs has a mailing address of: 3553 West Chester Pike, Unit #177, Newton Square, PA 19073. Dr. Isaacs holds an A.B. from Dartmouth College, an MBA from Wharton/Instead, and an M.D. from the American University of the Caribbean.  He began his residency at Dartmouth in June 2011, and his superiors terminated him in March 2012.

9.    Defendant New Hampshire Board of Medicine is located at 121 South Fruit Street, Suite 301, Concord, NH 03301-2412.  The Board's mission, according to its website, is to "protect the public from the unprofessional, incompetent, or impaired practice of medicine."  The Board maintains a database on its website of past Board actions, which includes links to Board decisions.  The Executive Director of the Board of Medicine is

Peter Danles. Relief sought against the Board is limited to declaratory and prospective injunctive relief.

   a.  Defendant, Jeff Cahill, ESQ. was the "prosecutor" for the Board participating in the February 5, 2014 hearing resulting in the March 11, 2014 Order Reprimanding the plaintiff and Revoking his license.

   b.  Penny Taylor, was the signatory, Administrator and Authorized Representative for the Board and signed the March 11, 2014 Order Reprimanding the plaintiff and Revoking his license.

   c.  Plaintiff reserves his right to name other Board members individually as their participation comes to light.

10. Defendant Dartmouth Hitchcock Medical Center is a non-profit corporation with a principal address of One Medical Center Drive, Lebanon, NH 03756. Defendant Dartmouth Hitchcock Medical Center does not have a registered agent in the State of New Hampshire. Plaintiff was a salaried employee of Mary Hitchcock Memorial Hospital, related to DHMC, but was a trainee of Dartmouth Psychiatry (see below).

11. Defendant Trustees of Dartmouth College has a principal office address at 63 South Main Street, Ste. 301, Hanover, NH 03755 and no registered agent. According to its webpage, the Board of Trustees "has ultimate responsibility for the financial, administrative and academic affairs of [Dartmouth] College.' The College disowned the Psychiatry department in August of 2016; at the time of the alleged events, Plaintiff was in a training program administered by faculty employed by the College.

## DARTMOUTH[2]

12. The Plaintiff was a medical resident at Dartmouth from 2011 to early 2012. For background information on the relationship between the Plaintiff and these defendants please see Isaacs v. Dartmouth Hitchcock Medical Center et al, Case No.: 1:12-cv-00040-LM, in this Court, USDC D. NH.

13. In the prior case, it was alleged that Dartmouth took several wrongful actions against the plaintiff during his time at Dartmouth and in connection with his separation therefrom. Those claims have all been adjudicated in Dartmouth's favor on unopposed Summary Judgment motions filed on or about 02/18/2014. See Case No.: 1:12-cv-00040-LM.

14. The instant claims did not arise until the date of the NH Board of Medicine Order on 03/11/2014.

15. It is alleged in *this* case that Dartmouth agents could not help themselves from willfully participating in a joint prosecution with the State against Dr. Isaacs, manipulating the Board adjudicatory process, providing confidential and sealed documents, and prejudicing the Board, resulting in the deprivation of rights as described more fully herein. Essentially, the State Board, and individuals connected therewith were doing the bidding of Dartmouth as they worked together hand in hand to violate and deny the Plaintiff his rights.

16. Dartmouth argues that it is "implausible" for Plaintiff to *ever* return to work. The actions of the Defendants described herein have all but prevented Plaintiff from securing any

---

[2] This section is intended to provide background information about the relationship between the Plaintiff and the Dartmouth Defendants and to explain the *modus operandi* and potential motivation of the Dartmouth in working closely with the NH Board of Medicine to effectively deprive Dr. Isaacs of his rights. Because it was confusing, the outlined background contained in the Original Complaint has been removed from this amended Complaint in favor of this reference. However, further background may still be gleaned from a review of the Original Complaint in this case

employment, in any field, by publishing false accusations that had been sealed and discharged over a decade ago.

17. However, in recent years, Plaintiff has been able to cancel his disability claim, and created an internet project that has served 229 million individuals via Google and Apple. Plaintiff is not seeking compensation in the present action, in fact, is essentially looking to volunteer in clinical research training at Dartmouth. Doctors *routinely* are rehabilitated for Board infractions, and permitted to recommence their work after 2-3 years of efforts.

18. Plaintiff believes the Defendants took their Summary Judgment win and have doubled-down, first in conjunction with the Board, and then on their own, to permanently damage, the Plaintiff.

## **NH BOARD OF MEDICINE**

19. The New Hampshire Board of Medicine granted Dr. Isaacs a Resident Training license pursuant to N.H. Admin. Rules Med 305.04 in May of 2011.

20. The Board commenced an investigation at Dartmouth Hitchcock Medical Center's request into claims of professional misconduct.

21. Throughout the three year investigation by the Board Dr. Isaacs's requested on several occasions that they also open investigations against the Dartmouth employees that had been party to his termination.

22. Despite these requests no investigation in to the actions of these individuals ever occurred.

23. On January 29, 2014 the plaintiff notified the Board that he had filed suit against them in Pennsylvania and requested that the hearing be postponed. The Plaintiff further requested that he be allowed to appear at the hearing telephonically because of medical reasons.

24. The Board denied the request for postponement, reasoning that the litigation was not a proper reason to stay the case. The Board also stated that Dr. Isaacs had not provided details of his medical issues and further would not allow him to appear by telephone or video conference. Dr. Isaacs received notification of the Board's actions a little over a day before the hearing was to be held.

25. On February 5, 2014 Dr Isaacs emailed the board as follows:

> NH Board of Medicine:
>
> Due to the inclement weather between myself and New Hampshire, including snow, sleet and dangerous driving conditions around Boston and New York, I am not able to attend today's scheduled hearing. I currently have a rental car as my car is in the shop, and this car is particularly unequipped to drive in poor weather.
>
> Thank you for your understanding.

26. The Board ignored that email and held a hearing without Dr. Isaacs in attendance. As such, Dr. Isaacs could not present evidence to the Board.

27. A hearing was apparently held on February 5, 2014 at 1:00 pm.

28. Dr. Isaacs was unable to attend the hearing or present evidence.

29. These denials and obstacles were baffling and egregious violations of Dr. Isaacs' rights to Due Process and the protections afforded him under the ADA. It is clear that the constant and unreasonable denials and insistence on proceeding against him, *in absentia*, and with confidential, sealed, defamatory, out of State documents was a concerted effort to railroad someone regarded to be a thorn in the side of Dartmouth.

30. Neither the State, nor State actors, nor individuals cloaked in the imprimatur of the State, should employ their power to advance a vendetta of private organization, even one as respected as Dartmouth.

31. In so doing, the Board members, and Atty. Cahill opened themselves up to individual liability for their actions.

32. It is claimed that the Board's investigator allegedly obtained records from PACER. Plaintiff believes Dr. Finn, or another Dartmouth agent provided sealed and/or confidential records. It was wholly improper for Dr. Finn to provide these records, even those publicly available on PACER, to the Board in the absence of any explanation as to the reason they were sealed or any related circumstances.

33. The American Association of Medical Colleges (AAMC) is the authority that manages the nationwide residency application process, ERAS (Electronic Residency Application Service). AAMC has an investigation unit for application problems, and it investigated Isaacs' application relating to the disclosure issue regarding his time at Keck. At the conclusion of its investigation, AAMC determined that the disciplinary records had been sealed, and therefore, that Dr. Isaacs did not need to disclose them on ERAS. In January of 2014, Finn testified under oath to accept the AAMC determination as a 'competent authority.' Yet Dr. Isaacs's termination remains in place.

34. Additionally the Board of Medicine's decision was based primarily on the exact interpretation of the settlement agreements that the AAMC determined was inaccurate, the very interpretation previously championed during litigation by Dartmouth and related entities.

35. The Board entered an order without Dr. Isaacs' input, presence, or defense, based on misapplication of the facts and a misuse and withholding of the evidence. Specifically, the Board withheld the fact that Keck had settled a lawsuit with Dr. Isaacs, with the main consideration flowing to Dr. Isaacs being the sealing of contested disciplinary records.

36. Dr. Isaacs entered into two settlement agreements with Keck, one for dismissal of his action against its Deans, and another, dismissal against Keck as an institution. The Institutional Settlement is available on PACER, but the settlement with the deans was not online at the time.

37. The Institutional Settlement ordered Dr. Isaacs not to disclose his enrollment at Keck to others, and further, ordered Keck to cancel "all Administrative Charges," including Isaacs' expulsion from Keck.

38. Dr. Isaacs had emailed the Institutional Settlement to the Board's counsel, Assistant Attorney General Cahill, months before the hearing. Attorney Cahill failed to provide the agreement to the Board or its investigator.

39. The Board decision specifically denies the existence of any provision of the Keck settlement sealing Isaacs's disciplinary records. That is incorrect, and Attorney Cahill possessed the settlement document that sealed the records but failed to give it to the Board.

40. The Plaintiff's medical license had already lapsed by the mere fact he was no longer employed at Dartmouth. The Board instead continued further and issued a severe reprimand which damaged Dr. Isaacs's career and reputation. The Board further failed to serve the final Order and Plaintiff did not receive the order by mail or email. Plaintiff found out about the Board's decision online, well after the date was up to appeal.

### DR. ISAACS' CONTINUED EFFORTS TO PRACTICE MEDICINE

41. Since the NH Board of Medicine's decision, Dr. Isaacs has been persistent in his efforts to continue to practice medicine.

42. Dr. Isaacs has applied to an enormous number of residency programs.

43. Because of the Board's decision he has not received a single interview or call on his applications.

44. Dr. Isaacs has been ostracized and excluded from the medical community because of the unnecessarily incendiary Board of Medicine order based on falsehoods, and conjecture which was either Court Ordered as Confidential by settlement or sealed by agreement, due to its speciousness.

45. Dr. Isaacs is an extremely capable and skilled individual who has the ability and drive to practice medicine if given the opportunity.

## V.  CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983
*Atty. Jeff Cahill and New Hampshire Board Members Individually*

46. Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

47. Penny Tailor, the other Board members, and Atty. Jeff Cahill have wrongfully deprived Dr. Isaacs of his substantive and procedural due process rights in violation of the 5th and 14th Amendments.  Moreover, their actions and inactions as described herein, worked to defame and discredit Dr. Isaacs in violation of a confidential settlement agreement, as well as deprive him of his God given abilities and Constitutional rights to pursue his chosen vocation.

48. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 USC 1983.

49. The right to practice an occupation is a liberty interest protected by the 14th Amendment of the United States Constitution. Gibson v. Berryhill, 411 US 564 (1973). This, and the right to due process, are clearly established rights to which the Board was well aware.

50. Atty. Cahill, Penny Tailor and the other Board members, under color of the authority vested in them by State law, went above and beyond or outside the scope of their job duties and descriptions by taking the actions and inactions described herein. To wit-

   a. Employing *confidential* out of state and inaccurate settlement documents to Deprive Dr. Isaacs of his livelihood and publicly embarrass him;

   b. Failing to consider the relevant documents provided by Dr. Isaacs in his defense;

   c. Failing to honor the solemnity of a confidential Court Settlement Agreement;

   d. Failing to honor Dr. Isaacs' reasonable request to continue the hearing for medical reasons;

   e. Failing to honor Dr. Isaacs' reasonable request to continue the hearing for inclement weather;

   f. Failure to allow Dr. Isaacs' reasonable request to participate electronically.

51. Any reasonable person, acting under color of State law, within the scope of their administrative capacity, would have granted these reasonable requests; and/or adhered to the confidentiality of a Federal Court Settlement; and/or credited, or at least considered the Plaintiffs arguments and request.

52. The conduct of the Defendants under this Count clearly violated Dr. Isaacs established statutory, common law, contractual, and Constitutional rights. Any reasonable person

would have recognized that Dr. Isaacs was entitled to due process, and in need of reasonable accommodations under the ADA and RSA 354-A.

53. Any reasonable person would recognize that Dr. Isaacs was entitled to the confidentiality for which he bargained, and under which the CA Federal Court Ordered.

54. Anyone would have similarly recognized that Dr. Isaacs was being unjustly deprived of his right to procedural due process by, among other things, denying his reasonable requests for continuance and/or electronic participation.

55. Moreover, it would have been self evident to the Board defendants that they were denying Dr. Isaacs his fundamental Constitutional substantive due process rights and protections by slandering him in this way, and stripping away his ability to continue to learn and practice medicine, his God given gift.

56. Upon information and belief, Jeff Cahill, or the individual Board members, acting alone, or in concert with Dartmouth, or other as yet unknown 3rd parties, obtained and used confidential information in assessing Dr. Isaacs' case and whether or not their decision was ultimately explicitly based on such information, it clouded their judgment, and worked a grave injustice on the plaintiff by depriving him of his right to due process.

57. Penny Tailor signed the Board's decision. Ms. Tailor's and the individuals on the Board's Final Decision and Order regarding Dr. Isaacs, issued on March 11, 2014, misrepresents a settlement agreement found online as the settlement agreement referenced by Dr. Isaacs as the reason for not disclosing his attendance at Keck Medical School on the New Hampshire Application for Residency Training.

58. Dr. Isaacs had presented the correct settlement agreement – the one that sealed the disciplinary records – to Attorney Cahill months before the hearing.  Attorney Cahill

either failed to provide this settlement document to the Board, or Ms. Tailor's and her cohorts on the Board failed to consider it, or both.  This was an abuse of power resulting in a gross miscarriage of justice.  It worked to deny Dr. Isaacs his right to due process as well as his liberty interest in pursuing his chosen vocation.

59. This settlement agreement, approved by the USDC of California, is in effect a Federal Court Order. The operative provision sealing the records, constitute the justification for Dr. Isaacs' not identifying his attendance at Keck in the residency documents.

60. Because Dr. Isaacs did not appear at the Board hearing, and was not permitted to appear by telephone or video conference, he was unable to present the previously provided contradictory evidence to the Board at the hearing.

61. Ms. Tailor' and her cohorts justified their reprimand on the only settlement agreement it had – the wrong one (illegally obtained in contravention of a settlement agreement approved by the Court)  - and branded him a "stalker" on their website.[3]

62. Ms. Tailor's and her cohorts actions have precluded Dr. Isaacs from the practice of medicine.   By depriving Dr. Isaacs of his liberty interest in pursuing his chosen profession, specifically by withholding exonerating evidence, the Board violated the United State Constitution, and 42 U.S.C. § 1983.

63. Dr. Isaacs was not informed that the order had been entered. This caused confusion for Dr. Isaacs through November of 2014.

---

[3] Isaacs and a Keck classmate had a dispute, resulting in Keck issuing a "stay-away" order. Isaacs complied with the order, despite his allegations it was difficult to comply in a tight-knit class of one hundred students. After two months, Isaacs telephoned the other student and apologized, hoping to end the conflict. Keck thereafter convened its faculty and expelled Isaacs for disobeying the stay-away order. Isaacs alleged in the Central California District Court that favoritism played a role; email evidence showed the Keck Dean emailing the student's father at the NIH headquarters; an office where he had issued $20 million in federal grants to the Keck Dean prior to the other student's admission to Keck.

64. Additionally Dr. Isaacs moved to reconsider this order, a motion that was denied in April of 2014.

65. After that motions' denial Dr. Isaacs requested that the board comply with RSA 329:18-a, this motion was denied in November of 2014.

66. As the entry of the order was not disclosed to Dr. Isaacs in the ordinary course, and Dr. Isaacs' final motion regarding that order was denied in November of 2014.

67. Given that the Board of Medicine did not disclose the order to Dr. Isaacs and ordered on his motions regarding their order through November of 2014, it cannot be said that the amendment to add this cause of action was untimely. Willingness to accept and deny an additional order regarding the order would mean that a final order in this case was not made until November of 2014.

68. The individual Board members and Atty. Cahill were acting under the color of State law and while doing so they deprived Dr. Isaacs of his 5th and 14th Amendment rights to substantive due process; procedural due process; and his right to pursue his education, training, and career in medicine as is a graduate of an accredited medical school.

## COUNT II
## VIOLATIONS OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
Dartmouth Trustees and Hitchcock

69. Plaintiff repeats and realleges each and every allegation contained herein as if fully stated within this count.

70. On Sunday April 20, 2014 at 12:52 am Dr. Isaacs sent a written request to President Philip Hanlon which requested an investigation in to the hazing and other violations of Title IX that Dr. Isaacs suffered while he was an intern at Dartmouth.

71. On the Plaintiff's second day of work it was requested that he do a DRE prostate examination on a patient with terminal metastatic cancer.

72. He was required to do a second DRE examination on another patient shortly thereafter.

73. Dr. Isaacs, following the orders of his superior performed these prostate exams.

74. Dr. Isaacs later learned that no medical necessity existed for those exams.

75. Knowing that these examinations were unnecessary, Dr. Isaacs suffered knowing that he had been ordered to take part in the indecent assault of a patient.

76. Dr. Isaacs for the first time suffered from an onset of medical symptoms including heart issues, nightmares, sleep disturbances and an inability to stay awake for extended periods of time.

77. When asked about these assaults in deposition Dr. Khagi described these assaults as "an opportunity to learn twice."

78. Dr. Isaacs requested that Dartmouth investigate this incident. No investigation ever occurred.

79. Title IX provides: "No person... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance." 20 U.S.C. s. 1681(a).

80. The Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX. Cannon v. Univ. of Chi., 441 U.S. 677, 717 (1979).

81. It has also been held that private individuals can obtain monetary damages. Franklin v. Gwinnett County Pub. School., 503 U.S. 60, 76 (1992).

82. The Defendant Dartmouth is a title IX funding recipient.

83. The Plaintiff Jeffrey Isaacs informed Dartmouth that he had been the victim of a sexual assault because Dr. Kahgi had him perform two prostate exams under false pretenses.

84. Dartmouth has failed to investigate the Plaintiffs complaints as indicated by a variety of Dartmouth employees and witnesses.

85. The Supreme Court has set the standard for such abuse by teachers against students: "we hold that a damages remedy will not lie under Title IX unless an official who at the minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond... We think, moreover that the response must amount to deliberate indifference to discrimination." Gebser v. Lago Vista Independent School District, 524 US 274, 290-91 (1998).

86. Here, Dr. Isaacs informed the president of Dartmouth on April 20, 2014 about the sexual abuse he suffered from as an intern. The President of Dartmouth is an official who has authority to address the alleged discrimination and to institute corrective measures.

87. There was no response from any official at Dartmouth, amounting to deliberate indifference to the discrimination.

88. Dr. Isaacs complaint to the president of Dartmouth is understandable given his relationship with the institution previously, the complete failure to remedy this situation occurred in 2014 which is where the statute of limitations on this issue should begin to run.

89. Although this issue was raised in his previous complaint, this more recent failure to investigate or respond at all has damaged Dr. Isaacs severely, he still struggles with

institutions believing his story of abuse, thus preventing him from the practice of medicine.

90. The damage caused to the Plaintiff because of this violation is substantial. Had these investigations occurred he may have been able to complete the internship program.

## COUNT III
## FRAUD
### *NH Board of Medicine*

91. The Plaintiff repeats and realleges each and every allegation contained herein, as if fully stated under this count.

92. "To establish fraud, a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it…In addition, a plaintiff must demonstrate justifiable reliance." Snierson v. Scruton, 145 NH 77 (2000).

93. As discussed throughout this matter the Board of Medicine order offers mistruths and half-truths about Dr. Isaacs.

94. The order relies on only one settlement agreement, and completely ignores a second settlement agreement as such the order misrepresents that there is no settlement agreement "sealing the disciplinary records" from Keck.

95. This misrepresentation has caused Dr. Isaacs continuing injury, he has sent applications for positions in medicine around the country, and not received a single interview.

96. The availability of this document and the extent of the falsehood indicates that the hospitals denying Dr. Isaacs are relying on those falsehoods.

## COUNT IV
### CIVIL CONSPIRACY
*Dartmouth Defendants and NH Board of Medicine*

97. The Plaintiff repeats and realleges each and every allegation contained herein, as if fully stated under this count.

98. Civil Conspiracy is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose not in and of itself unlawful by unlawful means." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987).

99. The Defendants here conspired together as put forth more clearly above to publish a sealed settlement agreement in order to publicly humiliate Dr. Isaacs and destroy his medical career.

100. As is described at length above the Defendants did not use the document with any right to do so, and entered in to evidence, through disallowing the Plaintiff to participate in the process, only those documents and testimony that would support their position and insure that Dr. Isaacs was never able to practice medicine again.

101. Additionally the Board of Medicine as well as the Dartmouth defendants failed to investigate Dr. Isaacs' complaints regarding sexual abuse at the hands of a superior at Dartmouth.

102. Dr. Isaacs specifically requested that this investigation occur, but the Board of Medicine, conspiring with the Dartmouth Defendants refused to investigate at all, indicating complete indifference to Dr. Isaacs claims of abuse.

103.     The Board of Medicine is not intended to be an avenue for revenge or destroying the career of a promising doctor. The acts of the parties leading to this inequitable order were taken to accomplish an unlawful purpose.

**COUNT V**
**ADA Retaliation**
DARTMOUTH

104.     Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

105.     Isaacs applied for residency at DHMC in 2017.

106.     Isaacs was, as discussed, qualified or above-qualified.

107.     Dartmouth has refused to even interview Isaacs, solely because he had brought claims, including ADA, against their program.

108.     Upon information and belief interviews for this position have passed and Dr. Isaacs was not selected for an interview.

109.     Dartmouth's own Friedman has testified under oath that Isaacs' medical knowledge was adequate for DHMC.

110.     Dartmouth's own Finn had testified under oath that she would retract her objection to the Keck sealed disciplinary records, per competent authority at AAMC.

111.     Dartmouth's own Finn had testified under oath that Isaacs alleged performance problems in 2011 did not constitute sufficient cause to end his residency training.

112.     As such, the only explanation for Dartmouth's failure to interview is because they didn't want to interview someone who had filed ADA and/or Title IX claims, and a refusal to acknowledge a federal court ordered settlement agreement.

113.    Dr. Isaacs maintains that such a claim against Dartmouth as a school does not require administrative exhaustion, but if it does the statute of limitations for him to bring this claim to the EEOC has not passed.

## COUNT VI
## REHABILITATION ACT RETALIATION
Dartmouth Defendants

114.    Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

115.    In March of 2013 Dr. Isaacs effectively filed a Rehabilitation Act claim with OCR, though that claim was later dismissed for being untimely.

116.    The dismissal is currently under appeal.

117.    Filing the claim is a protected act.

118.    As discussed previously Dr. Isaacs applied to DHMC for residency in 2013, 2014, 2015, 2016 and 2017.

119.    Despite his qualifications for the position and his recent success in business Dr. Isaacs was not provided so much as an interview for these positions.

120.    By failing to give Dr. Isaacs a fair review, the Defendants are retaliating against him for his previous Rehabilitation Act filing.

## COUNT VII
## REHABILITATION ACT/ ADA
Dartmouth Defendants

121.    Plaintiff repeats and realleges each and every allegation contained herein as if fully stated under this count.

122.    Dartmouth has claimed on numerous occasions, including in the current action, that they have not denied Dr. Isaacs applications for residency because for retaliatory reasons.[4]

123.    Upon information and belief Dartmouth is refusing to consider Dr. Isaacs applications because they believe him to be disabled.

124.    Dartmouth has taken these actions in violation of the Rehabilitation Act and the ADA.

125.    Dartmouth receives federal funding for the programs Dr. Isaacs is applying to, which subjects them to the Rehabilitation Act of 1973.

126.    Dartmouth is discriminating against Dr. Isaacs in an educational application and therefore the EEOC lacks jurisdiction and therefore no exhaustion of administrative remedies is required.

127.    Dartmouth has consented that they are subject to Department of Education oversite.

128.    Despite persistent applications Dartmouth has refused to interview Dr. Isaacs to determine whether his medical condition has changed.

129.    Dartmouth's perception of Dr. Isaacs' disability and their failure to consider his application because of that perception is in violation of the ADA and Rehabilitation Act of 1973.

130.    By determining without right, that Dr. Isaacs is disabled and thus unable to practice medicine Dartmouth has continued to discriminate against him due to a perceived disability.

---

[4] Dr. Finn has even conceded that the USC issue was not the reason for Dr. Isaacs' termination.

131.    Dartmouth's counsel in a previously unopposed summary judgment motion alleged that Dr. Isaacs suffers from a significant impairing disability.

132.    Dartmouth's own counsel in this action has indicated that Dr. Isaacs is unlikely to be able to practice medicine.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff further PRAYS that this Honorable Court:

A.    Enter judgment in favor of Jeffrey Isaacs on all Counts and award damages, punitive damages, costs, interest, and reasonable attorneys' fees; and

B.    Grant prospective Injunctive, equitable, or declaratory relief regarding the Board of Medicine directing them to remove and retract the March 11, 2014 Decision against Dr. Isaacs; and

C.    Order the retraction of Dr. Isaacs' termination from Hitchcock.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**


November 14, 2017

Respectfully Submitted,
Dr. Jeffrey Isaacs,


/s/ Jeffrey Isaacs
Dr. Jeffrey Isaacs
Pro Se


Drafted with the aid of a New Hampshire Attorney