**EXHIBIT B**

1  DR JEFFREY DAVID ISAACS
2  3553 W Chester Pike Unit 177
   Newtown Square, PA 19073
3  Telephone: (610) 202-1460
   jeffrey.isaacs.wg03@wharton.upenn.edu
4

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR JEFFREY DAVID ISAACS

    Plaintiff, *pro se*,                Case No. CV-13-5708-PBT

    -V-
                                        **OBJECTION TO MTD**
TRUSTEES OF DARTMOUTH COLLEGE;          **NEW HAMPSHIRE BOARD**
ARIZONA BOARD OF REGENTS;               **OF MEDICINE**
DR MARC BERTRAND;
DR JIM YONG KIM;
EDWARD KAPLAN;
NEW HAMPSHIRE BOARD OF MEDICINE;
DR AMY WAER;
MARY HITCHCOCK MEMORIAL HOSPITAL;
UNIV.ARIZONA HEALTH SCIENCES CENTER;
and JOHN DOE #1 & #2,
         Defendants.

JDI v. Dartmouth et al Amended Complaint                                    1
Case No. CV-13- 5708-PBT

# I. OBJECTION TO MOTION TO DISMISS AND REQUEST FOR APPOINTMENT OF ATTORNEY

Nine law firms, including now the New Hampshire Department of Justice, have spent two years trying to cover up what was, for lack of a better term, the total career assassination of the Plaintiff.

Plaintiff is not realistically able to thoroughly address what are now thousands of pages of frivolous legal arguments and spoliated evidence spanning multiple federal and state venues; he chose Pennsylvania Eastern District as the unifying venue for most of his claims.

Plaintiff made diligent efforts to obtain legal counsel. For about fourteen months, Plaintiff had legal counsel (a small law firm comprised of three attorneys) for the related case in NHD. It became too expensive for the firm to handle the case, and the attorneys and plaintiff mutually separated.

Plaintiff has $400,000 in student loan debt and is unable to afford the legal representation that could adequately litigate against the Defendants' nine law firms/organizations.

Pursuant to 42 USC 2000(e)5, Plaintiff hereby requests this Honorable Court appoint counsel to Plaintiff, who is deemed disabled by his physicians at the University of Pennsylvania. This case is primarily related to ADA and Rehabilitation Act retaliation and therefore Your Honor has the authority to consider appointment of counsel.

In the alternative, and/or until counsel is appointed, Plaintiff hereby attempts to defend the NH Board of Medicine's motion:

1  -First and foremost, Plaintiff sued the Board by invoking jurisdiction against its
2  "individual constituent members." (See *Amended Complaint* Venue/Jurisdiction Section)
3  Opposing Counsel's argument that Plaintiff cannot sue a state institution is therefore
4  inaccurate; it is well known that Plaintiff may seek an injunction in federal court against
5  state officers who violate federal rights (Plaintiff does not seek monetary damages against
6  the NH Board, as jurisdiction for an injunction apparently differs from other damages
7  against state officials). Plaintiff has captioned the "New Hampshire Board of Medicine"
8  but technically, each member of the Board (5 in total who voted against Plaintiff) could be
9  listed. If the Board prefers, Plaintiff will amend his complaint to name the individual
10 constituents.

12 -The Board denied Plaintiff's request to stay their scheduled February 5th proceeding
13 pending this litigation. Furthermore, February 5th coincided with one of this winter's six
14 major snowstorms. The Board refused to reschedule Plaintiff's hearing (Exhibit A), and
15 ordered him to drive from Philadelphia to New Hampshire in the snow and ice. Plaintiff
16 was unable to drive safely to NH, but the Board proceeded *in absentia* with the hearing
17 and permanently revoked Plaintiff's medical license, effectively ending his medical career
18 and causing his further medical deterioration over the past two months. *There is no*
19 *question the Board has established minimal contacts with Pennsylvania, ordering Plaintiff*
20 *(who is disabled) to drive to their Concord NH hearing, concerning a Board application*
21 *Plaintiff completed in Pennsylvania in 2011.* Moreover, the Board's decision by five
22 individuals in New Hampshire now effectively precludes Plaintiff from participating in
23 any medical training program in the United States. In 2014, a Board of Medicine decision
24 has national, if not global, ramifications; in the interest of equity and fairness, this Court
25 may assume jurisdiction over the Board.

27 -This Court also has jurisdiction because this entire matter pertains to retaliation against
28 Plaintiff's federal lawsuit in 2006 and Plaintiff's federal lawsuit against Dartmouth in

2012. In other words, Anti-Retaliation provisions of the ADA and Rehabilitation act supercede New Hampshire's position that this matter deserves comity/deferral to the NH legal system. Should Your Honor prefer more specific citation of ADA Anti-Retaliation provisions, Plaintiff requests leave to amend. As currently stated, Plaintiff believes the Amended Complaint is clear that the Defendants conspired against Plaintiff in retaliation for his prior ADA litigation (In the case of the NH Board, retaliation was against Plaintiff's 2012 ADA litigation in the NHD; the other defendants retaliated against both 2006 and 2012 litigation).

-The Board Decision (Exhibit A) demonstrates the Board's willful attempts to injure the Plaintiff and deny him any semblance of due process. First, the Board declares (Page 6 Exhibit A) that there was never any "sealing [of] the disciplinary records." Plaintiff has already filed in this Court's docket (and emailed the NH Board on multiple occasions) several copies of the federal settlement agreement sealing his records from USC. The NH Board chooses to ignore the truth, with the comfort that they are shielded and immune under NH laws from litigation. A private institution (USC/Keck) made the unusual (indeed, Plaintiff can find no case law of similar occurrences) decision to waive its rights under FERPA and seal Plaintiff's disciplinary records. Such was the only consideration Plaintiff received for the settlement, and by removing the records from FERPA jurisdiction, they no longer qualify as educational records under federal law. In short, the NH Board Decision is false; Plaintiff's records were sealed, despite their opinion to the contrary.

-The New Hampshire Board of Medicine was essentially disbanded for corruption and retaliation concerns in 2006 and underwent full audit in 2008 (http://www.gencourt.state.nh.us/LBA/AuditReports/PerformanceReports/BOM2008_full.pdf). The 2006 incident was not unlike what Plaintiff alleges today – the Board was unwilling to investigate a doctor's claims against a group favored by/known to the Board,

so instead, the Board scapegoated the complaining doctor. The Board is (according to the aforementioned audit) rife with favoritism, nepotism, and total lack of reliable due process. The Board, at time of audit, had three full-time employees, and instilled little confidence in the auditors of its integrity. As Plaintiff alleges, the Board has acted against him with "defensive prosecution" to defend Dartmouth and to discredit the Plaintiff. On numerous occasions, the Board (or the NH DOJ directly) would telephone Plaintiff and offer him "$1000 plea bargains" if he would essentially retract his federal claims against Dartmouth. Under FRCP 12, Plaintiff's allegations must be permitted to proceed to discovery.

-Plaintiff has already addressed (Docket Number 39) the NH Board's arguments pertaining to the Eleventh Amendment, the Anti-Injunction Act of 1793, the Burford Abstention, and Personal Jurisdiction applicability. The Plaintiff pleas to Your Honor to see past the mountains of arguments being lobbied by nine opposing counsel organizations. The NH Board of Medicine is simply not as qualified (nor as unbiased) as the AAMC - the national medical education regulatory body in Washington DC that already exonerated the Plaintiff regarding nondisclosure of the sealed USC records. In sum, the Defendants and their nine law firms are working to obscure the Plaintiff's claims, so as to minimize their liability exposure for the ruthless attack they carried out on Plaintiff's livelihood.

Respectfully submitted, this 18th day of April, 2014.

/s/ Dr Jeffrey David Isaacs

Plaintiff (pro se)

3553 W Chester Pike Unit 177
Newtown Square, PA 19073

Telephone: (610) 202-1460
jeffrey.isaacs.wg03@wharton.upenn.edu

# CERTIFICICATE OF SERVICE

Plaintiff served all parties this Objection document via ECF.

DATED:    4/18/14             /s/ Jeffrey David Isaacs
                              JEFFREY DAVID ISAACS
                              Plaintiff, *pro se*

Before the
New Hampshire Board of Medicine
Concord, New Hampshire

In the Matter of:                                                    Docket #: 13-07
   Jeffrey D. Isaacs, M.D.
   License No.: RT-2198
   (Adjudicatory/Disciplinary Proceeding)

### FINAL DECISION AND ORDER

Before the New Hampshire Board of Medicine ("Board") is an adjudicatory/disciplinary proceeding in the matter of Jeffrey D. Isaacs, M.D. ("Respondent" or "Dr. Isaacs").

### Background Information
### (Procedural History and Motions)

The Board of Medicine ("Board") granted Dr. Isaacs a Resident Training license pursuant to N.H. Admin. Rules Med 305.04, in May 2011. The license was granted where the application revealed Dr. Isaacs was pursuing post graduate training at the Dartmouth Hitchcock Medical Center ("DHMC") in the psychiatry residency program ("Program").

In March 2012 the Board received information from DHMC indicating that Dr. Isaacs had been terminated from the Program where Respondent had allegedly omitted material facts from his Application for Training License for Residents and Graduate Fellows and the supplement filed along with the application. As a result of this information, the Board commenced an investigation to determine whether Respondent committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18.

The investigation revealed the following:
Between August 2005 and June 2006 Respondent attended the Keck School of Medicine, a medical education institution, at the University of Southern California ("USC"). In February

2006 the Keck School suspended Respondent due to behavior-related issues, and ultimately the School expelled him. In June 2010 Respondent received a medical degree from the American University of the Caribbean. On May 18, 2011, Respondent filed his application for training license with the Board having been enrolled in the Program at DHMC.

The application required Respondent to disclose medical schools attended. Respondent listed the American University of the Caribbean but failed to disclose attendance at the Keck School. Additionally, Respondent answered "No" to a question on the supplement to the application which asked whether he had "ever been reprimanded, sanctioned, restricted or disciplined in any activities involving medical education or practice."

Given the investigatory revelations the Board found reasonable basis for commencing an adjudicatory/disciplinary proceeding against Respondent. On October 7, 2013 the Board issued a Notice of Hearing ("Notice") commencing a proceeding pursuant to RSA 329:18-a and N.H. Admin. R. Med 206 for February 5, 2014 at 1:00 p.m. The purpose of the hearing was to determine whether in May 2011 Respondent engaged in professional misconduct by submitting false information to the Board and for failing to fully disclose all previous medical schools attended. The Notice further indicated that Respondent could be subjected to disciplinary sanctions pursuant to RSA 329:17, VII. The Notice also informed Respondent that he may be represented by counsel at the hearing, at his own expense; and that failure to appear may result in the hearing being held *in absentia* with disciplinary sanctions imposed without further notice or opportunity to be heard.

On January 29, 2014, at 3:14 p.m., Respondent sent the Board via e-mail, a so-called "Motion to Stay Hearing or Appear by Teleconference." The e-mail indicated Respondent was moving to stay the proceeding because he had pending "federal litigation in the Pennsylvania

2

District Court." The e-mail further indicated that Respondent entered into a settlement agreement with USC which he alleges sealed his disciplinary records. He further claimed that "the AAMC and NHES …both investigated this issue already and agreed with [him]." He additionally alleged that the Board failed to investigate his allegations against DHMC, including that he was "defrauded, instructed to perform unnecessary [medical] exams and abandoned as a patient."

Respondent's January 29, 2014 e-mail also noted that he was "taking action against the Board for what appears to be punitive actions against [him]" and he requested that the Board defer "to the legal authority of the federal judiciary system and postpone [the] hearing." Respondent also wrote that he was not able to drive to New Hampshire for medical reasons, that he conducted three depositions via Skype and that if the stay was denied he requested to appear by telephone or video conference.

On February 3, 2014 hearing counsel objected to the request. The objection indicated that Respondent failed to comply with Board rules, in that any requests to continue or postpone are required to be filed at least ten days prior to the scheduled hearing. Additionally, hearing counsel noted further procedural issues with the request; specifically that it did not comply with the provisions of N.H. Admin. R. Med 204, et. seq.

The presiding officer denied the request to Stay the proceeding, finding first that Respondent failed to follow Board procedural regulation and for the reasons articulated in hearing counsel's objection, the so-called "motion" should be denied. The Board found unpersuasive the notion that the case should be stayed because of a pending federal lawsuit in Pennsylvania. Moreover, Respondent provided no information relative to his "illness." Respondent was informed of the denial on February 3, 2014 at approximately 4:30 p.m. He

3

subsequently forwarded another e-mail on February 5, 2014, at approximately 6:00 a.m. indicating that a winter storm and his current automobile situation would preclude him from attending the hearing.

The hearing went forward as scheduled on February 5, 2014, commencing just after 1:00 p.m. Board members present included:

Mark Sullivan, P.A.
John H. Wheeler, D.O.
Robert M. Vidaver, M.D.
Louis E. Rosenthall, M.D.
Gail Barba, Public Member
Edmund J. Waters, Jr., Public Member

Gail Barba, Public Member, served as presiding officer. Respondent did not appear, and Attorney Jeff Cahill appeared as hearing counsel.

**Discussion and Rulings**

It is first necessary to discuss Respondent's request for a stay and his decision not to attend the hearing. Regardless of the procedural irregularities concerning Respondent's request to stay the proceeding sent via e-mail on January 29, 2014 the Board finds substantively, the rational for the request to be both lacking in factual detail and unpersuasive. The issue before the Board is a narrow one. It revolves around whether Respondent violated RSA 329:17, VI (a) by failing to disclose, in 2011 on the residency training application and supplement, his attendance and dismissal from the Keck School of Medicine. The fact that Respondent named the Board in a federal lawsuit that is currently pending is of no moment in the determination of that issue. Moreover, pursuant to RSA 329:17, IX, no civil action shall be maintained against the board with regard to any activity or action taken in the performance of its statutory duties. *See* RSA 329:17, IX. The Board thus determined it was appropriate to proceed.

4

The Board finds that timely notice had been provided to the Respondent with regard to the hearing. Here, where Respondent had over four months to prepare and attend or timely ask for a continuance, his eleventh hour request to stay the proceeding was without merit. Had there been some legitimate medical reason that had been articulated by the Respondent, the Board would have given that issue consideration. Respondent, however, simply indicated that he had medical reasons that precluded him from driving to New Hampshire, which he then did not reassert on February 5, 2014 when he provided notice that he would not attend the hearing, citing instead to weather conditions and automobile issues. Petitioner provided no reasonable grounds for continuing the hearing, nor did he ask for reconsideration, indicating that weather - given the forecast - would prevent him from attending.

The Board opened the hearing just after 1:00 p.m. on February 5, 2014. It first entered Exhibits A and B, Respondents e-mails dated January 29 and February 5, as exhibits for Respondent. It also accepted Exhibits 1-3 from hearing counsel. Exhibit 1 is Respondent's 2011 NH Application for Residency Training License; Exhibit 2 is an excerpt of a March 1, 2007 court order in *Isaacs v. USC*; and Exhibit 3, the April 2008 Confidential Settlement in *Isaacs v. USC*. These exhibits along with notice of witnesses to be presented were provided to Respondent on January 31, 2014.

Hearing counsel also presented the testimony of Dori Lefevbre, Board Investigator. Ms. Lefevbre testified that she was able to obtain the documents that were marked as exhibits 2 and 3 as public records available on-line from the federal court system. She explained that the documents reflect that Respondent was dismissed from the Keck School. In fact, Exhibit 2, the California Federal District Court, Central District's Order on a Motion to Dismiss reveals that Respondent alleged he suffered from PTSD and an organic brain injury and in 2005 began his

studies at Keck School of Medicine. The Order further indicates that Respondent had numerous social problems with his classmates and engaged in offensive messaging to a female classmate that Respondent attributes to his Bipolar II diagnosis. The Order indicated Respondent alleged that several defendants attempted to harm his standing at USC, that Respondent attended a disciplinary hearing before the Student Performance Committee – where he did not contest stalking allegations against him; and that he was suspended and ultimately dismissed from the school. The Order at Exhibit 2 also indicated that Plaintiff requested that USC postpone the dismissal hearing scheduled for June 7, 2006, but that the hearing went ahead as scheduled.

Ms. Lefevbre also testified that she obtained Exhibit 3, as a public court record from the federal court's on-line system, which purportedly is the confidential settlement agreement between Respondent and USC. The document at page 1, indicates that Respondent understood and agreed "that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future."

In Exhibit A, Respondent alleges that the settlement agreement with USC "clearly sealed [his] disciplinary records, and a subsequent agreement annulled all contracts and acquitted all controversies with USC." It appears this is the reason Respondent contends he was not required to disclose the Keck School information on his training license application. A review, however, of Exhibit 3 indicates that it is only information related to the lawsuit, and the negotiation of the Settlement Agreement's terms and conditions that is confidential, along with the monetary settlement amount. There is no provision in Exhibit 3 "sealing the disciplinary records."

Exhibit 1, page 4 asks whether the applicant has been "reprimanded, sanctioned, restricted or disciplined in any activities involving medical education…" and Respondent certified, under penalty of perjury that he had not, where he marked "No" to the question.

6

Whether Respondent entered into a settlement agreement does not negate the fact that he attended a medical educational institution which ultimately dismissed him and will never allow him to return. The fact remains that there was discipline and expulsion from a medical educational institution notwithstanding the representation that the records have been sealed or a subsequent agreement "annulled all contracts." That Respondent brought a lawsuit against USC, which the parties settled and where USC specifically denied liability for the claims against it does not immunize Respondent from answering the application question truthfully.

The question on the application did not require Respondent to divulge information regarding the Confidential Settlement Agreement. The answer in the license application was, however, required to be correct. Respondent could have chosen to say, "Yes" which would have likely given him an opportunity to explain; or he could have indicated that he contends he was wrongfully dismissed.

RSA 329:17, IV (a) reads that disciplinary action may be taken against a licensee where the Board finds the person "has knowingly provided false information during any application for professional licensure... whether by making any affirmative statement which was false at the time it was made or by failing to disclose any fact material to the application." The Board finds that Respondent was required to truthfully divulge an answer to question 3 on the supplement to the application. The Board also finds that Respondent was required to list all medical schools attended. The application form and the supplement do not distinguish and inform the applicant that an answer is not required if some record was sealed or records were nullified by operation of law.

Here, Respondent was aware that he attended the Keck School, he was further aware that he was "sanctioned" or "restricted" or "disciplined" in "activities involving medical education."

As such, Respondent deliberately, consciously, and with purpose of design answered question 3 falsely. Likewise, it is a material fact that Respondent attended a medical school other than American University of the Caribbean. Inaccuracies in the information provided which are false, constitute a valid basis for discipline and license denial.

In this case, we need not take action on the license itself since pursuant to N.H. Admin R. Med 305.04(b) training licenses are only valid for the practice of medicine when *inter alia* the licensee is practicing under the auspices of the training program. *See* N.H. Admin R. Med 305.04 (b) (1). Here, there was evidence that the DHMC terminated Respondent from their Program. Accordingly, the license is revoked as of the date of termination; as such it was canceled by operation of law.

We, however, believe a reprimand is appropriate in this situation. Respondent treated his time at the Keck School as if it never occurred. He provided no documents to suggest or provided no credible evidence regarding the dissolution of his record of attendance at the Keck School. Even where Respondent chose not to attend the hearing, he still could have provided documentary support for his position in advance of the hearing. N.H. Admin. R. Med 206.09 (c). For example, he could have submitted his exhibits supporting the statements found in Exhibit A, but chose instead an alternate course of action. Exhibit 3 certainly does not suggest the nullity of the sanction or discipline, where Exhibit 2 clearly evinces Respondent was dismissed from the medical school on June 13, 2006.[1] We find this Agreement does not insulate Respondent from having to affirmatively disclose his attendance. As such, where we also find the evidence submitted supports the conclusion that Respondent knowingly made a false statement and further

---

[1] Exhibit 2 does indicate that on June 22, 2006 Respondent appealed the decision asking for a reversal. Exhibit 3, at paragraph 19 references the potentiality of effecting the dismissal of all outstanding administrative charges. There, however, is no credible evidence before this Board which suggests Respondent's termination from the school was dismissed. Further we are aware of no New Hampshire requirement that would equate a civil settlement to the annulment of a criminal record pursuant to RSA 651:5, X.

8

failed to disclose a material fact, the license of Dr. Isaacs is REVOKED and he is REPRIMANDED.

\*BY ORDER OF THE BOARD

Dated: 3/11/2014

*Penny Taylor*

Penny Taylor, Administrator
Authorized Representative of the
New Hampshire Board of Medicine

\*Michael Barr, M.D., Board Member, recused.