Dr. Jeffrey Isaacs

    v.                                      Civil No. 17-cv-040-LM
                                          Opinion No. 2018 DNH 016
Trustees of Dartmouth
College, NH Board of
Medicine, and Dartmouth-
Hitchcock Medical Center


**O R D E R**


Dr. Jeffrey Isaacs was a resident in psychiatry at
Dartmouth-Hitchcock Medical Center ("DHMC") from June of 2011
until March of 2012, when DHMC dismissed him from its residency
program.  Dr. Isaacs challenged his dismissal in a previous
action in this court, which resulted in summary judgment in
favor of all defendants.  See Isaacs v. Dartmouth-Hitchcock Med.
Ctr., No. 12-CV-040-LM, 2014 WL 1572559 (D.N.H. Apr. 18, 2014).

In March of 2014, after conducting a hearing, the New
Hampshire Board of Medicine ("Board") reprimanded Dr. Isaacs for
omissions and misrepresentations in the application for a
training license he had submitted to it.  According to
plaintiff's First Amended Complaint ("FAC"), which is the
operative complaint in this case, his claims "arise out of the
[Board's] February 5, 2014 Hearing, and their March 2014 Final
Decision and Order."  Doc. no. 40 at ¶ 6.

In his FAC, plaintiff asserted nine claims.  In previous orders, the court: (1) dismissed with prejudice all of the claims plaintiff asserted in Counts II, III, IV, V, VI, VII, and IX of the FAC, and all but one of the claims he asserted in Count VIII; (2) allowed plaintiff to move for leave to amend his FAC to reassert the one potentially viable claim in Count VIII, a claim for retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213, asserted against DHMC and the Trustees of Dartmouth College ("Trustees"), arising from the disposition of his 2016 application for a residency; and (3) directed plaintiff to show cause why the constitutional claims he asserted against the Board and Attorney Jeff Cahill in Count I, by means of 42 U.S.C. § 1983, should not be dismissed as time barred.

Currently before the court are: (1) plaintiff's response to the show cause order, to which the Board has replied; and (2) plaintiff's motion for leave to amend his FAC, to which the Trustees, the Board, and DHMC all object.[1]  In the seven count proposed Second Amended Complaint ("SAC") that plaintiff has attached to his motion for leave to amend, he asserts what he purports to be a timely § 1983 claim against the Board and

---

[1] In document no. 61, plaintiff moved to strike the Trustees' objection to his motion for leave to amend.  The court denied that motion, in an endorsed order dated January 3, 2018, but will construe it as a reply to the Trustees' objection.

Attorney Jeff Cahill (Count I) and an ADA retaliation claim
against the Dartmouth defendants (i.e., the Trustees and DHMC)
based upon the decision not to give him an interview when he
applied for a residency in 2017 (Count V).[2] He also asserts five
new claims: (1) a claim under Title IX of the Education
Amendments of 1972, against the Dartmouth defendants (Count II
of the proposed SAC); (2) a state law claim for fraud against
the Board (Count III of the SAC); (3) a state law claim for
civil conspiracy against the Dartmouth defendants and the Board
(Count IV of the SAC); (4) a claim for retaliation, in violation
of the Rehabilitation Act, 29 U.S.C. § 701 et seq., against the
Dartmouth defendants (Count VI of the SAC); and (5) claims for
disability discrimination under both the Rehabilitation Act and
the ADA, against the Dartmouth defendants (Count VII of the
SAC).

## I. Section 1983 Claims (Count I)

A. Background

Unless otherwise indicated, the facts recited below are
drawn from plaintiff's FAC or previous orders in this case.

Shortly after DHMC dismissed Dr. Isaacs from its residency
program, it notified the Board that it had done so, and it also

---

[2] While enumerated as Count V in his proposed SAC,
plaintiff's ADA retaliation claim is enumerated as Count VIII in
his FAC.

informed the Board that it believed that Dr. Isaacs had omitted
material facts from the license application he had submitted to
the Board.  Those omissions concerned plaintiff's attendance at
the University of Southern California ("USC") medical school.
In October of 2013, the Board notified Dr. Isaacs that it would
hold a hearing on February 5, 2014, to determine whether he had
committed professional misconduct by omitting information from,
and making misrepresentations in, his application for a training
license.  On January 29, 2014, Dr. Isaacs asked the Board to
stay his hearing, pending the outcome of a suit he had filed
against it in the Eastern District of Pennsylvania, where he was
then residing.  He also asked to appear at his hearing remotely,
because he was unable to drive to New Hampshire due to an
unidentified medical condition.

The Board denied both of Dr. Isaacs's requests.  In denying
his request for a stay, the Board reasoned that Dr. Isaacs's
pending action in the Eastern District of Pennsylvania had no
bearing on the matter before it and further noted that under New
Hampshire law, it was immune from suit.  See doc. no. 7-1 at 5
(citing N.H. Rev. Stat. Ann. ("RSA") § 329:17, IX).  On the
morning of the day of his hearing, Dr. Isaacs notified the Board
that he would be unable to attend because of inclement weather
that precluded him from driving from Pennsylvania to New

Hampshire that day.  The hearing went on without him.  Attorney
Jeff Cahill served as the Board's hearing counsel.

After Dr. Isaacs's hearing, the Board issued a Final
Decision and Order ("Order") which was signed by the Board's
Administrator, Penny Taylor, and dated March 11, 2014.  In its
Order, the Board pointed out that Dr. Isaacs's training license
had been cancelled by operation of law when he was dismissed
from the DHMC residency program.  But, the Board went on to
reprimand Dr. Isaacs for omissions and misrepresentations in his
application for that license.

With regard to how he learned of the Board's Order,
plaintiff alleges: "The Board . . . failed to serve the final
Order and Plaintiff did not receive the order by mail or email.
Plaintiff found out about the Board's decision online, well
after the date was up to appeal."  Doc. no. 40 at ¶ 42.
However, plaintiff does not allege either the date on which the
Board posted its Order online or the date on which he first saw
it.  For its part, the Board has produced: (1) a declaration
from Taylor stating that she mailed Dr. Isaacs a copy of the
Board's Order on March 11, 2014, see doc. no. 66-1 at ¶ 2; and
(2) a copy of a transmittal letter addressed to Dr. Isaacs,
which was dated March 11, 2014, and which purported to enclose
the Order.  In any event, plaintiff now "acknowledges" the
Board's production of an e-mail that he sent to Attorney Cahill

and Taylor on March 26, 2014, which referred to the Board's decision, thus demonstrating that he knew of the decision no later than that date. See doc. no. 62 at ¶ 1; doc. no. 52 at ¶ 6; doc. no. 52-1.[3] Moreover, plaintiff has produced a copy of an e-mail he sent to Lynn Salvo on March 16, 2014, in which he stated that he had read the Board's decision, online, on March 15. See doc. no. 68-3.[4]

In October of 2014, plaintiff filed a motion with the Board that stated, in full: "Hereby Dr Jeffrey Isaacs motions to NH Board to cease the publication of disciplinary action, pending appeal of NH RSA 329:18-a noncompliance by the Board." Doc. no. 49 at ¶ 7. RSA 329:18-a outlines the procedures the Board must

---

[3] In his March 26 e-mail, Dr. Isaacs stated: "Please take notice that I will be appealing the February decision by the board. Please also take this email as a procedural request for reconsideration regarding the adverse weather conditions that prevented me from attending the hearing . . . ." Doc. no. 52-1. While plaintiff uses the term "reconsideration," his e-mail is better characterized as a request for a rehearing. See RSA 329:17, VIII (providing that appeals of Board decisions to the NHSC are governed by RSA 541); RSA 541:3 (establishing that application for a rehearing is the first step in the appeal process).

[4] Regarding plaintiff's allegation that he did not find out about the Board's decision until "well after the date was up to appeal," doc. no. 40 at ¶ 42, the court notes that: (1) plaintiff has produced an e-mail he wrote on March 16, 2014, in which he stated that he had read the Board's decision; and (2) the statutes governing appeals from decisions made by the Board gave him until April 11, 2014, to begin the appeal process by applying to the Board for a rehearing, see RSA 329:17, VIII; RSA 541:3.

follow when conducting disciplinary hearings, and it appears that in his October 2014 motion, Dr. Isaacs was suggesting that the Board had violated RSA 329:18-a, IV, which provides that the Board's "decisions shall not be [made] public until they are served upon the parties."  The Board's violation, according to plaintiff, was publishing its Order online before serving him with a copy of it.  The Board denied Dr. Isaacs's motion in November of 2014, and he appealed that decision to the U.S. Supreme Court, which denied certiorari on May 21, 2015.

Dr. Isaacs filed his original complaint in this case on February 3, 2017.  In July 2017, he filed his FAC, in which he first asserted claims, by means of § 1983, that Cahill, Taylor, and the individual members of the Board had violated his rights to procedural and substantive due process by:

 a. Employing <u>confidential</u> out of state and inaccurate settlement documents to [d]eprive [him] of his livelihood and publicly embarrass him;

 b. Failing to consider the relevant documents provided by [him] in his defense;

 c. Failing to honor the solemnity of a confidential Court Settlement Agreement;

 d. Failing to honor [his] reasonable request to continue the hearing for medical reasons;

 e. Failing to honor [his] reasonable request to continue the hearing for inclement weather; [and]

> f.  Fail[ing] to allow [his] reasonable request to
>     participate electronically.

FAC ¶ 52.  The injury plaintiff claims is not the loss of his
training license, which had been cancelled by operation of law
before his hearing.  Instead, the injury he claims is damage to
his reputation, and to his ability to practice medicine,
resulting from the publication of the Board's Order.  See doc.
no. 40 at ¶¶ 42, 45, 46, 49, 66.

Finally, while the § 1983 claims that plaintiff asserts in
his SAC are identical to those in his FAC, he adds these new
factual allegations to his SAC: "Dr. Isaacs moved to reconsider
[the Board's March 11] order, a motion that was denied in April
of 2014."  Doc. no. 51-1 at ¶ 64.

B. Discussion

In this section, the court discusses both the § 1983 claims
in Count I of the FAC, as well as the proposed amendment to
those claims in Count I of the SAC.  For the reasons explained
below, Count I of the FAC is dismissed as time barred.  With
respect to Count I of the SAC, and for the reasons explained
below, the court orders further briefing.

The court begins its discussion with Count 1 of the FAC,
and then turns to the same count in the SAC.

<u>1. Show Cause Briefing (Count I of FAC)</u>

Plaintiff first asserted his § 1983 claims against Cahill,
Taylor, and the individual members of the Board in his FAC,
which he filed on May 1, 2017.  In its show cause order, the
court explained that on the record and arguments before it,
plaintiff was not entitled to the benefit of the relation back
doctrine, which, had it applied, would have established February
3, 2017, as the filing date for his § 1983 claims.  Plaintiff
does not argue the point in his show cause memorandum.  Thus,
the question before the court is whether May 1, 2017, falls
within or outside the limitations period prescribed by New
Hampshire law for personal injury actions.  <u>See</u> <u>Martínez-Rivera</u>
<u>v. Puerto Rico</u>, <u>812 F.3d 69</u>, <u>74</u> <u>(1st Cir. 2016)</u> (explaining that
"[b]ecause section 1983 does not have its own statute of
limitations . . . courts use the personal-injury limitations
period adopted by the state where the injury supposedly
occurred") (citations removed).

In New Hampshire, the statute that establishes the
limitations period for personal-injury actions provides that:

> [A]ll personal actions, except actions for slander or
> libel, may be brought only within 3 years of the act
> or omission complained of, except that when the injury
> and its causal relationship to the act or omission
> were not discovered and could not reasonably have been
> discovered at the time of the act or omission, the
> action shall be commenced within 3 years of the time
> the plaintiff discovers, or in the exercise of
> reasonable diligence should have discovered, the

> injury and its causal relationship to the act or
> omission complained of.

RSA 508:4, I.  While federal courts adjudicating § 1983 claims "use the personal-injury limitations period adopted by the state where the injury supposedly occurred," Martínez-Rivera, 812 F.3d at 74, they "use federal law . . . to figure out when the limitation clock starts ticking," id.  The federal "rule is that the ticking starts when [the plaintiff] knew or had reason to know of the injury on which [his] claim rests."  Id.; see also Asociación de Suscripción Conjunta del Segura de Responsabilidad Obligatorio v. Jaurbe-Jiminez, 659 F.3d 42, 50 (1st Cir. 2011) ("Section 1983 claims accrue when the plaintiff knows, or has reason to know of the injury on which the action is based . . . ." (internal quotation marks removed)).  And, "just as [the court] borrow[s] the state's limitations period in section—1983 cases, so too [does it] borrow the state's tolling rulings—unless of course they are hostile to federal interests." Martínez-Rivera, 812 F.3d at 77-75 (citing Rodríguez v. Mun. of San Juan, 659 F.3d 168, 173 (1st Cir. 2011); López-González v. Mun. of Comerío, 404 F.3d 548, 552 (1st Cir. 2005)).

Finally, as a general matter, "the statute of limitations is an affirmative defense with the defendant bearing the burden of establishing that a claim against it is time-barred." Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d

213, 216 (1st Cir. 2016) (citing Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez, 659 F.3d 42, 50 n.10 (1st Cir. 2011)).  The defendant's "burden . . . is met by a showing that the action was not brought within 3 years of the act or omission complained of." Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010) (internal quotation marks removed).  With the foregoing principles in mind, the court turns to plaintiff's show cause memorandum.

In his memorandum, plaintiff posits two possible starting dates for the running of the limitations period on his § 1983 claims: (1) the date in November of 2014 on which the Board denied his motion to cease the publication of its March 11 Order; and (2) May 21, 2015, the date on which the U.S. Supreme Court denied certiorari on his appeal from the Board's November 2014 decision.  In his reply to the Board's response to his show cause memorandum, plaintiff appears to change course, focusing not on when the limitations period began to run but rather, suggesting that the running of the limitations period was tolled until the date on which the Board denied his motion in November of 2014.  In the discussion that follows, the court begins by establishing when the limitations period began to run and then turns to the question of tolling.

According to the Board, plaintiff's § 1983 claims accrued on March 11, 2014, the date on which Penny Taylor signed the

Board's Order.  But according to plaintiff, his injury resulted
not from the Board's decision itself, but from the publication
of the Board's Order online.  The Board has not indicated when
the Order was published, much less that Dr. Isaacs knew of its
publication on the day it was signed.  Thus the limitations
period did not begin to run on March 11.  However, plaintiff has
produced evidence that he knew of the publication of the Board's
Order by March 15, 2014.[5]  Therefore, any cause of action that
plaintiff might have against the Board arising from the manner
in which it conducted his hearing and drafted its Order accrued
on that date.

Plaintiff did not file his § 1983 claims against Cahill,
Taylor, and the individual members of the Board until May 1,
2017.  That is more than three years after any such claims would
have accrued.  Accordingly, the Board has carried its burden of
proving that, to the extent that plaintiff had any cognizable §

_____

[5] Plaintiff does say that "[t]he confusion resulting from
the lack of publication to [him] led to confusion for him about
the issue through November of 2014," doc. no. 49 at ¶ 6, and
"that the Board's failure to send the document to him in the
normal course caused him reasonable confusion for some time
after the order had been entered," doc. no. 62 at ¶ 1.
Plaintiff does not say anything further about his confusion or
its consequences, and he does not dispute the fact that the
Board had published its Order online by March 15, 2014.  There
is also no dispute that the publication of that Order is the act
that triggered the injury he claims to have suffered as a result
of the alleged constitutional violations on which he based his
§ 1983 claims.

1983 claims in the first instance, those claims were time barred by the time he filed them on May 1, 2017.

Because the Board has carried its burden of proving that plaintiff's § 1983 claims are time barred, those claims can survive only if plaintiff can establish that the limitations period was tolled for an amount of time long enough to have kept it running past May 1, 2017. The availability of tolling is a question of New Hampshire law. See <u>Martínez-Rivera</u>, 812 F.3d at 74-75.

In his show cause memorandum, without identifying any legal authority, plaintiff argues that the running of the limitations period was tolled by the motion he filed with the Board in October of 2014. In his reply, after identifying <u>Dobe v. Commissioner, New Hampshire Department of Health & Human Services</u>, 147 N.H. 458 (2002), as the legal authority entitling him to the benefit of tolling, plaintiff argues:

> By filing a request for administrative appeal, that was subsequently denied, the damages he incurred began at the date of the denial and therefore equitable tolling is appropriate here. Moreover, the Board's denial of the motion, to some degree, concedes they didn't comply with RSA, and had no intent of correcting the matter. In such a case, willful noncompliance with RSA should certainly toll the statute of limitations.

Doc. no. 62 at ¶ 6.

Plaintiff's reliance upon <u>Dobe</u> is misplaced. In <u>Dobe</u>, the New Hampshire Department of Health and Human Services ("DHHS")

"issued a notice [on July 9, 1996] stating that [a] report of child abuse [against Christopher Dobe] was founded, notwithstanding the lack of any physical evidence that [his] daughter [the alleged victim] had been sexually abused." 147 N.H. at 459.  In a subsequent divorce proceeding, the marital master made an award of custody that was favorable to Dobe, and raised numerous concerns about the investigation on which DHHS relied to determine that the abuse allegations against Dobe were founded.  See id.  Dobe then "appealed the [July 1996] DHHS finding to the DHHS Office of Program Support Administrative Hearings Division," id., which ultimately "reversed the earlier finding that the report of plaintiff's sexual abuse of his daughter was founded," id. at 460.  In February of 2000, Dobe sued DHHS and various individuals asserting claims arising from the investigation that led to the July 1996 finding.  Id.  The trial court dismissed the claim against all defendants as time barred, explaining that Dobe's cause of action had accrued on July 9, 1996, the day that DHHS issued its adverse finding, which was more than three years before Dobe filed suit.  Id.

On appeal, Dobe argued that his "administrative appeal of the July 1996 finding tolled the running of the statute of limitations."  Id.  After explaining that "the statute of limitations period [may be] 'tolled during a pending administrative proceeding [if] that proceeding is a prerequisite

to pursuit of the civil action,'" id. at 461-62 (quoting N.H. Div. of Human Servs. v. Allard, 138 N.H. 604, 606 (1994)), the New Hampshire Supreme Court affirmed the trial court, explaining that tolling was not warranted because Dobe's administrative appeal "was not a prerequisite to [his] civil lawsuit, id. at 462.

Here, in plaintiff's view, the "request for administrative appeal," doc. no. 62 at ¶ 6, that he filed in October of 2014 entitles him to tolling under the general principle stated in Dobe, i.e., that "the statute of limitations period [may be] tolled during a pending administrative proceeding [if] that proceeding is a prerequisite to pursuit of the civil action." 147 N.H. at 461-62 (internal quotation marks removed). There are several problems with plaintiff's reliance on Dobe.

First, the pleading that plaintiff filed with the Board in October of 2014 was not a request for an administrative appeal of the Board's Order. Rather, it was, in its own words, a "motion[] [asking the] Board to cease the publication of disciplinary action, pending appeal of NH RSA 329:18-a noncompliance by the Board." Doc. no. 49 at ¶ 7 (emphasis added). In other words, plaintiff's pleading was more like a motion to stay the execution of a judgment than a substantive appeal of a judgment.

Second, not only was plaintiff's October filing with the Board not an appeal of the Board's March 11 Order, the appeal to which plaintiff's motion referred was an appeal of an issue entirely unrelated to the § 1983 claims that plaintiff asserts in Count I of his FAC.  In his October 2014 motion, plaintiff referred to a pending appeal of the Board's failure to send him a copy of its Order before it published that Order online, in violation of RSA 329:18-a, IV.  In Count I, plaintiff claims that he was denied due process by the manner in which the Board handled his hearing and drafted the Order that resulted therefrom, but he does not claim that the Board violated his right to due process by publishing its Order online before mailing it to him.  Thus, this case is on all fours with Dobe, in which the New Hampshire Supreme Court held that the limitations period on the plaintiff's claim was not tolled because the administrative proceeding on which the plaintiff based his tolling argument did not involve any claim that the plaintiff was making in his civil suit.  See 147 N.H. at 462.

There is a third problem with plaintiff's reliance upon Dobe.  Dobe says that "the statute of limitations period is not tolled during a pending administrative proceeding unless that proceeding is a prerequisite to pursuit of the civil action." 147 N.H. at 461-62 (internal quotation marks removed).  Here, the administrative proceeding in which plaintiff engaged was not

16

a prerequisite to his filing a civil action to challenge the Board's handling of his disciplinary proceeding. To the contrary, the statute governing the Board's disciplinary proceedings expressly provides that:

> [N]o civil action shall be maintained against the board or any member of the board or its agents or employees with regard to any action or activity taken in the performance of any duty or authority established by this chapter.

RSA 329:17, IX (emphasis added). So, rather than providing a basis for tolling the limitations period for plaintiff's § 1983 claims, the statute governing the Board's disciplinary process would appear to affirmatively bar such claims in the first place.

Because the limitations period for the § 1983 claims plaintiff asserts in his FAC started to run no later than March 15, 2014, and was never tolled, plaintiff had until March 15, 2017, to file those claims. See RSA 508:4, I. He did not file them until May 1, 2017, approximately six months after the limitations period had run. Therefore, those claims are time barred. Accordingly, Count I of plaintiff's FAC is dismissed.

### 2. Second Amended Complaint (Count I of SAC)

In addition to addressing the § 1983 claim from his FAC in his show cause briefing, plaintiff also includes a slightly revised § 1983 claim in his proposed SAC. In the interest of

completeness, the court will address plaintiff's revised § 1983 claim under the standard applicable to motions to amend.

At this juncture, plaintiff "may amend [his FAC] only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given "when justice so requires." Id. Even so, "a district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, or the absence of due diligence on the movant's part.'" Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017) (quoting Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir. 2013); citing Foman v. Davis, 371 U.S. 178, 182 (1962)) (internal brackets removed). For the purposes of Rule 15(a)(2), "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 Moore's Federal Practice ¶ 15.08[4], at 15-80 (2d ed. 1993); Vargas v. McNamera, 608 F.2d 15, 17 (1st Cir. 1979)).

A complaint fails to state a claim upon which relief can be granted when "viewing all the factual allegations in the complaint as true . . . [and] drawing all reasonable inferences in [the plaintiff's] favor," it still does not present "sufficient factual material to state a facially plausible claim." Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 23

(1st Cir. 2017) (citing O'Shea ex rel. O'Shea v. UPS Ret. Plan, 837 F.3d 67, 77 (1st Cir. 2016)).  "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Abraham v. Woods Hole Ocean. Inst., 553 F.3d 114, 117 (1st Cir. 2009) (quoting Bos. & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993)).

As the court has noted, plaintiff makes two new allegations in Count I of his SAC: that he moved for reconsideration of the Board's March 11 Order, and that his motion was denied in April of 2014.  Based upon those allegations, there is an argument to be made that Count I of the SAC is not time barred, presuming that the limitations period on the § 1983 claims asserted therein did not begin to run until some time in May of 2014, at the end of the period for appealing the Board's denial of reconsideration to the New Hampshire Supreme Court ("NHSC"). See RSA 329:17, VIII (providing that appeals of Board decisions to the NHSC are governed by RSA 541); RSA 541:6 (establishing 30 day deadline for appealing Board's denial of a request for rehearing to the NHSC).  However, even if the § 1983 claims in plaintiff's SAC are not time barred, it is difficult to see how they would survive RSA 329:17, IX, which bars civil actions arising from Board actions.  Accordingly, plaintiff shall have

until March 7, 2018, to show cause why his motion to amend, as to
Count I, should not be denied as futile.

## II. ADA Retaliation Claim (Count V)

In a previous order, the court dismissed, with prejudice,
plaintiff's claims that the Dartmouth defendants retaliated
against him for asserting an ADA claim against them in 12-cv-40-
LM by failing to interview him after he submitted applications
for a residency at DHMC in 2013, 2014, 2015, and 2016.
Dismissal, in turn, was based upon plaintiff's failure to plead
that he had exhausted the administrative remedies available to
him to challenge defendants' asserted retaliation.  However, as
to Dr. Isaacs's 2016 application, dismissal was without
prejudice.  On the chance that the time to exhaust a claim based
upon the disposition of Dr. Isaacs's 2016 application had not
yet expired, the court allowed plaintiff "to file a motion for
leave to amend his FAC to assert a properly exhausted ADA
retaliation claim based upon his most recent rejection for a
residency."  Doc. no. 48 at 39.

In Count V of his proposed SAC, plaintiff asserts that in
retaliation for his having brought an ADA claim against the
Dartmouth defendants in 12-cv-40-LM, they responded to his 2017
application for a residency by declining to give him an

interview.[6]  He does not, however, allege that he has exhausted the administrative remedies available to him through the Equal Employment Opportunity Commission ("EEOC").  Exhaustion is a necessary prerequisite for making a claim that defendants retaliated against him for exercising his rights under Title I of the ADA, see Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 389 (1st Cir. 2014), and it is beyond dispute that plaintiff's ADA claim in 12-cv-40-LM arose under Title I of the ADA.  Plaintiff acknowledges that he has not alleged that he has exhausted his administrative remedies, but he asserts that the exhaustion requirement does not apply to his claim and that, if it does, the time for filing a charge with the EEOC has not yet expired.

For reasons that the court explained in a previous order, document no. 48, the exhaustion requirement does apply to the retaliation claim that plaintiff asserts in Count V of his proposed SAC.  Because he has not alleged that he has filed a timely charge with the EEOC or that he has received a right-to-sue letter from the EEOC, plaintiff has not alleged that he has exhausted his administrative remedies.  See Rivera-Díaz, 748

---

[6] In other words, plaintiff is not seeking to amend his FAC to assert a properly exhausted ADA retaliation claim arising from the disposition of his 2016 application; he is seeking to add an entirely new claim arising from the disposition of his 2017 application.

F.3d at 390.  As a result, Count V of plaintiff's proposed SAC does not state a claim upon which relief can be granted.  For that reason, as to plaintiff's ADA retaliation claim, his motion to amend is denied as futile.  See Abraham, 553 F.3d at 117. That said, if at some point in the future, plaintiff should happen to file a timely charge with the EEOC and receive a right-to-sue letter, then he may file an ADA retaliation claim in a separate action.

### III. Counts II, III, IV, VI, and VII

In addition to seeking to amend the two claims from his FAC that were not dismissed, plaintiff also seeks leave to assert five new claims in his SAC.  As for those five new claims, DHMC argues that:

> Plaintiff's attempt to file his second amended complaint should be summarily denied because it was filed in contravention of the Court's prior order allowing him to amend his first amended complaint solely to "assert a properly exhausted ADA retaliation claim based upon the rejection of his 2016 application to DHMC for a residency."

Doc. no. 59 at ¶ 1 (quoting doc. no. 48 at 8).  The Trustees and Board also note that plaintiff's SAC goes beyond the scope of the court's invitation to amend the FAC and further argue that plaintiff's motion for leave to amend should be denied, in its entirety, on grounds of undue delay.  However, all three defendants address plaintiff's five new claims on the merits by

arguing that it would be futile for plaintiff to amend his FAC
by adding them. For that reason, and out of abundance of
caution, in deference to plaintiff's pro se status, and in
recognition of the importance of the interests at issue, the
court will consider each of the five new claims plaintiff seeks
to add to his FAC.

### A. Title IX (Count II)

Count II of plaintiff's proposed SAC is a claim under Title
IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a),
against the Dartmouth defendants. Plaintiff claims that
defendants are liable to him under Title IX for failing to
investigate a complaint he made in March of 2014, to the
president of Dartmouth College, that during the first week of
his DHMC residency, one of his supervisors, Dr. Simon Khagi,
sexually assaulted him by ordering "him [to] perform two
prostate exams [on patients] under false pretenses." Doc. no.
51-1 at ¶ 83.

Plaintiff's Title IX claim has a long history. The
purported sexual assaults on which that claim is premised
occurred in June of 2011. In a pleading in 12-cv-40-LM,
plaintiff: (1) identified Dr. Khagi's orders as the factual
predicate for a claim for intentional infliction of emotional
distress; and (2) referred to a pending Title IX claim in a case

in the U.S. District Court for the Eastern District of Pennsylvania based on defendants' failure to investigate the prostate exams.  See Emergency Mot. for Recons. Add. at 8, Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-cv-40-LM (Apr. 19, 2014), ECF No. 148.  To his motion in 12-cv-40-LM, plaintiff attached an undated letter to the U.S. Department of Education Office for Civil Rights in which he: (1) characterized the order to perform unnecessary prostate exams as "hazing," id., Ex. B, ECF No. 148-2; (2) indicated that Dartmouth's former and current presidents had refused to investigate the matter, id.; and (3) represented that he was litigating "a Title IX claim for failure to investigate the assault and hazing" in the Eastern District of Pennsylvania, id.

In his original complaint in this case, plaintiff included a claim that the Dartmouth defendants violated Title IX when they failed to investigate the prostate exams.  That claim was not asserted in plaintiff's FAC, but has reappeared in his proposed SAC.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Moreover:

Sexual harassment in schools can constitute prohibited sex-based discrimination actionable under Title IX where there is a "hostile environment," such that "acts of sexual harassment [are] sufficiently severe and pervasive to compromise or interfere with educational opportunities normally available to students," and relevant school officials with actual knowledge of the harassment "exhibit[ ] deliberate indifference to [the harassment]." [Frazier v. Fairhaven Sch. Comm., 276 F.3d 52] 65, 66 [(1st Cir. 2001)]. . . . The purportedly illegal acts must be taken "on the basis of sex." See Frazier, 276 F.3d at 66 ("Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal.").

Morgan v. Town of Lexington, 823 F.3d 737, 745 (1st Cir. 2016). To state a sexual harassment claim under Title IX, a plaintiff must allege "(1) that [he] was a student, who was (2) subjected to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable basis for institutional liability exists." Frazier, 276 F.3d at 66 (citing Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 540 (1st Cir. 1995)).

Plaintiff is not claiming that the Dartmouth defendants are liable for a Title IX violation based upon Dr. Khagi's conduct in 2011; he is claiming Title IX liability arising from defendants' failure to investigate his 2014 complaint about Dr. Khagi's conduct. Title IX, however, does not expressly impose upon educational institutions a duty to investigate claims of sexual harassment, nor does it expressly give students a claim

against institutions that fail to do so.  That said, even if the court presumes that Title IX does impose liability for failure to investigate, "[i]n the absence of conduct creating a sex-based hostile educational environment, . . . [such a failure] is not actionable under Title IX." Frazier, 276 F.3d at 67 (emphasis added) (citing Karibian v. Columbia Univ., 930 F. Supp. 134, 137 (S.D.N.Y. 1996) ("If what occurs is an employer's failure to investigate and take remedial measures in response to a complaint of discrimination [based upon Title VII], and if it turns out that no actual discrimination has occurred, then there is nothing which actually constitutes any conduct banned by the statute.") (emphasis added)).  Thus, to state a Title IX claim for failure to investigate, a plaintiff must adequately allege that what the defendant failed to investigate was discrimination in the form of sexual harassment; failure to investigate something that was not sexual harassment does not violate Title IX.

The problem with plaintiff's Title IX claim is that even if ordering Dr. Isaacs to perform two unnecessary prostate exams was sufficiently severe or pervasive to create a hostile environment, plaintiff has failed to make any allegations that, if proven, would establish that Dr. Khagi's conduct toward him constituted harassment "on the basis of [his] sex," Morgan, 823 F.3d at 745.  In his SAC, plaintiff alleges that at some point

after Dr. Khagi ordered him to perform the two prostate exams at issue, he "learned that no medical necessity existed for those exams." SAC ¶ 74. He then alleges that "[k]nowing that these examinations were unnecessary, [he] suffered knowing that he had been ordered to take part in the indecent assault of a patient." SAC ¶ 75 (emphasis added). Subsequently in his SAC, when describing his e-mail to Dartmouth's president, plaintiff alleges that he "informed Dartmouth that he had been the victim of a sexual assault because Dr. Khagi had him perform two prostate exams under false pretenses." SAC ¶ 83 (emphasis added). But merely calling himself the victim of a sexual assault, in the absence of any factual allegations that would support such a conclusion, is insufficient to state a claim that defendants failed to investigate a claim of sexual harassment. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotation marks removed). At worst, defendants may have failed to investigate Dr. Isaacs's claim that Dr. Khagi ordered him to perform an unnecessary medical procedure. But given plaintiff's factual allegations about Dr. Khagi's conduct, defendants did not fail to investigate a claim that Dr. Khagi sexually assaulted or sexually harassed Dr. Isaacs, and it is a failure

to investigate harassment of Dr. Isaacs, based upon his sex,
that could, potentially, expose the Dartmouth defendants to
Title IX liability.

In sum, there are no allegations in Count II of plaintiff's
SAC that, if proven, would entitle him to prevail on a Title IX
sexual harassment claim against the Trustees or DHMC.  Thus,
amending his FAC to add such a claim would be futile.

### B. Fraud (Count III)

Count III of plaintiff's proposed SAC is a claim for fraud
against the Board, arising from various alleged "mistruths and
half-truths about [him]," doc. no. 51-1 at ¶ 93, that the Board
included in its March 11, 2014, Order.  The Board argues that as
to Count III, amendment would be futile for two different
reasons, Eleventh Amendment sovereign immunity and lack of
subject matter jurisdiction.  Even if the Board is not entitled
to sovereign immunity, and even if the court has subject matter
jurisdiction over plaintiff's fraud claim, amending his FAC to
add Count III of his proposed SAC would be futile because Count
III does not state an actionable claim for fraud.

Under the common law of New Hampshire, the elements of a
claim for fraud, or intentional misrepresentation, are as
follows:

> "'[O]ne who fraudulently makes a misrepresentation . .
> . for the purpose of inducing another to act or to

> refrain from action in reliance upon it, is subject to
> liability to the other in deceit for pecuniary loss
> caused to him by his justifiable reliance upon the
> misrepresentation.'" Gray v. First NH Banks, 138 N.H.
> 279, 283 (1994) (quoting Restatement (Second) of Torts
> § 525, at 55 (1977)).

Tessier v. Rockefeller, 162 N.H. 324, 331-32 (2011) (internal

citations removed). It is well established, and plaintiff

acknowledges, that to prevail on a claim of intentional

misrepresentation, "a plaintiff must demonstrate justifiable

reliance." SAC ¶ 92 (quoting Snierson v. Scruton, 145 N.H. 73,

77 (2000)). Moreover, the reliance at issue is reliance by the

plaintiff. See Tessier, 162 N.H. at 332.

Here, plaintiff does not allege that he ever relied upon

the purported mistruths and half-truths in the Board's March 11

Order. Rather, he alleges that false statements in the Order

have caused him continuing injury because no hospital to which

he has applied for a residency has given him an interview, and

that "[t]he availability of [the March 11 Order] and the extent

of the falsehood [in it] indicates that the hospitals denying

[him interviews] are relying on those falsehoods." Doc. no.

51-1 at ¶ 96. In other words, plaintiff is not claiming

pecuniary loss as a result of his justifiable reliance upon the

alleged misrepresentations in the March 11 Order; he is claiming

that he has suffered a loss as a result of reliance by the

hospitals that have declined to interview him. But to state a

claim for intentional misrepresentation, plaintiff must allege

"pecuniary loss caused to him by his justifiable reliance upon

the misrepresentation." Tessier, 162 N.H. at 332 (emphasis

added).

Because Count III of plaintiff's proposed SAC does not

allege that he suffered pecuniary loss resulting from his

justifiable reliance upon any statement made by the Board, he

has failed to state a claim against the Board for intentional

misrepresentation. Cf. Isaacs, 2014 WL 1572559, at *24

("[T]here is no evidence that Dr. Isaacs relied, to his

detriment, on any of the statements that form the basis for his

fraud claim. Thus, defendants are entitled to judgment as a

matter of law on [that] claim."). Accordingly, amending

plaintiff's FAC to add a claim for intentional misrepresentation

would be futile.

### C. Civil Conspiracy (Count IV)

Count IV of plaintiff's proposed SAC is a claim for civil

conspiracy against the Trustees, the Board, and DHMC. Count IV

is supported by the following allegations:

> It is alleged . . . that Dartmouth agents could not
> help themselves from willfully participating in a
> joint prosecution with the State against Dr. Isaacs,
> manipulating the Board adjudicatory process, providing
> confidential sealed documents, and prejudicing the
> Board, resulting in the deprivation of rights as
> described more fully herein. Essentially, the State
> Board, and individuals connected therewith were doing

> the bidding of Dartmouth as they worked together hand
> in hand to violate and deny the Plaintiff his rights.

Doc. no. 51-1 at ¶ 15. Based upon the foregoing, plaintiff asserts that the three defendants conspired to: (1) publish a sealed settlement agreement that had resulted from his lawsuit against the USC medical school "in order to publicly humiliate [him] and destroy his medical career," id. ¶ 99; and (2) refuse to investigate his claim that he was subjected to sexual harassment when Dr. Khagi ordered him to perform two unnecessary prostate exams.

Under New Hampshire law, to state a claim for civil conspiracy, a plaintiff must allege facts sufficient to establish five elements:

> (1) two or more persons . . .; (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

In re Armaganian, 147 N.H. 158, 163 (2001) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)).

Here, plaintiff's civil conspiracy claim founders on the third element. While Count IV uses a quotation from Jay Edwards to define civil conspiracy, see doc. no. 51-1 at ¶ 98, plaintiff does not set out the elements of such a claim, and, as a general matter, paragraph 15 of his SAC is a textbook example of "naked

31

assertion[s] devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (internal quotation marks removed). More specifically, his complaint does not allege facts that, if proven, would establish the existence of an agreement among the three purported coconspirators, or an agreement between any two of them. That is fatal to both components of plaintiff's claim. See Vargas-Colón, 864 F.3d at 22 (affirming dismissal of claim where "the amended complaint contain[ed] absolutely no factual allegations with respect to the first element of the brothers' derivative claim") (citing Portugués-Santana v. Rekomdiv Int'l, Inc., 725 F.3d 17, 26-27 (1st Cir. 2013) (affirming dismissal under Rule 12(b)(6) where complaint's allegations failed to establish element necessary to make out plausible claim)).

There is also a problem with the second element of a civil conspiracy claim as to plaintiff's assertion that defendants conspired to refuse to investigate his claims of sexual harassment. To state a claim for civil conspiracy, a plaintiff must allege "an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means)." In re Armaganian, 147 N.H. at 163. As the court has already explained, because plaintiff has failed to adequately allege that Dr. Khagi subjected him to sexual harassment in 2011, he has failed to allege that the Dartmouth defendants owed him a duty, under

Title IX, to investigate his claims against Dr. Khagi. Furthermore, plaintiff has not identified any other legal authority under which defendants owed him a duty to investigate his claims against Dr. Khagi. Nor has plaintiff alleged that defendants engaged in any illegal act that caused DHMC to not investigate his harassment claim. Thus, he has failed to adequately allege the second element of a civil conspiracy claim.

DHMC also suggests that plaintiff's proposed civil conspiracy claim is time barred, and that is certainly correct with respect to plaintiff's claim that defendants conspired to publish a sealed settlement agreement from his USC litigation. The settlement agreement was published no later than March 15, 2014. Plaintiff first asserted his civil conspiracy claim in his proposed SAC, which was filed on November 14, 2017. Even if plaintiff were to be given the benefit of the relation back doctrine, which does not seem to apply, his original complaint was still filed after the expiration of the limitations period. Given that the other object to be accomplished on which plaintiff bases his civil conspiracy claim is an inaction rather than an action, i.e., refusing to investigate his sexual harassment claim against Dr. Khagi, it is more difficult to determine when the limitations period began to run on that part of plaintiff's claim but, as the court has explained, plaintiff

has provided the court with no basis to conclude that defendants' alleged failure to act was either something unlawful achieved through lawful or unlawful means, or something lawful achieved through unlawful means.

In sum, because Count IV of plaintiff's proposed SAC does not state a claim upon which relief can be granted for civil conspiracy, amending plaintiff's FAC to add such a claim would be futile.

### D. Disability Discrimination (Count VII)

Count VII of plaintiff's proposed SAC is a claim that the Dartmouth defendants violated both the Rehabilitation Act and the ADA by failing to consider his applications for a residency because they regarded him as being disabled.

Section 504 of the Rehabilitation Act prohibits discrimination based upon a person's disability by programs or activities receiving federal financial assistance. See 29 U.S.C. § 794(a). "[T]o prevail on [a] § 504 claim, [plaintiff] must prove . . . (1) that [he] is disabled; (2) that [he] sought services from a federally funded entity; (3) that [he] was 'otherwise qualified' to receive those services; and (4) that [he] was denied those services 'solely by reason of [his] . . . disability.'" Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001).

The ADA, in turn, prohibits disability discrimination in employment (Title I), in the provision of public services (Title II), and in places of public accommodation operated by private entities (Title III).  In an attempt to avoid the exhaustion requirement that applies to Title I claims, plaintiff asserts the ADA claim in Count VII under Title III of the ADA.  Be that as it may, to state a claim under either Title I or Title III, plaintiff must allege that he is disabled.  See Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 20 (1st Cir. 2002) (Title I failure to hire claim); Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003) (Title III claim).

The Rehabilitation Act defines the term "individual with a disability" to mean "any person who has a disability as defined in section 12102 of Title 42."  29 U.S.C. § 705(20)(B).  That statutory provision, which is a part of the ADA, defines the term "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), or "being regarded as having such an impairment," § 12102(1)(C), so long as "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment

limits or is perceived to limit a major life activity," §
12102(3).[7]

Plaintiff's sole allegation concerning his status as a
person with a disability is that "[u]pon information and belief
Dartmouth is refusing to consider [his] applications because
they believe him to be disabled." Doc. no. 51-1 at ¶ 123. In
other words, he relies upon the ADA's "regarded as" definition
of disability.[8] To prove disability under that definition, a
plaintiff "must present evidence . . . that [the defendant]
subjectively believed either (1) [the plaintiff] 'has a
substantially limiting impairment' that he doesn't have, or (2)
[the plaintiff] 'has a substantially limiting impairment when,

---

[7] While the following definition has no application to this
case, the ADA also defines "[t]he term 'disability' [to] mean[]
. . . a record of [a physical or mental] impairment [that
substantially limits one or more major life activities]." 42
U.S.C. § 12102(1)(B).

[8] In his motion to strike the Trustees' objection to his
motion to amend, which the court has construed as a reply,
plaintiff appears to abandon his reliance upon the "regarded as"
definition of disability. Instead, he contends that
"[D]artmouth's own summary judgment documents [presumably in 12-
cv-40-LM] assert that Plaintiff had a neuropsychiatric
disability," Doc. no. 61 at ¶ 15, and argues that under
principles of res judicata, defendants' assertions in 12-cv-40-
LM are sufficient to establish the disability element of his
claims under the Rehabilitation Act and the ADA. However, the
question before the court concerns what plaintiff alleges in his
SAC about what defendants believed about his limitations when
deciding whether to interview him for a residency, not what may
have been written in some unidentified summary judgment document
in another case.

36

in fact, the impairment is not so limiting.'" EEOC v. BNSF Ry. Co., 853 F.3d 1150, 1155-56 (10th Cir. 2017) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)). "Under both tests, [the court] ask[s] whether the employer mistakenly believed that the plaintiff was substantially limited in performing a major life activity." BNSF, 853 F.3d at 1156 (citing Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1086 (10th Cir. 2008)).

Here, plaintiff makes no factual allegations about what any defendant believed about his limitations. He merely asserts that "[u]pon information and belief Dartmouth is refusing to consider [his] applications because they believe him to be disabled." SAC ¶ 123. But, he alleges no facts that would support his belief, such as the reasons given for the disposition of his applications or statements made by decisionmakers that indicate or imply beliefs about his capacities or limitations. In other words, plaintiff merely "tenders naked assertions[] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks removed). That is not enough to nudge his disability discrimination claims "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680 (internal quotation marks removed). quoting Twombly, 550 U.S. at 570). Accordingly,

amending plaintiff's FAC to add Count VII of his SAC would be
futile.

E. Rehabilitation Act Retaliation (Count VI)

In Count VI of his proposed SAC, plaintiff alleges that
"[i]n March of 2013 [he] effectively filed a Rehabilitation Act
claim with OCR," doc. no. 51-1 at ¶ 115, and that in retaliation
for doing so, DHMC responded to his 2013, 2014, 2015, 2016, and
2017 applications for a residency by declining to give him an
interview.

The elements of a Rehabilitation Act retaliation claim are
as follows:

> To establish a prima facie claim for retaliation under
> . . . the Rehabilitation Act, [plaintiff] would have
> to show that [he] "engaged in protected conduct,"
> [was] "subjected to an adverse action by the
> defendant," and "there was a causal connection between
> the protected conduct and the adverse action."

Lebrón v. Puerto Rico, 770 F.3d 25, 31 (1st Cir. 2014) (quoting
D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir.
2012)) (footnote removed).

The first problem with plaintiff's claim concerns the
element of protected conduct.  Plaintiff alleges that in March
of 2013, he "effectively filed a Rehabilitation Act claim with
OCR."  Doc. no. 51-1 at ¶ 115 (emphasis added).  But he does not
say what he means by "effectively" filing a Rehabilitation Act
claim, as opposed to actually filing such a claim.  Nor does he

indicate what OCR stands for.  That, in turn, makes it difficult

to know whether OCR has any role in adjudicating Rehabilitation

Act claims in the first place, and if OCR does not adjudicate

Rehabilitation Act claims, it is difficult to see how filing a

Rehabilitation Act claim with that entity, either effectively or

actually, would be protected conduct under the Rehabilitation

Act.

In light of the vagueness of plaintiff's SAC, the court has

scoured the record to gain a better understanding of the conduct

he means to allege to satisfy the first element of his

Rehabilitation Act retaliation claim.  In his original

complaint, plaintiff alleged that "[o]n March 16th [2013] the

Office of Civil Rights notified Defendant Dartmouth of a pending

HIPPA [Health Insurance Portability and Accountability Act]

investigation."  Doc. no. 1 at ¶ 94.  If, indeed, Dr. Isaacs

took some action that led the Office of Civil Rights to initiate

a HIPPA investigation, and if the Office of Civil Rights is the

"OCR" to which plaintiff refers in Count VI of his complaint, it

would not appear that filing a HIPPA complaint is protected

conduct for the purposes of a Rehabilitation Act retaliation

claim.

There is one other possibility.  In 12-cv-40-LM, plaintiff

submitted to the court an undated letter he had addressed to the

U.S. Department of Education Office for Civil Rights.[9]  In that letter, he stated:

> The nature of my complaint is that I was hazed and abused by my supervisors and professors, because they wanted to oust me for being a student who had previously filed ADA litigation pertaining to a head injury I sustained from an intoxicated Dartmouth student back in 1997.

Isaacs, No. 12-cv-40-LM, doc no. 148-2.  Nowhere does the letter quoted above say anything about the Rehabilitation Act, much less charge either of the Dartmouth defendants with violating it.  Thus, if the above quoted letter is, in fact, the OCR complaint that plaintiff claims to be his protected conduct, it does not qualify as such.

In sum, plaintiff has failed to state a Rehabilitation Act retaliation claim because he has not adequately alleged that he ever engaged in any protected conduct.  However, even assuming that plaintiff did engage in protected conduct by filing a Rehabilitation Act claim with the OCR, he has failed to adequately allege the third element, a causal link between his protected conduct and the adverse actions taken against him.

With respect to causation, "for an . . . action to be retaliatory, the person taking that action must have known about

_____

[9] In a complaint that plaintiff filed against the U.S. Department of Education in the U.S. District Court for the District of Massachusetts, Dr. Isaacs appears to indicate the letter he submitted to the court in 12-cv-40-LM was dated April 19, 2014.  See doc. no. 65-1 at ¶ 5.

the . . . protected conduct at the time he or she took the allegedly retaliatory action." Taite v. Shineski, No. 08-cv-258-SM, 2010 WL 745160, at *19 (D.N.H. Mar. 1, 2010) (citing Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006).

Here, while plaintiff alleges that he "effectively filed a Rehabilitation Act claim with OCR," SAC ¶ 115, he does not allege anything about the substance of that claim or the party or parties against whom he asserted it. That matters because plaintiff is not asserting a typical retaliation claim, in which the protected conduct was directly targeted at the defendant, as when an employee claims that her employer retaliated against her for asking for a reasonable accommodation for a disability. Because plaintiff does not allege protected conduct that was directly targeted at any defendant, there is no basis for assuming that any defendant ever knew about the claim plaintiff says he effectively filed with OCR. Yet, plaintiff does not allege that he ever served any defendant with his OCR complaint, or that OCR ever forwarded his complaint to any defendant. Indeed, he alleges that his OCR "claim was later dismissed for being untimely," doc. no. 51-1 at ¶ 115, an action that OCR could well have taken without ever notifying any defendant of the claim it was dismissing.

The Trustees have identified the causation problem with

Count VI, arguing that

> Dr. Isaacs does not allege that he named the Trustees
> of Dartmouth College [in his OCR complaint], or that
> the Trustees were aware of the Office of Civil Rights
> Complaint that he asserts gives rise to his
> retaliation claim, such that the Trustees or any of
> their agents could plausibly be said to have taken any
> adverse action against him in retaliation for the
> complaint.

Doc. no. 54-1 at 8.  Plaintiff responds:

> Defendant brings the argument that no evidence that
> the Trustees of Dartmouth College were aware of the
> Office of Civil Rights complaint has been given.  The
> Defendant does not claim that the Trustees of
> Dartmouth College were not aware of the complaint,
> just that it has not been stated.  This kind of
> illogical argument not found supported by the record
> has no place here.  If the Defendant would like to
> present evidence that they did not receive notice they
> are free to do so at Summary Judgment, however the
> amount of ink the Defendant has spent discussing the
> other aspects of Plaintiff's previous actions
> indicates that they have been following his activities
> very closely, making it unlikely that they would not
> be aware of that action.

Doc. no. 61 at ¶ 17.  Plaintiff mischaracterizes the Trustees'

argument.  They do not argue that no evidence has been produced;

they argue that plaintiff has not adequately alleged that they

knew about his OCR complaint, which is essential to state a

retaliation claim.  They are correct.  Because plaintiff has not

adequately alleged that the Dartmouth defendants knew about his

OCR complaint, amendment to add the retaliation claim asserted

in Count VI of his SAC would be futile.

## IV. Conclusion

For the reasons described above, the court issues the following set of rulings:

### Show Cause Briefing re: Count I of FAC

Plaintiff has failed to show cause why the § 1983 claims in his FAC are not time barred.  Accordingly, Count I of the FAC is dismissed with prejudice.

### Motion for Leave to Amend FAC

Amending plaintiff's FAC to add the claims he asserts in Counts II, III, IV, V, VI, and VII of his SAC, or an ADA retaliation claim based upon the disposition of his 2017 residency application, would be futile.  Accordingly, as to those claims, plaintiff's motion for leave to amend his FAC, document no. 51, is denied, but with the proviso that he is free to assert a properly exhausted ADA retaliation claim in a subsequent action.

After denying plaintiff's motion for leave to amend with respect to the above claims, all that remains are the § 1983 claims that plaintiff asserts in Count I of his SAC.  As to those claims, plaintiff shall have until March 7, 2018, to show cause why they are not barred by RSA 329:17, IX.  Plaintiff's show cause briefing shall be limited to that single issue.  If plaintiff fails to show cause why Count I of his SAC is not barred by that statute, the court will deny plaintiff's motion

for leave to amend in full and will direct the clerk of the
court to close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 5, 2018

cc:  All counsel and pro se parties of record.