UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| JEFFREY ISAACS, M.D., | ) | |
| Plaintiff, | ) | Civil No. 17-cv-040-LM |
| v. | ) | |
| TRUSTEES OF DARTMOUTH COLLEGE, NEW HAMSHIRE BOARD OF MEDICINE, and DARTMOUTH-HITCHCOCK MEDICAL CENTER, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER
RELATING TO COUNT ONE OF THE SECOND AMENDED COMPLAINT**

Plaintiff, Jeffrey Isaacs, M.D., respectfully submits this response to the Court's invitation in its Order of February 5, 2018, to demonstrate that Count I of his Second Amended Complaint should not be dismissed as futile. In this Order, the Court dismissed Dr. Isaacs' claims based upon 42 U.S.C. § 1983 in his First Amended Complaint as barred by the statute of limitations. Addressing the Section 1983 claims in Count One of the Second Amended Complaint, however, the Court stated that "there is an argument to be made . . . [that the Count One claim] is not time barred . . . ." The Court then offered Dr. Isaacs the opportunity to show that the Section 1983 claims in the Second Amended Complaint are not "futile."

**ARGUMENT**

Dr. Isaacs' Count One claims against Senior Assistant Attorney General Jeffrey Cahill are not futile because Attorney Cahill acted as an investigator, and not as a quasi-judge or -prosecutor, during the time leading up to the Board of Registration in Medicine's consideration

of Dr. Isaacs' case. For this reason, Attorney Cahill is entitled only to qualified immunity from the Section 1983 claim made in the Second Amended Complaint. Further, because Attorney Cahill acted in a manner that was objectively unreasonable, Dr. Isaacs' Section 1983 claim against him can be sustained.

Notwithstanding RSA 329.17 (IX), the state law provision identified by the Court, Federal law governs claims of immunity from a Section 1983 action. *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701 (1st Cir. 1995) (citing *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980)). In *Wang*, the governing boards in both Massachusetts and New Hampshire had revoked the plaintiff's medical license, and he, among other things, brought a Section 1983 action against the New Hampshire Board of Registration in Medicine. Although from the historical annotations to the relevant section, it appears that RSA 329.17(IX) was in effect in 1995, the appellate court considered the section 1983 liability issues under Federal law and no citation to RSA 329.17 appears in the opinion.

Nevertheless, the court in *Wang* concluded that the Board members and Board counsel were absolutely immune from the plaintiff's section 1983 action based upon their quasi-judicial and quasi-prosecutorial functions. Relying largely on *Bettencourt v. Board of Registration of Medicine*, 904 F.2d 772 (1st Cir. 1990), a case involving similar constitutional claims against the Massachusetts Board of Medicine, the court reasoned that the Board members and staff acted in roles that were comparable to state court judges, in that they weighed evidence, made factual determinations, determined sanctions, and issued written decisions. *Wang*, 55 F.3d at 701. Responding to Wang's argument that the New Hampshire Board members' functions were different from the Massachusetts Board, the court reasoned that to the extent that the Board

members also performed quasi-prosecutorial functions, that, too, entitled them to absolute immunity.

The role and duties of Attorney Cahill in the period of time leading up to the Board's decision to revoke Dr. Isaacs' license were different than that of anyone described in *Wang* or *Bettencourt*. As evidenced by the attached email communications, Attorney Cahill performed investigative functions prior to the Board's consideration of Dr. Isaacs' case. *See* Exhibits A, B, and C. Specifically, Attorney Cahill sought information and documents from Dr. Isaacs, which Dr. Isaacs promptly provided. *Id.* In this regard, his role was far from that of a judge or prosecutor – he was instead acting akin to a government agent investigating the facts of a particular situation.

A government attorney acting as an investigator, as Attorney Cahill was, is entitled to only qualified immunity. The Supreme Court has explained that qualified immunity is typically sufficient to protect government officials, and absolute immunity is available only to officials with special functions that justify such immunity. *See Burns v. Reed*, 500 U.S. 478, 486-87 (1991); *Butz v. Economou*, 438 U.S. 478, 508 (1978). "In considering whether absolute immunity attaches to an official's conduct, we employ a 'functional approach.'" *Knowlton v. Shaw*, 704 F.3d 1, 5 (1st Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). In performing this analysis, the Supreme Court has reasoned that a state prosecutor's investigatory and administrative functions are not entitled to absolute immunity, even though the prosecutor may have such immunity while conducting a trial. *See Burns v. Reed*, 500 U.S. at 494-96. Similarly, here, Attorney Cahill's role in seeking information and documents from Dr. Isaacs was purely investigatory, and he is therefore entitled only to qualified immunity.

While this conclusion should be sufficient for Count One of the Second Amended Complaint to surpass dismissal, assessment of Attorney Shaw's role and actions demonstrates that Attorney Shaw should not be entitled to immunity.  A qualified immunity analysis is an objective one that assesses the relevant constitutional right and the reasonableness of the state actor's conduct in light of that right.  *See Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir. 1990). Under the first part of the analysis, a state actor reasonably should be aware of a constitutional right that was "clearly established" during the relevant time period.  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Dr. Isaacs' relevant constitutional right, as identified in the Second Amended Complaint, was his 14th Amendment liberty interested in the right to practice medicine, a well-known right of which Attorney Cahill was or should have been aware, particularly considering the Board's role.

Attorney Cahill's conduct related to Dr. Isaacs' exercise of this right was objectively unreasonable, and he should not, therefore, benefit from qualified immunity.  During the course of his investigation, Attorney Cahill obtained both relevant settlements with Keck School of Medicine, the second of which sealed Dr. Isaacs' disciplinary records as the only consideration obtained by Dr. Isaacs.  *See* Exhibit C.  Attorney Cahill also obtained documents relating to the investigation of Dr. Isaacs' situation by the American Association of Medical Colleges (AAMC). Exh. B.  The AAMC concluded that Dr. Isaacs was under no obligation to disclose anything about his enrollment or attendance at Keck School of Medicine.

Yet Attorney Cahill apparently provided the Board with neither the settlement document sealing Dr. Isaacs' disciplinary records nor the AAMC documents.  These documents, at the very least, would have weighed in favor of exonerating Dr. Isaacs and may have allowed him to exercise his constitutional right to practice medicine.  But the documents appear nowhere in the

4

Board's decision, and the conclusion that must be drawn is that Attorney Cahill never provided them to the Board. Attorney Cahill's conduct in this regard does not warrant immunity.

## **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court conclude that Count One of the Second Amended Complaint is not futile and allow this claim to go forward.

    Respectfully submitted,

    Jeffrey Isaacs, M.D.

    By his attorney,

Dated: March 7, 2018      /s/ *Mark L. Josephs*
Mark L. Josephs
Appearing *Pro Hac Vice*
Law Office of Mark Josephs, LLC
10 Derne Street
Boston, MA 02114
(857) 250-4998
mark.josephs@markljosephslaw.com

<u>Certificate of Service</u>

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on March 7, 2018.

                                  <u>/s/ Mark L. Josephs</u>
                                  Mark L. Josephs