UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Dr. Jeffrey Isaacs

     v.                                Civil No. 17-cv-040-LM
                                     Opinion No. 2018 DNH 096
Trustees of Dartmouth
College, NH Board of
Medicine, and Dartmouth-
Hitchcock Medical Center


**O R D E R**


In an order dated February 5, 2018, the court largely
denied plaintiff's motion for leave to amend his First Amended
Complaint ("FAC").  However, the court gave him the opportunity
to keep his case alive by showing cause why Count I of his
proposed Second Amended Complaint ("SAC") is not barred by N.H.
Rev. Stat. Ann. ("RSA") § 329:17, IX.  Before the court are: (1)
plaintiff's motion, pursuant to Rule 60 of the Federal Rules of
Civil Procedure, for relief from the court's ruling that it
would be futile to amend his FAC by adding the federal
Rehabilitation Act retaliation claim he asserted in Count VI of
his SAC; and (2) plaintiff's show cause briefing.  Both
pleadings are duly opposed.  For the reasons that follow,
plaintiff's motion for Rule 60 relief is denied, and his show
cause briefing is insufficient to save Count I of his SAC.
Accordingly, plaintiff's case is dismissed in its entirety.

## I. Motion for Rule 60 Relief

Document no. 76 bears the caption "Motion Requesting Relief from Judgment Order on Motion to Amend. Document No. 70." In it, plaintiff asks the court to reverse its determination that it would be futile to amend his FAC by adding Count VI of his proposed SAC. Both the Trustees of Dartmouth College ("Trustees") and Dartmouth-Hitchcock Medical Center ("DHMC") object.

### A. The Legal Standard

Plaintiff seeks relief under Rule 60(b)(1), which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." He does not, however, indicate which of the four prongs of Rule 60(b)(1) he is invoking. Be that as it may, regardless of the specific part of Rule 60(b)(1) that plaintiff is relying on, the following principles govern the court's consideration of his motion:

> Federal Rule of Civil Procedure 60(b) relieves parties from final judgments only under exceptional circumstances. See Dávila-Álvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001) (citing Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986)). A party seeking Rule 60(b) relief must show, at a bare minimum, "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the

2

judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002) (internal citations omitted).

Skrabec v. Town of N. Attleboro, 878 F.3d 5, 9 (1st Cir. 2017); see also Karak, 288 F.3d at 19 ("relief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly") (citing Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19-20 (1st Cir. 1992); Lepore, 792 F.2d at 274.

B. Discussion

In Count VI of his proposed SAC, plaintiff asserted that: (1) "[i]n March of 2013 [he] effectively filed a Rehabilitation Act claim with OCR," doc. no. 51-1 ¶ 115;[1] and (2) in retaliation for filing that complaint, DHMC declined to interview him when he applied for residencies in 2013, 2014, 2015, 2016, and 2017, see id. ¶¶ 118-120. The court declined to give plaintiff leave to amend his FAC to add Count VI of his SAC for two reasons: (1) his failure to adequately allege the first element of a Rehabilitation Act retaliation claim, i.e., protected conduct,

---

[1] OCR is the Office of Civil Rights in the United States Department of Education. See doc. no. 76-1, at 1.

see doc. no. 70, at 38-40; and (2) his failure to adequately allege the third element of such a claim, i.e., a causal connection between protected conduct and an adverse action, see id. at 40-42.[2]  With respect to the third element, the court explained that "for an . . . action to be retaliatory, the person taking that action must have known about the . . . protected conduct at the time he or she took the allegedly retaliatory action."  Id. at 40-41.  After establishing that rule of law, the court went on to point out that plaintiff's complaint did not allege that anyone who denied him an interview for a residency ever knew about his OCR complaint.

In the motion now before the court, plaintiff attempts to cure both of the deficiencies that led the court to deny him leave to amend his FAC to add Count VI.  He does so by attaching to his motion a letter he received from an OCR attorney in October of 2014 which communicated OCR's decision to dismiss his

---

[2] In Lebrón v. Puerto Rico, the court of appeals explained that

> [t]o establish a prima facie claim for retaliation under . . . the Rehabilitation Act, [plaintiff] would have to show that [he] "engaged in protected conduct," [was] "subjected to an adverse action by the defendant," and [that] "there was a causal connection between the protected conduct and the adverse action."

770 F.3d 25, 31 (1st Cir. 2014) (quoting D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012)) (footnote removed).

complaint without investigation because it was untimely.
According to plaintiff, "the facts that appear on the face of
the attached [letter show] [t]hat he made a Rehabilitation Act
Claim and that the Defendants were made aware of that claim when
it was served upon them."  Doc. no. 76 ¶ 10.  However, plaintiff
says nothing about why he did not include the facts that appear
on the face of the October 2014 OCR letter in Count VI of the
proposed SAC he filed in November of 2017.  That is fatal to his
request for Rule 60(b) relief.

As the court has noted, entitlement to relief under Rule
60(b) requires a showing of "exceptional circumstances."
Skrabec, 878 F.3d at 9.  To demonstrate that the circumstances
that caused him not to include facts from the OCR letter in his
proposed SAC were exceptional, plaintiff must at least say what
those circumstances were.  See United States v. $29,373.00 in
U.S. Currency, 86 F. Supp. 3d 95, 99–100 (D.P.R. 2015)
("Claimants do not elaborate on the circumstances of their
mistaken belief that they had filed a claim.  Without more, the
Court cannot evaluate whether the mistake is justified,
excusable, or honest."); 11 Charles A. Wright, Arthur R. Miller
& Mary Kay Kane, Federal Practice and Procedure § 2858 (3d ed.
2012) (explaining that a party seeking Rule 60(b)(1) relief
"must make some showing justifying the failure to avoid the

mistake or inadvertence"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996). In other words, "[s]imply alleging the fact of a mistaken belief does not suffice to show an 'exceptional circumstance' warranting Rule 60(b) relief," $29,373.00 in U.S. Currency, 86 F. Supp. 3d at 100. Here, plaintiff merely attaches the OCR letter to his Rule 60(b) motion. He does not even go so far as to allege mistake, inadvertence, surprise, or excusable neglect, much less identify any circumstances that would allow the court to conclude that his failure to allege facts from the OCR letter in his SAC was a result of a mistake, inadvertence, surprise, or excusable neglect that is justifiable. Thus, he has failed, by a wide margin, to make a showing that would entitle him to Rule 60(b)(1) relief. That alone warrants denial of plaintiff's Rule 60(b) motion.

However, even if some extraordinary circumstance did prevent plaintiff from alleging facts drawn from the October 2014 OCR letter until now, he has not shown "that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim." Skrabec, 878 F.3d at 9. In this context, the "right stuff" is an "underlying claim[] [that has] a reasonable chance of success on the merits." Gonalez Rucci v. U.S. INS, 405 F.3d 45, 48 (1st Cir. 2005) (citing

Caisse v. DuBois, 346 F.3d 213, 215-16 (1st Cir. 2003)); Beshear
v. Weinzapfel, 474 F.2d 127, 132 (7th Cir. 1973) (the movant, if
a plaintiff, "must show facts which, if established, might
reasonably be said to be a basis for recovery") (emphasis
supplied); Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir.
1970) (similar); Lepkowski v. U.S. Dep't of Treasury, 804 F.2d
1310, 1314 n.4 (D.C. Cir. 1986) (suggesting that the movant, a
plaintiff, had an obligation to "set forth facts" sufficient to
raise the prospect of overcoming an identified defense).
Plaintiff's problem is that, notwithstanding his argument to the
contrary, the facts in the OCR letter do not establish that any
defendant knew about his OCR complaint, and without an
allegation of knowledge of the OCR complaint on the part of a
defendant who took adverse action against him, plaintiff cannot
state a Rehabilitation Act retaliation claim that has a
reasonable chance of success on the merits.  See Lebrón, 770
F.3d at 31; Taite v. Shineski, No. 08-cv-258-SM, 2010 WL 745160,
at *19 (D.N.H. Mar. 1, 2010).

     The OCR letter describes Dr. Isaacs's complaint as having
been "filed against Dartmouth College (College) and Dartmouth-
Hitchcock Medical Center."  Doc. no. 76-1, at 1.  But, the
letter: (1) says nothing about Dr. Isaacs's complaint having
been served, by anyone, on either Dartmouth College or DHMC; (2)

7

makes no suggestion that OCR dismissed Dr. Isaacs's complaint in response to arguments advanced by either Dartmouth College or DHMC after they had been served with it; and (3) gives no indication, such as a listing of "cc:" recipients, that the letter was sent to either Dartmouth College or DHMC. Thus, the OCR letter does not support an allegation that any person who reviewed Dr. Isaacs's residency applications had any knowledge of his OCR complaint. For that reason, the letter does not remedy the deficiency the court previously identified in plaintiff's allegation of the third element of a Rehabilitation Act retaliation claim. Plaintiff argues that the OCR letter establishes that DHMC and the Trustees were made aware of his Rehabilitation Act claim "when it was served upon them," doc. no. 76 ¶ 10, but the letter does not indicate that any Dartmouth entity was ever served with Dr. Isaacs's OCR complaint.

Apart from attaching the OCR letter to his motion, plaintiff supports his argument on the causation element with little more than his own incredulity. For example, he says: "[g]iven that the original claim was brought against them, there is no plausible way that the Defendants were unaware of it." Doc. no. 76 ¶ 5; see also id. ¶¶ 7 & 8 (similar expressions of disbelief). Plaintiff's incredulity is no substitute for an adequate factual allegation. Cf. Barchock v. CVS Health Corp.,

886 F.3d 43, 48 (1st Cir. 2018) (explaining that for purposes of Rule 12(b)(6), "[w]ell-pleaded facts must be 'non-conclusory' and 'non-speculative'") (quoting Schatz v. Rep. State L'ship Comm., 669 F.3d 50, 55 (1st Cir. 2012)).[3]

In sum, the facts on the face of the OCR letter provide the court with an insufficient basis for reversing its previous ruling that it would be futile to amend plaintiff's FAC to add the Rehabilitation Act claim he asserted in Count VI of his SAC, because Count VI does not state a claim upon which relief can be granted. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (explaining that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" and that "[i]n reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion") (citations omitted); Barchock, 886 F.3d at 48 ("To survive dismissal . . ., the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[3] The court notes that the Trustees have offered a plausible explanation for their lack of knowledge of Dr. Isaacs's OCR complaint, pointing out: (1) OCR's decision not to investigate Dr. Isaacs's complaint because it was untimely; and (2) OCR's policy of not informing the target of a complaint that a complaint has been lodged against it until OCR decides to investigate the complaint. See doc. no. 78, at 5 n.1 (citing manual on OCR web site).

plausible on its face") (citations and internal quotation marks omitted); Abraham v. Woods Hole Ocean Inst., 553 F.3d 114, 117 (1st Cir. 2009) (explaining that when proposed amended complaint "still fails to state a claim, the district court acts within its discretion in denying the motion to amend") (citations omitted)).  Accordingly, plaintiff's Rule 60 motion is denied.

## II. Show Cause Briefing

In document no. 70, in addition to ruling that it would be futile to amend plaintiff's FAC to add Count VI of his proposed SAC, the court also ordered plaintiff to show cause why the due process claim he asserts in Count I of his SAC, by means of 42 U.S.C. § 1983, is not barred by RSA 329:17, IX.  While Count I does not appear to be barred by RSA 329:17, IX, it is barred by the doctrine of qualified immunity.

### A. Background

Unless otherwise indicated, the facts recited below are drawn from plaintiff's SAC and previous orders in this case.

Isaacs attended the Keck School of Medicine ("Keck") at the University of Southern California ("USC") until, during his first year, "he was suspended and ultimately dismissed for harassing a classmate."  Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. Apr. 18,

2014).  Dr. Isaacs then sued USC.  His suit resulted in two

settlement agreements.  Plaintiff's allegations concerning the

contents of those agreements are not stated with great clarity

in his SAC.  While plaintiff was obviously under no obligation

to do so, he attached 18 exhibits to his original complaint, but

did not attach either of the settlement agreements, even though

they certainly would qualify as "documentation incorporated by

reference in [a] complaint," Sanders v. Phoenix Ins. Co., 843

F.3d 37, 42 (1st Cir. 2016) (quoting Rivera-Díaz v. Humana Ins.

of P.R., Inc., 748 F.3d 387, 388 (1st Cir. 2014)).  Be that as

it may, plaintiff's proposed SAC includes the following relevant

factual allegations:

> Dr. Isaacs entered into two settlement agreements with
> Keck, one for dismissal of his action against its
> Deans, and another, dismissal against Keck as an
> institution.  . . .
>
> The Institutional Settlement ordered Dr. Isaacs not to
> disclose his enrollment at Keck to others, and
> further, ordered Keck to cancel "all Administrative
> Charges," including Isaacs' expulsion from Keck.

Doc. no. 51-1 ¶¶ 36-37.  Plaintiff further alleged that one of

the two settlement agreements sealed his disciplinary records at

Keck.  See id. ¶ 39.  He implies, but does not allege directly,

that the agreement that sealed his disciplinary records was the

so-called "Institutional Settlement," id. ¶¶ 38-39, and he

further implies, but does not allege directly, that the

Institutional Settlement was the second of the two agreements to be executed.  However, in a document he attached to his original complaint, a September 3, 2013, e-mail he sent to Attorney Jeff Cahill, who was affiliated with the New Hampshire Board of Medicine ("Board"), Dr. Isaacs stated that it was the <u>first</u> settlement agreement rather than the second one that sealed his Keck disciplinary records.  <u>See</u> doc. no. 3-18, at 1.  In a document he attaches to his show-cause brief, a January 29, 2013, e-mail he sent to Penny Taylor, who was also affiliated with the Board, he said the same thing.  <u>See</u> doc. no. 77-3, at 2 of 2.  For reasons that will become apparent, it is more beneficial to plaintiff to construe his SAC as alleging that his Keck disciplinary records were sealed by the first settlement agreement rather than the second one, so the court will adopt that construction.

After Dr. Isaacs was dismissed from Keck, he earned an M.D. degree from the American University of the Caribbean, Netherlands Antilles.  Then, he began a residency in general surgery at the University of Arizona ("UA").  He resigned after three weeks.

Next, Dr. Isaacs applied for a residency at DHMC.  He did so through the Electronic Residency Application Service ("ERAS"), which is managed by the American Association of

Medical Colleges ("AAMC").  In his ERAS application, Dr. Isaacs

"omitted both his attendance at USC and his aborted residency at

UA."  Isaacs, 2014 WL 1572559, at *2.  Based upon his ERAS

application, Dr. Isaacs was accepted into the DHMC residency

program in psychiatry.

Dr. Isaacs began his DHMC residency in June of 2011.  In an

application for a training license that he submitted to the New

Hampshire Board of Medicine, Dr. Isaacs omitted his attendance

at Keck, and when asked whether he had "ever been reprimanded,

sanctioned, restricted or disciplined in any activities

involving medical education or practice," doc. no. 3-1, at 3 of

3, he responded in the negative, see id.

In March of 2012, Dr. Isaacs was dismissed from the DHMC

residency program.  His letter of dismissal cited both academic

deficiency issues and "the omission of material information from

[his] Electronic Residency Application Service (ERAS)

Application [and] falsification of information provided to the

New Hampshire Board of Medicine."  Doc. no. 3-11, at 1.  The

letter continued:

> Specifically, your ERAS application lacked information
> regarding your prior residency training in Arizona as
> well as time served as a medical student at the
> University of Southern California.  You also failed to
> divulge your dismissal from the medical school at USC
> in information provided to the New Hampshire Board of
> Medicine in support of a NH training license.

Doc. no. 3-11, at 1.  As a result of Dr. Isaacs's dismissal from the DHMC residency program, his training license was "revoked as of the date of [his] termination [and] was canceled by operation of law."  Doc. no. 7-1, at 8.

After DHMC dismissed Dr. Isaacs, it notified the Board of its action, and further informed the Board that Dr. Isaacs "had allegedly omitted material facts from his Application for Training License for Residents and Graduate Fellows and the supplement filed along with the application."  Doc. no. 7-1, at 1.  "As a result of [that] information, the Board commenced an investigation to determine whether [Dr. Isaacs had] committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18."  Id.

During the course of the Board's investigation, Dr. Isaacs corresponded with Atty. Cahill, who later served as the Board's counsel at the hearing that resulted from its investigation.  In an e-mail dated September 3, 2013, Dr. Isaacs told Atty. Cahill:

> Attached is the first settlement with USC (settled 1 year prior to the second settlement I sent you last month), which sealed the USC disciplinary records.  As you will see, the only consideration involved in this settlement contract was the sealing of disciplinary records.

Doc. no. 77-3, at 2 of 2.  In October of 2013, the Board issued a Notice of Hearing, informing Dr. Isaacs that a hearing had been scheduled for February 5, 2014.

On January 29, 2014, Dr. Isaacs sent an e-mail to Penny Taylor, the Board's Administrator, that stated, in pertinent part:

> You have noticed a February 5th hearing, which I [h]ereby motion to stay, pending federal litigation in the Pennsylvania District Court.  The settlement agreement I entered into with USC clearly sealed my disciplinary records.  A subsequent settlement agreement annulled all contracts and acquitted all controversies with USC.  The AAMC and the NHES have both investigated this issue already and agreed with me.

Doc. no. 3-18, at 1.[4]

The Board held its hearing, as scheduled, but Dr. Isaacs did not attend.  After the hearing, the Board issued a Final Decision and Order, which was signed by Taylor.

In the decision, Taylor characterized the evidence the Board considered this way:

> The Board opened the hearing just after 1:00 p.m. on February 5, 2014.  It first entered Exhibits A and B, Respondent's [i.e., Dr. Isaacs's] e-mails dated January 29 and February 5, as exhibits for Respondent. It also accepted Exhibits 1-3 from hearing counsel. Exhibit 1 is Respondent's 2011 NH Application for Residency Training License; Exhibit 2 is an excerpt of a March 1, 2007 court order in Isaacs v. USC; and Exhibit 3, the April 2008 Confidential Agreement in Isaacs v. USC.  These exhibits along with notice of witnesses to be presented were provided to Respondent on January 31, 2014.

---

[4] "NHES" appears to stand for "New Hampshire Department of Employment Security."  See Isaacs II, 2014 WL 4186536, at *3.

Doc. no. 7-1, at 5.  It is clear that Exhibit 3 was the settlement agreement that concluded Dr. Isaacs's case against USC.  The decision continues:

> In Exhibit A, Respondent alleges that the settlement agreement with USC [i.e., the first agreement] "clearly sealed [his] disciplinary records, and a subsequent agreement annulled all contracts and acquitted all controversies with USC."  It appears this is the reason Respondent contends he was not required to disclose the Keck School information on his training license application.  A review, however, of Exhibit 3 [i.e., the second agreement] indicates that it is only information related to the lawsuit, and the negotiation of the Settlement Agreement's terms and conditions that is confidential, along with the monetary settlement amount.  There is no provision in Exhibit 3 "sealing the disciplinary records."

Doc. no. 7-1, at 6.

At the conclusion of the Board's order, Taylor noted that Dr. Isaacs's dismissal from the DHMC residency program terminated his medical license by operation of law.  But she went on to announce the Board's determination that a reprimand was appropriate, as a sanction for the false statement and material omission in the license application that Dr. Isaacs submitted to the Board.

In an e-mail that bears no legible date, the AAMC notified Dr. Isaacs that it would "honor his request to keep the Keck information off of his [ERAS] report . . . and [would] provide a new draft preliminary report that only mention[ed] [his] time at Arizona."  Doc. no. 3-12, at 1.

16

Count I of plaintiff's proposed SAC arises from the foregoing factual allegations. While the SAC asserts Count I rather expansively,[5] plaintiff's show cause briefing narrows Count I to a claim, brought through the vehicle of 42 U.S.C. § 1983, that Atty. Cahill, acting in his individual capacity, violated his federal constitutional right to due process by failing to provide the Board with: (1) one of the two settlement agreements that resulted from his suit against USC, i.e., the one that sealed his disciplinary records; and (2) documents

_____

[5] As stated in plaintiff's proposed SAC, Count I is a claim, brought through 42 U.S.C. § 1983, that the Board, Penny Taylor, Atty. Cahill, and the individual members of the Board violated his federal constitutional rights to substantive and procedural due process by:

    a.    Employing confidential out of state and inaccurate settlement documents to [d]eprive [him] of his livelihood and publicly embarrass him;

    b.    Failing to consider the relevant documents provided by [him] in his defense;

    c.    Failing to honor the solemnity of a confidential Court Settlement Agreement;

    d.    Failing to honor [his] reasonable request to continue [his] hearing for medical reasons;

    e.    Failing to honor [his] reasonable request to continue the hearing for inclement weather; [and]

    f.    Fail[ing] to allow [his] reasonable request to participate electronically.

Doc. no. 51-1 ¶ 50.

reflecting the AAMC's decision that he was under no obligation to disclose his attendance at Keck in applications submitted through ERAS.  According to plaintiff, the foregoing "documents, at the very least, would have weighed in favor of exonerating [him] and may have allowed him to exercise his constitutional right to practice medicine . . . [b]ut the documents appear nowhere in the Board's decision and the conclusion that must be drawn is that Attorney Cahill never provided them to the Board." Doc. no. 77, at 4.

### B. Discussion

In document no. 70, the court dismissed the § 1983 claim that plaintiff asserted in his FAC because it was barred by the statute of limitations.  In the course of rejecting plaintiff's argument for equitable tolling, the court cited a New Hampshire statute providing that "[n]o civil action shall be maintained against the board or any member of the board or its agents or employees with regard to any action or activity taken in the performance of any duty or authority established by this chapter."  RSA 329:17, IX.[6]  That statute, in turn, prompted the court to order plaintiff to show cause why the § 1983 claim he

_____

[6] However, "[d]isciplinary or non-disciplinary remedial action taken by the board under [RSA 329:17] may be appealed to the supreme court under RSA 541."  RSA 329:17, VIII.

asserts in Count I of his proposed SAC is not futile, for failure to state a claim upon which relief can be granted.  See Glassman, 90 F.3d at 623; Barchock, 886 F.3d at 48; Abraham, 553 F.3d at 117.

In response to the show cause order, plaintiff cites Wang v. New Hampshire Board of Registration in Medicine for the proposition that "immunity claims in section 1983 actions are governed by federal law."  55 F.3d 698, 701 (1st Cir. 1995) (citing Martinez v. California, 444 U.S. 277, 284 (1980)). Plaintiff's point is well taken, the Board does not dispute it, and the court agrees that Count I of plaintiff's proposed SAC is not barred by RSA 329:17, IX.  That, however, is not the end of the story.

In addition to arguing that RSA 329:17, IX does not provide Atty. Cahill with immunity from his § 1983 claim, plaintiff goes on to argue that under the federal law that applies to § 1983 claims, Atty. Cahill is not immune from suit.  The court does not agree.

In Wang, the Board of Registration in Medicine for the Commonwealth of Massachusetts revoked the medical license of a physician who was licensed in both Massachusetts and New Hampshire.  See 55 F.3d at 699.  Thereafter, the New Hampshire Board of Registration in Medicine "decided to investigate Wang's

19

New Hampshire medical practice." Id. "[C]ounsel was appointed by the New Hampshire Board to investigate Wang's New Hampshire medical practice," id., and ultimately, "the Board issued [a] written decision and order revoking Wang's New Hampshire medical license," id. at 700.

But, before the New Hampshire Board issued its revocation order, Wang asserted claims, pursuant to 42 U.S.C. § 1983, "against the Board, its members and counsel, in the United States District Court for the District of New Hampshire." Wang, 55 F.3d at 700. Thereafter, Wang's "claims for monetary relief against Board members and its counsel, in their individual capacities, were dismissed on grounds of absolute immunity." Id. The court of appeals affirmed. See id. at 701 (citing Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772, 782-85 (1st Cir. 1990)).

While Wang argued that Bettencourt was inapposite, "on the ground that the New Hampshire Board assumed an 'inquisitorial or investigative role' in [his] case by instigating and prosecuting the charges against him," Wang, 55 F.3d at 701, the court of appeals disagreed, explaining that:

> State officials performing prosecutorial functions—including their decisions to initiate administrative proceedings aimed at legal sanctions—are entitled to absolute immunity as well. See Butz v. Economou, 438 U.S. 478, 515 (1978); see also Horwitz v. Board of Medical Examiners, 822 F.2d 1508, 1515 (10th Cir.

20

> [(1987)]) (describing Colorado medical board
> officials' adjudicatory and prosecutorial role).
> Thus, New Hampshire Board counsel, like the
> Massachusetts Board professional staff, see
> Bettencourt, 904 F.2d at 785, is absolutely immune
> from suit, in his individual capacity, based on his
> participation in particular cases before the Board.
> See id.

Wang, 55 F.3d at 701 (parallel citations and subsequent history omitted).

In light of Wang, and given the conduct on which plaintiff bases Count I of his SAC, i.e., Atty. Cahill's obtaining evidence from him but failing to present it to the Board, it is difficult to see how Atty. Cahill would not be entitled to absolute immunity, see Burns v. Reed, 500 U.S. 478, 486 (1991) (observing that absolute immunity extends to "alleged deliberate suppression of exculpatory evidence") (citing Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)).  But because "the official seeking absolute immunity bears the burden of showing that such immunity is justified," Burns, 500 U.S. at 486 (citing Forrester v. White, 484 U.S. 219, 224 (1988), Malley v. Briggs, 475 U.S. 335, 340 (1986), Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982); Butz, 438 U.S. at 506), and because the Board claims only qualified immunity for Atty. Cahill, the court turns to the law of qualified immunity.

"Qualified immunity is a doctrine that shelters government officials from civil damages liability 'insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, No. 17-1147, 2018 WL 928274 (Mar. 19, 2018) (quoting Harlow, 457 U.S. at 818).  In its most recent discussion of the mechanics of qualified immunity, the court of appeals explained:

> The standard for qualified immunity is familiar: as the Supreme Court stated this year, [government officials] are immune from suit under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, --- U.S. ----, 138 S. Ct. 577 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

Hill v. Walsh, 884 F.3d 16, 21 (1st Cir. 2018) (parallel citations omitted).  The second step in the qualified immunity analysis itself has two components.  See McKenney, 873 F.3d at 81.  Specifically:

> [T]he plaintiff must point to "'controlling authority' or a 'consensus of cases of persuasive authority'" that broadcasts "a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." Id. at 76 (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).  Then, the court must evaluate "whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." Id. These inquiries are carried out with the understanding that qualified immunity is meant to shield "all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, --- U.S. ----, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting Mullenix v.

> Luna, --- U.S. ----, 136 S. Ct. 305, 308 (2015) (per
> curiam)).

Id. (parallel citations omitted).

Here, the Board argues that Atty. Cahill is protected by qualified immunity because the conduct on which Count I is based did not violate plaintiff's constitutional right to due process. The court agrees that Atty. Cahill is entitled to qualified immunity.

Turning to the first step in the qualified immunity analysis, it is important to accurately identify the constitutional right at issue. Plaintiff frames Count I in terms of his "constitutional right to practice medicine." Doc. no. 77, at 4. In Conn v. Gabbert, the Supreme Court explained that

> [i]n a line of earlier cases, [it had] indicated that
> the liberty component of the Fourteenth Amendment's
> Due Process Clause includes some generalized due
> process right to choose one's field of private
> employment, but a right which is nevertheless subject
> to reasonable government regulation.

526 U.S. 286, 291-92 (1999) (citing Dent v. West Va., 129 U.S. 114 (1889); Truax v. Raich, 239 U.S. 33, 41 (1915)). But see Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005) ("The right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes.") (citing

*N.Y. State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309-12 (2d Cir. 1994)).

If the constitutional right at issue in Count I is a substantive due process right to practice medicine, and presuming that plaintiff actually has such a right, the SAC does not allege that Atty. Cahill deprived plaintiff of that right. Dr. Isaacs's right to practice medicine in the state of New Hampshire, as a trainee, was revoked by operation of law upon his dismissal from his DHMC residency in March of 2012, before Atty. Cahill and the Board ever got involved with his case. Thus, plaintiff has failed to allege that anything that Atty. Cahill did or did not do deprived him of the right to practice medicine. Moreover, even if the reprimand the Board issued, two years after Dr. Isaacs's license was revoked, could somehow be construed as depriving Dr. Isaacs of the right to practice medicine in the future, that action was taken by the Board, not by Atty. Cahill.

If, on the other hand, the constitutional right at issue in Count I is a right to procedural due process, which is more in line with the factual allegations in plaintiff's SAC, Atty. Cahill is entitled to qualified immunity. In Foster v. Ball, a physician brought a claim that an investigator employed by a state medical board violated his right to equal protection by

"intentionally exclud[ing] exculpatory evidence from [his] investigation report on a Medical Board complaint against [the physician]" on account of his race. 79 F. App'x 263, 264 (9th Cir. 2003). The evidence at issue was a favorable decision in an arbitration proceeding. See id. While the opinion in Foster focuses primarily on the plaintiff's equal protection claim, it includes the following relevant statement:

> Dr. Foster also asserts a due process violation based on Ball's failure to include the exculpatory arbitration decision in his investigation report. However, even if there is a constitutional due process right to have an investigator in an administrative proceeding disclose exculpatory evidence in his investigation report, that right is not clearly established.

Id. at 264 n.1.[7] Here, even if the subject of a disciplinary proceeding before an administrative tribunal has a constitutional due process right to have a hearing counsel present favorable evidence to the tribunal, plaintiff has identified no authority, either controlling or persuasive, that

---

[7] The Foster court also noted that that the physician in that case, like Dr. Isaacs in this case, had known all along the favorable evidence he faulted the investigator for failing to present to the administrative tribunal. Moreover, the Board's order in this case establishes that Dr. Isaacs was provided with an exhibit list before the hearing, see doc. no. 7-1, at 5, and had the opportunity to supplement the record, in the event he found the exhibit list lacking, see id. at 8 (citing N.H. Admin. R. Med. 206.09(c)). Thus, plaintiff had every opportunity to present the evidence that he faults Atty. Cahill for withholding from the Board.

would have informed a reasonable official in Atty. Cahill's position that he would violate Dr. Isaacs's constitutional rights by failing to provide the Board with either the settlement agreement that sealed Dr. Isaacs's USC records or the AAMC's decision that Dr. Isaacs did not need to disclose his tenure at USC in subsequent ERAS applications. Accordingly, when Count I is cast as a procedural due process claim, Atty. Cahill is entitled to qualified immunity.

Because Atty. Cahill is entitled to qualified immunity, Count I of plaintiff's proposed SAC does not state a claim upon which relief can be granted. Thus, it would be futile for plaintiff to amend his FAC by adding Count I from his SAC.

The court concludes its discussion of plaintiff's show cause briefing by pointing out an additional problem with his position. Near the end of his reply brief, plaintiff makes the following argument:

> Attorney Cahill [if he had introduced the settlement agreement sealing Dr. Isaacs's Keck records and/or the AAMC e-mail] would have provid[ed] the key piece of evidence demonstrating the reason for Dr. Isaacs' omission of Keck from his residency application. Attorney Cahill's action in this regard deliberately deprived the Board of Medicine of most likely the single most important piece of exculpatory evidence, which Attorney Cahill had every obligation to provide in his role as an investigator.

Doc. no. 83, at 3-4 (emphasis added).

While the evidence to which plaintiff refers may have provided him with a valid reason for omitting Keck from his residency application, the Board was not dealing with that issue. The question before the Board was whether to sanction Dr. Isaacs for omitting his attendance at Keck, and his expulsion from Keck, from his application for a New Hampshire training license, not his ERAS application. See doc. no. 7-1, at 1. Moreover, it is difficult to see how either piece of evidence at issue was even relevant to Dr. Isaacs's disciplinary proceeding before the Board, much less favorable to him. First, while USC's agreement to seal Dr. Isaacs's educational records might have barred USC from disclosing information about Dr. Isaacs's tenure there to third parties, it is hard to see how a prohibition against USC's disclosure of that information gave Dr. Isaacs a legal excuse for failing to disclose it, when asked a question that implicated it. The AAMC e-mail, in turn, pertained only to the information that Dr. Isaacs is obligated to disclose in an ERAS application; it did not give Isaacs permission to withhold information from a state medical licensing agency. In short, while the court appreciates plaintiff's unhappiness over the current state of his medical career, it does not appear that his current predicament is the result of any cognizable wrongdoing by Atty. Cahill.

### III. Conclusion

For the reasons described above, plaintiff's motion for relief from judgment, document no. 76, is denied, and his show cause briefing, document no. 77, is insufficient to save Count I of his proposed SAC. Accordingly, plaintiff's motion for leave to amend his FAC, document no. 51, is now denied in full. As a result, the clerk of the court shall close this case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


May 15, 2018

cc:   Counsel of Record